UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
E. JEAN CARROLL,

                Plaintiff,

    -against-                                        20-cv-7311 (LAK)

DONALD J. TRUMP, in his personal capacity,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

                Roberta Kaplan
                Shawn Crowley
                Joshua Matz
                Trevor W. Morrison
                Matthew Craig
                KAPLAN HECKER & FINK LLP
                *Attorneys for Plaintiff*

                D. John Sauer
                William O. Scharf
                JAMES OTIS LAW GROUP LLC

                Alina Habba
                Michael T. Madaio
                HABBA MADAIO & ASSOCIATES LLP

                *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

The jury in a closely related case tried previously found that Donald Trump forcibly sexually abused plaintiff E. Jean Carroll in the mid-1990s and maliciously defamed her in an October 2022 statement. In *this* case, another jury awarded Ms. Carroll $17.3 million in compensatory and $65 million in punitive damages against Mr. Trump for defaming her in two other statements that Mr. Trump issued from the White House on June 21 and 22, 2019.[1] Mr. Trump now moves for a new trial or, alternatively, for judgment as a matter of law dismissing this case.

*New Trial*

Mr. Trump's new trial motion argues that (1) the Court erred in excluding evidence and in instructing the jury on common law malice; (2) the $7.3 million and $11 million compensatory damages awards each were excessive and must be remitted; and (3) the $65 million punitive damages award was excessive and must be remitted. The motion is without merit for the numerous and compelling reasons articulated by Ms. Carroll in her opposition.[2] The Court writes, however, to emphasize four points that perhaps might have been articulated more thoroughly in the briefing.

---

[1] The procedural background of the two cases and the reasons that they were tried in the order in which they were tried have been laid out in earlier decisions, familiarity with which is assumed. *See, e.g.*, *Carroll v. Trump*, No. 20-CV-7311 (LAK), 2023 WL 5312894 (S.D.N.Y. Aug. 18, 2023) ("*Carroll I*"); *Carroll v. Trump*, No. 22-CV-10016 (LAK), 2023 WL 2669790 (S.D.N.Y. Mar. 28, 2023) ("*Carroll II*").

[2] *See* Dkt 330 (Pl. Mem.).

3

### A. The Charge on Punitive Damages

Mr. Trump contends that the Court erred by failing to instruct the jury that it could award punitive damages only if it found that Mr. Trump was motivated *solely* by a desire to injure Ms. Carroll — that is, only if it found that Mr. Trump was motivated solely by common law malice and nothing else.[3] The Court rejects that argument essentially for the reasons stated by Ms. Carroll in her opposition, although it takes this opportunity to develop the point in greater depth.

*New York Times Co. v. Sullivan* and its progeny limited on First Amendment grounds the reach of liability in some categories of defamation cases.[4] Among other things, it required, as prerequisite to liability in some cases, proof of what it referred to as "actual malice." It held that a defamatory statement is made with "actual malice" when it is made "with knowledge that it was false or with reckless disregard of whether it was false or not."[5] In other words, "actual" or "constitutional malice" concerns the defendant's state of mind *with respect to truth or falsity*.

New York — the law of which governs in this case — long has employed a different concept known as common law malice. Common law malice exists when a tortfeasor breaches a legal duty to a plaintiff "with deliberate intent to injure or . . . out of hatred, ill will, or spite or . . .

---

[3] Dkt 312 (Def. Mem.) at 2-5.

[4] 376 U.S. 254 (1964).

[5] *Id*. at 280.

The U.S. Supreme Court later held that reckless disregard is satisfied only by proof that the statement was made with "a "high degree of awareness" of the statement's probable falsity or that the defendant "in fact" entertained "serious doubts" as to its truth. *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964); *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968).

4

with wilful, wanton or reckless disregard of another's rights."[6] Thus, "common law malice" is concerned with a defendant's *motive vis-a-vis the plaintiff* injured by the defendant's conduct. And proof of "common law malice" long has been both a necessary and a sufficient basis for the recovery of punitive damages in New York tort cases, whether in actions for defamation or for other torts. But it has played another role in defamation cases as well.

> "Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether. When compelling public policy requires that the speaker be immune from suit, the law affords an absolute privilege, while statements fostering a lesser public interest are only conditionally privileged.
>
> "One such conditional, or qualified, privilege extends to a 'communication made by one person to another upon a subject in which both have an interest.' This 'common interest' privilege has been applied, for example, to employees of an organization, members of a faculty tenure committee and constituent physicians of a health insurance plan. The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded."[7]

The test for whether a conditional privilege in a libel case has been abused long has been whether the defamatory statement was made in whole *or in part* to serve the public interest that

---

[6] N.Y. Pattern Jury Instrs. – Civil § 3.30 (2023).

[7] *Liberman v. Gelstein,* 80 N.Y.2d 429, 437 (1992) (internal citations omitted).

gives rise to the conditional privilege. Thus, the existence of common law malice does not defeat the conditional privilege unless it is the *sole* motive for the defamation.[8]

This exposition of the relevance of common law malice remains the law of New York today. Indeed, when the New York Court of Appeals first clarified the relationship between actual, or constitutional, malice and common law malice in *Prozeralik v. Capital Cities Communications, Inc.*, it held that proof of actual or constitutional malice alone is insufficient to justify an award of punitive damages.[9] In order to recover punitive damages, it said, a libel plaintiff must prove "common-law malice" — the "malicious, wanton, reckless, or [] willful disregard for another's rights" — in addition to satisfying any requirement of actual or constitutional malice.[10] Significantly, it said nothing to suggest that a seeker of punitive damages must prove that common law malice was the *sole* motive for a defendant's defamation. And since then, the New York Court of Appeals (and the Second Circuit) repeatedly have applied the *Prozeralik* common law malice test for punitive damages without ever adding a "sole motivation" requirement.[11]

Despite this clear and consistent history, the defendant relies on a 2003 decision by

---

[8] *E.g., Stukuls v. State of New York,* 42 N.Y.2d 272, 281 (1977) (citing RESTATEMENT (SECOND) OF TORTS §§ 603, 605 (1979)); *see also Foster v. Churchill,* 87 N.Y.2d 744, 752 (1996); *Liberman*, 80 N.Y.2d at 439.

[9] 82 N.Y.2d 466, 479-80 (1993).

[10] *Id.* (internal citations and quotation marks omitted).

[11] *See Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489 (2007); *Dupree v. Giugliano*, 20 N.Y.3d 921, 924 (2012); *Purgess v. Sharrock*, 33 F.3d 134, 143 (2d Cir. 1994); *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 184 (2d Cir. 2000); *DiBella v. Hopkins*, 403 F.3d 102, 122 (2d Cir. 2005).

Case 24-644, 05/16/2024, DktEntry: 27.1, Page 6 of 18
Case 1:20-cv-07311-LAK Document 338 Filed 04/25/24 Page 6 of 18

6

a sharply divided panel of the Appellate Division's First Department in which that court overturned a punitive damages award in a libel case for lack of *any* evidence that "malice or ill will was directed specifically at plaintiff."[12] It then went on, unnecessarily, to assert that the First Department and the Court of Appeals previously had held "that a triable issue of common-law malice is raised only if a reasonable jury could find that the speaker was *solely* motivated by a desire to injure plaintiff, and that *there must be some evidence that the animus was the one and only cause for the publication*."[13] It thus erroneously carried over this "one and only cause" language from the conditional privilege context into the punitive damages context for defamation.[14]

In light of this history, *Morsette* has no application to the present case for multiple reasons. First, *every* case cited by *Morsette* for the proposition that common law malice must be the sole motivation for the defamatory publication to warrant punitive damages in fact stands for the entirely different proposition that common law malice must be the defendant's sole motivation *to overcome an applicable qualified privilege*.[15] The *Morsette* panel, apparently inadvertently (and in any event mistakenly) applied the law applicable to overcoming a conditional privilege defense to

---

[12] *Morsette v. "The Final Call"*, 309 A.D.2d 249, 255, 764 N.Y.S.2d 416 (1st Dep't 2003).

[13] *Id.* (second emphasis added) (quoting *Stukuls,* 42 N.Y.2d at 281).

[14] *Id.*

[15] *Id.* (internal quotation marks omitted) (citing *Present v. Avon Prods., Inc*., 253 A.D.2d 183, 189, 687 N.Y.S.2d 330 (1st Dep't 1999); *Stukuls*, 42 N.Y.2d at 282; *Thanasoulis v. Nat'l Ass'n for Specialty Foods Trade, Inc*., 226 A.D.2d 227, 229, 640 N.Y.S.2d 562 (1st Dep't 1996); *Ackerman v. Bechhoefer*, 270 A.D.2d 878, 706 N.Y.S.2d 286 (4th Dep't 2000); *Grier v. Johnson*, 232 A.D.2d 846, 848, 648 N.Y.S.2d 764 (3d Dep't 1996); *Weir v. Equifax Servs., Inc.*, 210 A.D.2d 944, 945, 620 N.Y.S.2d 675 (4th Dep't 1994)).

the very different question of the availability of punitive damages.

Second, even if *Morsette* had meant to adopt a new rule applicable to punitive damages — *i.e.*, that common law malice must be the *sole* motive for the defamatory publication in order to find punitive damages — its comments were *dicta*. As a simple reading of the opinion reflects, the Appellate Division majority already had overturned the punitive damages award because there was no evidence that the defendant bore *any* common law malice toward plaintiff.[16] Indeed, the defamation in *Morsette* arose from the *random* selection and use of plaintiff's photograph and its alteration to illustrate a story in a magazine in a way that falsely implied that plaintiff and others depicted had been imprisoned.[17] The plaintiff was simply a random victim, not a target of spite or ill will. Thus, the "sole motive" discussion in the majority opinion was gratuitous.

This Court is mindful that it "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion."[18] Here, the persuasive evidence is that New York's highest court would reject defendant's contention that the Court should have instructed the jury that it could award punitive damages only if it found that Mr. Trump was motivated *solely* by a desire to injure Ms. Carroll — that is, if it found that Mr. Trump was motivated only by common law malice and nothing else. Indeed, the well established case law of New York's highest court persuasively indicates that

---

[16] *Morsette*, 309 A.D.2d at 255.

[17] *Id.* at 250-21.

[18] *Chufen Chen v. Dunkin' Brands, Inc.,* 954 F.3d 492, 499 (2d Cir. 2020) (internal citation and quotation marks omitted).

it long ago did so in substance.[19]

### B. Standard of Proof on Punitive Damages

Defendant next contends that he is entitled to a new trial because this Court erroneously charged the jury that the plaintiff's burden of proof with respect to punitive damages was a preponderance of the evidence. He argues that it should have charged that the plaintiff was obliged to prove punitive damages by clear and convincing evidence.[20] He relies on cases in two of the four Appellate Divisions of the New York Supreme Court.

Mr. Trump's argument is incorrect for the reasons advanced in plaintiff's answering memorandum.[21] But one more point bears mention.

As the parties agree, this issue too is governed by the substantive law of New York. In applying New York law, this Court is bound by the decisions of New York's highest court, the Court of Appeals.[22] That court held over one hundred years ago in a defamation case that "[i]n order

---

[19] That is reflected in the current edition of the New York Pattern Jury Instructions, which regularly are applied by both state and federal judges. N.Y. Pattern Jury Instrs. – Civil § 3.30 (2023). And the current instructions for punitive damages are consistent with how the New York Pattern Jury Instructions were written *before* the *Morsette* decision as well, indicating that its authors did not consider *Morsette* to have changed the relevant law on punitive damages at all. *See, e.g.*, N.Y. Pattern Jury Instrs. – Civil § 3.30 (2000).

[20] Dkt 312 (Def. Mem.) at 15-17.

[21] Dkt 330 (Pl. Mem.) at 4-5.

[22] *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted."); *Engel v. CBS,*

to recover punitive damages, plaintiff [i]s bound to satisfy the jury by *a fair preponderance of evidence* that defendant (1) was animated, in such publication, by conscious ill will toward him. . . ."²³ Despite this clear statement, the Appellate Divisions have since split on whether to apply the preponderance or clear and convincing standard for punitive damages, with those that have increased the burden of proof all having failed to recognize the *Corrigan* decision and unwittingly imputed the "clear and convincing" standard for *actual* (or *constitutional*) malice to apply to common law malice as well.²⁴ But the New York Court of Appeals never has so much as hinted that it would modify, limit, or restrict its rule in *Corrigan*, and the Second Circuit has made clear that it takes the fair preponderance standard as the binding statement of New York law on this point.²⁵

---

    *Inc*., 182 F.3d 124, 125 (2d Cir. 1999) (the Court is "bound to apply New York law as determined by the New York Court of Appeals").

²³  
    *Corrigan v. v. Bobbs-Merrill Co.,* 228 N.Y. 58, 66-67 (1920) (emphasis added).

²⁴  
    *See Camillo v. Geer*, 185 A.D.2d 192, 194, 587 N.Y.S.2d 306 (1st Dep't 1992); *Orange & Rockland Utils., Inc. v. Muggs Pub, Inc*., 292 A.D.2d 580, 581, 739 N.Y.S.2d 610 (2d Dep't 2002); *Sladick v. Hudson Gen. Corp*., 226 A.D.2d 263, 264, 641 N.Y.S.2d 270 (1st Dep't 1996); *Munoz v. Puretz*, 301 A.D.2d 382, 384, 753 N.Y.S.2d 463 (1st Dep't 2003).

²⁵  
    *Celle*, 209 F.3d at 184; *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 282-83 (2d Cir. 1990).

    In *Roginsky v. Richardson-Merrell, Inc.* — the first Second Circuit case really to discuss the issue *for unintentional tort* cases — the court held that punitive damages in such cases "must be clearly established." 378 F.2d 832, 850-51 (2d Cir. 1967) (internal citations and quotation marks omitted). In doing so, however, the panel inexplicably did not address the New York Court of Appeals' *Corrigan* decision and instead cited to *Cleghorn v. New York Cent. & H.R.R. Co.* — an earlier case that focused on the substantive conduct necessary to justify punitive damages rather than on the applicable standard of proof. 56 N.Y. 44, 48 (1874). Moreover, the *Roginsky* panel explicitly noted defamation as an exception to the "clearly established" standard for punitive damages, again relying on earlier Court of Appeals cases instead of the more recent *Corrigan* decision. *Roginsky,* 378 F.2d at 843

Case: 24-644, 05/16/2024, DktEntry: 27.1, Page 10 of 18
Case 1:20-cv-07311-LAK    Document 338    Filed 04/25/24    Page 10 of 18

10

Thus, the New York law binding this Court is that the standard of proof of punitive damages in defamation cases is the preponderance of the evidence. Indeed, in the most thorough analysis in this district of the relevant case law, then-Judge Sotomayor reached the same conclusion,[26] and numerous other courts in the New York system correctly have continued to apply the preponderance of the evidence standard.[27] There was no error in the Court's charge to the jury on this point.

### C. Alleged Excessiveness of the Compensatory Damages Award

Contrary to the defendant's arguments, Ms. Carroll's compensatory damages were not awarded solely for her emotional distress; they were not for garden variety harms; and they were

---

n.20. In any event, the Second Circuit implicitly overturned *Roginsky* in *Simpson v. Pittsburgh Corning Corp.*, holding in that products liability case that the appropriate standard of proof for punitive damages under New York law is preponderance of the evidence unless Congress or a higher authority said otherwise. 901 F.2d at 282-83. And as noted, the Second Circuit in 2000 specifically reaffirmed the preponderance standard for defamation cases in *Celle*, 209 F.3d at 184.

[26] *Greenbaum v. Svenska Handelsbanken, N.Y.*, 979 F. Supp. 973, 975-83 (S.D.N.Y. 1997).

[27] *See, e.g.*, *In re Seventh Jud. Dist. Asbestos Litig.*, 190 A.D.2d 1068, 1069, 593 N.Y.S.2d 685 (4th Dep't 1993); *Stryker v. HSBC Sec. (USA)*, No. 16-CV-9424 (JGK), 2021 WL 5403720, at *1 (S.D.N.Y. Nov. 17, 2021); *Wat Bey v. City of New York*, No. 01-CV-9406 (AJN), 2013 WL 12082743, at *24 (S.D.N.Y. Sept. 4, 2013), *aff'd sub nom. Rivera v. City of New York*, 594 F. App'x 2 (2d Cir. 2014); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 309 (S.D.N.Y. 2008); *Marcoux v. Farm Serv. & Supplies, Inc.*, 283 F. Supp. 2d 901, 908 (S.D.N.Y. 2003); *Webber v. Dash*, 607 F. Supp. 3d 407, 412 (S.D.N.Y. 2022); *Bouveng v. NYG Cap. LLC*, No. 14-CV-5474 (S.D.N.Y. June 29, 2015), Dkt 221 at 3; *Fischer v. OBG Cameron Banfill LLP*, No. 08-CV-7707, 2010 WL 3733882, at *3 (S.D.N.Y. Sept. 24, 2010); *Paravas v. Tran*, No. 21-CV-807, 2022 WL 718842, at *9 (S.D.N.Y. Feb. 22, 2022), *report and recommendation adopted*, 2022 WL 718587 (S.D.N.Y. Mar. 10, 2022).

Case: 24-644, 05/16/2024, DktEntry: 27.1, Page 11 of 18
Case 1:20-cv-07311-LAK   Document 338   Filed 04/25/24   Page 11 of 18

11

not excessive, for all of the reasons stated in Ms. Carroll's opposition brief.[28] Though no more need be said on the matter, it is appropriate to draw attention to several defamation cases in which courts upheld comparable verdicts many years ago and, moreover, did so on much thinner evidence of harm.

Mr. Trump's malicious and unceasing attacks on Ms. Carroll were disseminated to *more than 100 million* people. They included public threats and personal attacks, and they endangered Ms. Carroll's health and safety. The jury was entitled to conclude that Mr. Trump derailed the career, reputation, and emotional well-being of one of America's most successful and prominent advice columnists and authors — to which she testified repeatedly[29] — and award her $18.3 million in compensatory damages. By comparison, in *Prozeralik*, the Appellate Division almost thirty years ago upheld a $6 million award for reputational injury and $3.5 million award for emotional and physical injury resulting from merely local television and radio broadcasts which had suggested that the plaintiff had been the victim of an abduction due to ties to organized crime.[30] In *Purgess v. Sharrock*, the Second Circuit thirty years ago upheld a $3.5 million compensatory damages award for reputational and economic injury for an anesthesiologist whose medical background and record were defamed by his employer to other local hospitals after the plaintiff was

---

[28] The Court applies to the alleged excessiveness of the compensatory damages award the standard articulated in defendant's similar motion in the related case between these parties. *Carroll v. Trump*, __ F.Supp.3d ___, No. 22-CV-10016 (LAK), 2023 WL 4612082, at *18-26 (S.D.N.Y. July 19, 2023).

[29] *See*, *e.g.*, Dkt 292 (Trial Tr.) at 70:25-71:24, 126:2-135:6, 137:2-139:21, 178:19-183:20.

[30] *Prozeralik v. Cap. Cities Commc'ns, Inc.*, 222 A.D.2d 1020, 1020, 635 N.Y.S.2d 913 (4th Dep't 1995); *Prozeralik*, 82 N.Y.2d at 470-72.

Case: 24-644, 05/16/2024, DktEntry: 27.1, Page 12 of 18
Case 1:20-cv-07311-LAK Document 338 Filed 04/25/24 Page 12 of 18

12

terminated.³¹ In *Osorio v. Source Enterprises, Inc.*, this district seventeen years ago upheld $3.5 million in compensatory damages awarded to an employee of a hip-hop magazine against its co-owner for emotional damages for publishing falsely that the employee had attempted to extort them.³² And in *Cantu v. Flanigan*, the court fourteen years ago affirmed a $150 million award for non-economic damages — after the Second Circuit *already* had affirmed a $38 million award for economic damages — against a defendant who had defamed a Mexican business owner by asserting that he was running a racketeering enterprise and conspiring with the Mexican government, drug cartels, and Saddam Hussein.³³

None of these prior examples involved publication of defamations as widespread and destructive as Mr. Trump's defamation of Ms. Carroll, and none involved a publisher of defamation who was a president of the United States or anyone nearly as high-profile. And yet, after adjusting for inflation to 2024 dollars,³⁴ the compensatory damages upheld in these cases against claims of excessiveness would have been as follows:

- $5.3 million for emotional damages in *Osorio*;

- $7.3 million for reputational and economic damages in *Purgess*;

- $19.2 million for emotional and reputational injury in *Prozeralik*; and

- $267.6 million for economic and non-economic damages in *Cantu*.

---

³¹ 33 F.3d 134, 142 (2d Cir. 1994).

³² No. 05-CV-10029 (JSR), 2007 WL 683985, at *10 (S.D.N.Y. Mar. 2, 2007).

³³ 705 F. Supp. 2d 220, 226-31 (E.D.N.Y. 2010).

³⁴ *CPI Inflation Calculator*, Bureau of Labor Statistics (Feb. 2024).

13

In sum, an award of $11 million in reputational and $7.3 million in non-reputational compensatory damages is far from a historical anomaly in New York, before even considering the unique scale of the defamation at hand. Mr. Trump's argument that widespread and repeated defamation at the hands of the United States president produced "garden variety" harms with a recoverable limit of roughly $125,000 simply ignores reality and basic logic. Thus, the compensatory damages awards were not excessive as a matter of New York law.

### D. The Constitutionality of the Punitive Damages Award

The Supreme Court has set out three "guideposts" governing the constitutional review of punitive damages awards: "(1) the degree of reprehensibility associated with the defendants' actions; (2) the disparity between the harm or potential harm suffered and the size of the punitive award; and (3) the difference between the remedy in this case and the penalties imposed in comparable cases."[35] The Court agrees with plaintiff that each of these three guideposts more than justifies the punitive damages awarded by the jury. However, it is worth emphasizing the particular reprehensibility and severity that the jury could have found accurately characterized Mr. Trump's conduct, which the Supreme Court has said is "[p]erhaps the most important indicium of the reasonableness of a punitive damages award."[36]

The jury was entitled to find that "the degree of reprehensibility" of Mr. Trump's

---

[35] *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165 (2d Cir. 2014) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)) (cleaned up).

[36] *Gore*, 517 U.S. at 575 (1996).

Case: 24-644, 05/16/2024, DktEntry: 27.1, Page 14 of 18
Case 1:20-cv-07311-LAK Document 338 Filed 04/25/24 Page 14 of 18

14

conduct was remarkably high, perhaps unprecedented.[37] Far from being purely "defensive," there was evidence that Mr. Trump used the office of the presidency — the loudest "bully pulpit" in America and possibly the world — to issue multiple statements castigating Ms. Carroll as a politically and financially motivated liar, insinuating that she was too unattractive for him to have sexually assaulted, and threatening that she would "pay dearly" for speaking out.[38] The jury could have found that Mr. Trump wielded his position as arguably the most powerful and famous man in the world to broadcast his lies to millions of dedicated followers in an effort to destroy Ms. Carroll's credibility, to punish her for coming forward, and to deter other women from doing so as well. It could have found also that he continued his attacks over the nearly *five* years that it took this case to come to a jury verdict.[39] And there was evidence that Mr. Trump's statements about Ms. Carroll only increased in frequency and vitriol as trial approached, with Mr. Trump repeating the same or similar attacks on Ms. Carroll despite knowing that a jury and the Court already had held his similar 2022 statement to have been defamatory.[40]

The jury in this case at least arguably was entitled, moreover, to conclude that Mr. Trump's continued defamation of Ms. Carroll — *even during the course of trial* — in turn warranted a finding that he would not stop attacking Ms. Carroll unless faced with a significant deterrent, a

---

[37] *Id*.

[38] *See* Dkt 304-4; Dkt 304-5; *Carroll*, No. 20-CV-7311, Pl. Ex. 3 at 2.

[39] *See, e.g.*, Dkt 304-14-29.

[40] *Id*.

Case: 24-644, 05/16/2024, DktEntry: 27.1, Page 15 of 18
Case 1:20-cv-07311-LAK Document 338 Filed 04/25/24 Page 15 of 18

15

critical function of substantial punitive damages awards.[41] But beyond his out-of-court statements disparaging Ms. Carroll during trial — many of which were introduced in evidence[42] — the jury could have found that Mr. Trump's demeanor and conduct *in the courtroom itself* put his hatred and disdain on full display. Mr. Trump could be heard repeatedly complaining to his counsel about the proceedings, so much so that plaintiff's counsel twice requested that the Court instruct him to stop.[43] In particular, during Ms. Carroll's testimony, the jury could have found, Mr. Trump could be heard making audible comments that Ms. Carroll's testimony was false, that the proceedings were a "witch hunt" and a "con job," and most notably, that his earlier statements disparaging Ms. Carroll were "true."[44] And, most dramatically, mere minutes after plaintiff's counsel began her closing argument, Mr. Trump conspicuously stood and walked out of the courtroom for no apparent reason save to evidence his disapproval, though he was present again when Court resumed later that morning and

---

[41] *See Jennings v. Yurkiw*, 18 F.4th 383, 392 (2d Cir. 2021) ("[P]unitive damages awards that are a multiple higher may be warranted because of the deterrent function of punitive damages.") (footnote omitted).

[42] *See, e.g.*, Dkt 304-27-29.

[43] *See, e.g.*, Dkt 292 (Trial Tr.) at 118:17-24 (plaintiff's counsel's first application to the Court concerning Mr. Trump's interruptions during the proceedings); *id.* at 120:17-20 (the Court instructing Mr. Trump to "take[] special care to keep his voice down when he's conferring with counsel so that the jury does not overhear it"); *id.* at 163:16-19 (Mr. Trump requesting in front of the jury that a video exhibit be played in full); *id.* at 167:3-11 (plaintiff's counsel's second application to the Court concerning Mr. Trump's interruptions); *id.* at 167:12-18 (the Court's second warning to Mr. Trump to contain his errant remarks).

[44] *Id.* at 118:17-24, 167:3-11.

When the Court issued its second warning to Mr. Trump concerning his actions and cautioned that they might result in him being excluded from the courtroom, Mr. Trump silenced any doubt as to his intentions by responding "I would love it." *Id.* at 167:12-19.

16

remained for his own counsel's entire summation.[45]

On this exceptional record, the punitive damages evidence passes constitutional muster.

*Judgment as a Matter of Law*

Mr. Trump argues in substance that the jury could not reasonably have found that his June 21 and 22, 2019 statements caused *any* harm to Ms. Carroll because the proof failed to exclude the possibility that *some part* of the damage to Ms. Carroll, however small, was attributable at least in part to Ms. Carroll's own allegations against Mr. Trump, which were published in an article in *The Cut,* along with a White House denial, a few hours before the first of the two statements that were the subjects of this action.

Mr. Trump's argument is entirely without merit both as a matter of law and as a matter of fact for all of the reasons articulated in Ms. Carroll's memorandum of law in opposition to his motion.[46] Among other things, it ignores the fact that, as the jury and/or the Court concluded,

---

[45] Dkt 301 (Trial Tr.) at 695:7-10, 733:8-9.

As the Court would have reached exactly the same result here even in the absence of Mr. Trump's actions during the trial, it has no occasion to discuss whether a defendant's actions in the jury's presence during the course of a trial appropriately may be considered in determining punitive damages. *But see Herbert v. Lando*, 441 U.S. 153, 164 n.12 (1979) ("any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights. . . ."); *Celle*, 209 F.3d at 184-85 (citing *Herbert*).

[46] Dkt 332 (Pl. Mem.).

Case: 24-644, 05/16/2024, DktEntry: 27.1, Page 17 of 18
Case 1:20-cv-07311-LAK   Document 338   Filed 04/25/24   Page 17 of 18

17

Mr. Trump's June 21 and 22 statements were false, defamatory, and made with both actual and common law malice. It ignores the fact that those defamatory statements were viewed between at least 85 to 104 *million* times, whereas there is no evidence at all as to the dissemination of *The Cut* article to which defendant seeks to assign all of the damages suffered by Ms. Carroll and which was not even alleged to have been defamatory. It ignores as well the fact that the jury was entitled to believe Ms. Carroll's testimony as to the impact of the June 21 and 22 statements on her. And it ignores the lack of any persuasive legal authority supporting Mr. Trump's contention.[47] Indeed, the law is clear that when competing theories and evidence are presented at trial, the issue of causation ultimately is one for the jury, which the Court should not ordinarily disturb.[48] In short, the argument

---

[47] The defendant's reliance on *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555 (1931), is seriously misplaced.

First, he relies on this purported quotation from that decision: "any degree of speculation in computing the amount of damages unless and until causation of damages is first established." Dkt 310 (Def. Mem.) at 4 (citing *Story Parchment*, 282 U.S. at 562). In fact, however, that language does not appear in the Supreme Court's opinion. Indeed, the erroneous quotation in defendant's memorandum does not make linguistic sense.

Second, *Story Parchment* was decided under the federal antitrust laws. It has nothing to do with defamation cases governed by New York law.

Finally, *Story Parchment* stands simply for the general proposition that uncertainty as to the *amount* of damages, rather than the *fact* of damages, does not preclude recovery for their reasonable and approximate amount. *Story Parchment*, 282 U.S. at 562-63; *contra* Dkt 312 (Def. Mem.) at 19-25. It does not support Mr. Trump's contention that courts should overturn a jury verdict as a matter of law where the parties present competing evidence of causation — indeed, *Story* states essentially the opposite. *Story Parchment*, 282 U.S. at 566 ("Whether the unlawful acts of respondents or conditions apart from them constituted the proximate cause of the [injury] was a question, upon the evidence in this record, for the jury, 'to be determined as a fact, in view of the circumstances of fact attending it.'" (citing *Milwaukee & St. Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 474 (1876))).

[48] *See id.*; *Ernest v. Red Creek Cent. Sch. Dist.*, 93 N.Y.2d 664, 674 (1999) ("'Proximate cause

18

— which Mr. Trump previously made to the jury, conspicuously without success, and which defies common sense — does not warrant dismissal as a matter of law.

*Conclusion*

Accordingly, Mr. Trump's motions for a new trial and for a judgment as a matter of law (Dkt 309 & 311) are DENIED.

SO ORDERED.

Dated:     April 25, 2024

_____
Lewis A. Kaplan
United States District Judge

---

is a question of fact for the jury where varying inferences are possible'") (quoting *Mirand v. City of New York*, 84 N.Y.2d 44, 51 (1994)); *see also Mertsaris v. 73rd Corp.*, 105 A.D.2d 67, 83, 482 N.Y.S.2d 792 (2d Dep't 1984) ("[A] plaintiff need not eliminate entirely all possibility that a defendant's conduct was not a cause. It is enough that he offer sufficient evidence from which reasonable men might conclude that it is more probable than not that the injury was caused by the defendant."); N.Y. Pattern Jury Instrs. – Civil § 2.70 (2023) ("[The jury] may . . . decide that a cause is substantial").