# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Appellee*,

v.

DONALD J. TRUMP,

*Defendant-Appellant*.

No. 24-644

## PLAINTIFF-APPELLEE E. JEAN CARROLL'S OPPOSITION TO THE "JOINT MOTION OF SUBSTITUTION OF UNITED STATES FOR DEFENDANT-APPELLANT PURSUANT TO THE WESTFALL ACT"

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................1

FACTUAL & PROCEDURAL BACKGROUND....................................................1

ARGUMENT ..........................................................................................4

    I.     Trump's Motion is Not Authorized Under the Westfall Act....................7

    II.    Trump Waived Any Motion for Substitution..........................................11

    II.    If this Court Does Not Deny Trump's Motion Outright, It Should
             Remand the Westfall Act Issue to the District Court to Address the
             Motion in the First Instance ..................................................................13

CONCLUSION......................................................................................16

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aliota v. Graham*,
    984 F.2d 1350 (3d Cir. 1993)................................................................8

*Brown v. Armstrong*,
    949 F.2d 1007 (8th Cir. 1991) ............................................................10

*Carroll v. Trump*,
    124 F.4th 140 (2d Cir. 2024) ...............................................................3

*Carroll v. Trump*,
    49 F.4th 759 (2d Cir. 2022) ....................................................... 2, 6, 14

*Carroll v. Trump*,
    498 F. Supp. 3d 422 (S.D.N.Y. 2020)....................................2, 6, 11, 14

*Carroll v. Trump*,
    590 F. Supp. 3d 575 (S.D.N.Y. 2022)...............................................1, 6

*Carroll v. Trump*,
    66 F.4th 91 (2d Cir. 2023) ......................................................... 2, 6, 12

*Carroll v. Trump*,
    683 F. Supp. 3d 302 (S.D.N.Y. 2023)....................................................6

*Carroll v. Trump*,
    88 F.4th 818 (2d Cir. 2023) .................................................................3

*Cholewa v. United States*,
    2024 WL 869550 (6th Cir. 2024) ......................................................14

*De Martinez v. Lamagno*,
    515 U.S. 417 (1995) ..................................................................2, 10, 11

*Dietz v. Bouldin.*,
    579 U.S. 40 (2016) .............................................................................13

ii

*Fajardo v. U.S. Dep't of State,*
    2018 WL 539084 (S.D. Cal. 2018)....................................................10

*Fowler v. United States,*
    647 F.3d 1232 (10th Cir. 2011)......................................................14

*Hunter v. Bryant,*
    502 U.S. 224 (1991) .........................................................................10

*Jordan v. Hudson,*
    879 F.2d 98 (4th Cir. 1989) ..............................................................9

*Loc. 377 v. 1864 Tenants Ass'n,*
    533 F.3d 98 (2d Cir. 2008)..............................................................11

*Melo v. Hafer,*
    912 F.2d 628 (3d Cir. 1990)..............................................................8

*Osborn v. Haley,*
    549 U.S. 225 (2007) .............................................................. 7, 9, 10

*Stokes v. Cross,*
    327 F.3d 1210 (D.C. Cir. 2003) ......................................................14

*Stonewall Ins. Co. v. Nat'l Gypsum Co.,*
    1993 WL 33638 (S.D.N.Y. Feb. 3, 1993).......................................12

*Strei v. Blaine,*
    2013 WL 6243881 (D. Minn. 2013)..................................................10

*Trump v. Carroll,*
    292 A.3d 220 (D.C. 2023) ..................................................... 2, 12, 15

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001) .............................................................................8

*United States v. Tomscha,*
    50 Fed. App'x 18 (2d Cir. 2005) ....................................................14

iii

*Wasserman v. Rodacker*,
   557 F.3d 635 (D.C. Cir. 2009) ...................................................................9

*Westfall v. Erwin*,
   484 U.S. 292 (1988) .................................................................................10

**FEDERAL RULES**

Fed. R. Civ. P. 16 .........................................................................................13

**STATUTES**

Pub. L. 87-258, 75 Stat. 539 ........................................................................10

28 U.S.C. § 2679 ................................................................................ passim

**OTHER AUTHORITIES**

Katie Benner & Charlie Savage, *White House Asked Justice Dept. to Take Over
   Defamation Suit Against Trump, Barr Says*, N.Y. TIMES (Sept. 9, 2020),
   https://www.nytimes.com/2020/09/09/us/politics/trump-e-jean-carroll-
   lawsuit.html

**PRELIMINARY STATEMENT**

As explained below, Donald J. Trump's new effort to certify this case under the Westfall Act (1) is not authorized by the plain language of the statute; (2) was clearly waived when he failed to object to the withdrawal of certification by the United States before trial; and (3) completely lacks merit in any event. Indeed, to borrow language used by the trial judge (Kaplan, J.) earlier in this case, it is nothing more than the latest example of Trump "slow-roll[ing] his defenses, asserting or inventing a new one each time his prior effort to delay the case fails." *Carroll v. Trump*, 590 F. Supp. 3d 575, 587 (S.D.N.Y. 2022).

**FACTUAL & PROCEDURAL BACKGROUND**

E. Jean Carroll filed this case more than five years ago in New York state court, asserting a single count of defamation against Trump. App'x 109-10. After nearly a year of failed efforts to stall the case first by evading service and later by seeking a stay, Trump instructed then-Attorney General William Barr to intervene on his behalf. The Attorney General then removed the case to federal court and sought to substitute the United States in as the defendant, asserting under the Westfall Act, 28 U.S.C. § 2679(d)(2), that Trump had been acting within the scope of his employment when he defamed Ms. Carroll.[1]

---

[1] *See* Katie Benner & Charlie Savage, *White House Asked Justice Dept. to Take Over Defamation Suit Against Trump, Barr Says*, N.Y. TIMES (Sept. 9, 2020), *available at* https://www.nytimes.com/2020/09/09/us/politics/trump-e-jean-carroll-lawsuit.html.

That certification, of course, was not dispositive, given that it is the court, not the Attorney General, who decides whether the Westfall Act actually applies. *De Martinez v. Lamagno*, 515 U.S. 417 (1995). And so, for the next three years, in order to litigate the issue, the parties went on a journey through the state and federal courts: from the district court here in SDNY, which held that Trump was not acting within the scope of his employment under D.C.'s *respondeat superior* standard, *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020); to this Second Circuit (Calabresi, J.), which certified the question to the D.C. Court of Appeals, *Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022); to the D.C. Court of Appeals, which clarified the applicable standard, but declined to resolve the "factbound question of whether the former President was acting within the scope of his employment," *Trump v. Carroll*, 292 A.3d 220, 225 (D.C. 2023); and back to the Second Circuit, which remanded to the district court for further proceedings, *Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023).

On July 11, 2023, the Department of Justice determined that certification was no longer appropriate in light of the "clarified D.C. *respondeat superior* standard," as well as new facts, including, among other things, Trump's sworn testimony at his deposition and the unanimous jury verdict in Carroll's favor in the case that was filed second, but tried first in April 2023 (*Carroll II*), which found that Trump had sexually assaulted Carroll in a dressing room at a Manhattan department store in

1996 and then defamed her again in October 2022 after she had come forward about what he had done.[2]  Declaration of Roberta A. Kaplan ("Kaplan Decl."), Ex. A.

But the government's refusal to certify under the Westfall Act in 2023, like the initial certification in 2020 was not, on its own, conclusive.  The Westfall Act expressly provides a party like Trump with the right to petition the court "*before trial*" for a determination as to whether the party was acting within the scope of his employment in connection with the acts in question.  28 U.S.C. § 2679(d)(3) (emphasis added).  Trump, however, then being represented by the now-acting United States Attorney for New Jersey Alina Habba, decided to forfeit this right to invoke subsection (d)(3) by doing nothing.  In other words, Trump abandoned any arguments he may have had under the Westfall Act, deciding instead to press a different, last-ditch claim of Presidential immunity, which this Court, in its third decision in these related cases, subsequently rejected in December 2023.  *Carroll v. Trump*, 88 F.4th 818 (2d Cir. 2023).

A second trial then took place in which a different unanimous jury, after hearing Carroll testify about the relentless rape and death threats she had received as a result of Trump's defamation, returned a verdict of $83.3 million in Carroll's favor in January 2024.  The instant appeal, which has been fully briefed since February

---

[2] That jury verdict was subsequently affirmed in a 67-page per curiam decision by this Court. *Carroll v. Trump*, 124 F.4th 140 (2d Cir. 2024) (per curiam).  Trump filed a motion seeking en banc review of that decision on January 13, 2025.

3

18, 2025 and has been tentatively set for argument in June, Dkt. No. 106, seeks to set aside that second jury verdict by arguing primarily that this Court erred in previously holding that Presidential immunity is waivable and that Trump waived it here.  Trump's briefs, including a reply brief he filed on February 18**,** well after his inauguration as President for a second time, say nothing whatsoever about the Westfall Act.

Trump has now filed a "joint motion" to substitute the United States as the defendant on this appeal, purporting to rely on a certification pursuant to 28 U.S.C. § 2679(d)(1) and (d)(2) that summarily states that "Trump was acting within the scope of his office or employment."  The instant motion tellingly fails even to mention either the above procedural history or the United States' withdrawal of its previous certification.  Dkt. No. 107.1 ("Motion"), Dkt. No. 107.2 ("Certification").  Nor does it provide any factual or legal support for its certification effort at this late stage in the proceedings.

## **ARGUMENT**

As noted above, there are at least three reasons why the instant motion should be denied.

*First*, the Westfall Act simply does not permit substitution here after trial.  The statute sets forth three specific avenues for certification and substitution, none of which envision certification on appeal after trial.  Instead, the obvious—and only—

avenue for Trump to seek certification after the Department of Justice withdrew its certification in July 2023 was to petition the district court "before trial" under subsection (d)(3). Any other outcome would permit endless gamesmanship of precisely the sort that is occurring here.

Because Trump did not petition the district court at that time, he tries to rely on the other two prongs of the statute. Motion at 2. But neither applies: first, this case does not fall, and never fell, within subsection (d)(1) because it was not commenced in federal court. Second, while subsection (d)(2) does provide for Westfall Act substitution in cases that were commenced in state court (as this case was), that subsection requires certification "before trial." 28 U.S.C. § 2679(d)(2). Indeed, that is exactly the provision Trump previously relied upon for the initial certification that occurred at the early stages of this case in 2020.

*Second*, Trump waived any right to seek substitution when he failed to timely petition the district court pursuant to subsection (d)(3) for certification in 2023. Trump litigated the Westfall Act issue for more than three years, repeatedly arguing that it was "case-dispositive" and even seeking to stay proceedings while the D.C. Court of Appeals considered the issue. Kaplan Decl., Ex. B. Yet when the Department of Justice declined to certify in 2023, Trump did nothing, despite the clear language of subsection (d)(3). The reason is obvious: Trump did not want to litigate the issue of whether he had acted within the scope of his employment in the

5

district court, instead placing his bet on this Court finding that presidential immunity is non-waivable, or on the jury rejecting Carroll's claims given his anticipated testimony at the second trial.[3]  While that turned out to be the wrong bet in hindsight, the doctrine of waiver exists for a situation like this, where a litigant holds back on a potential defense in order to have a second (or third, or fourth) bite at the apple. *See Carroll*, 590 F. Supp. 3d at 587.

*Third*, Trump's motion fails on the merits.  Trump was not acting within the scope of his employment as the President of the United States when he called Carroll a liar and tried to destroy her character and life, even though (as another jury has found) he sexually assaulted her.  That conclusion is supported by the prior, reasoned decision of the Department of Justice, the decision of Judge Kaplan, and the opinion of Judge Chin dissenting from certification to the D.C. Court of Appeals.  *See Carroll*, 498 F. Supp. 3d at 450-57, *vacated and remanded in relevant part*, 66 F.4th 91 (2d. Cir. 2023); *Carroll*, 49 F.4th at 789 (Chin, J., dissenting) ("there is no question that Trump was acting outside the scope of his employment").  That said, if this Court were to conclude that Trump can move at the thirteenth hour for a substitution of parties, it should remand the case back to the district court in the first

---

[3]  While Trump attended the second trial, he did not attend or otherwise participate in the first trial. *See Carroll v. Trump*, 683 F. Supp. 3d 302, 305 (S.D.N.Y. 2023).

instance, given that court's familiarity with the record as well as the potential need for discovery and fact-finding.

## I.    Trump's Motion is Not Authorized Under the Westfall Act

The Westfall Act provides three discrete scenarios in which the United States can be substituted in place of a federal-employee defendant.  28 U.S.C. § 2679(d). Not one of them applies here.  Under subsection (d)(1), in an action commenced in federal court, the Attorney General may certify that a federal-employee defendant acted within the scope of his employment and move to substitute the United States. Under subsection (d)(2), where, as here, an action is originally commenced in state court, the Attorney General may "*at any time before trial*" certify that a federal-employee defendant acted within the scope of his employment, remove the case to federal court, and move to substitute the United States.  Finally, under subsection (d)(3), where the Attorney General "has refused" to certify in a case originally filed either in federal or state court, the employee defendant may "*at any time before trial*" petition the court to substitute the United States.

These three scenarios are the only circumstances when substitution can happen.  *See* 28 U.S.C. § 2679(d)(4) (substitution appropriate in "action or proceeding subject to paragraph (1), (2), or (3)").  Moreover, as the United States Supreme Court explained in *Osborn v. Haley*, subsections (d)(1) and (d)(2) are distinct avenues to certification by the Attorney General that apply in different

circumstances depending on where the case was filed, with the latter applying if "the action is launched in a state court." 549 U.S. 225, 241 (2007). That conclusion flows directly from the text of the two subsections, which specify that they apply to actions "commenced" in federal court and in state court, respectively. And it is reinforced by Congress's decision to include in each subsection identical provisions authorizing substitution, which would of course be superfluous if subsections (d)(1) and (d)(2) could apply to the same type of action. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.") (quoting *Montclair v. Ramsdell*, 107 U.S. 147 (1883)); *see also, e.g.*, *Osborn*, 549 U.S. at 241; *Aliota v. Graham*, 984 F.2d 1350, 1355-56 (3d Cir. 1993) (Alito, J.) (citing *Melo v. Hafer*, 912 F.2d 628, 639 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991)).

Ignoring the statutory language, Trump now tries to invoke both subsections (d)(1) and (d)(2) in an attempt to substitute the United States as the defendant post-trial. Motion at 2. But neither subsection works. As Trump correctly understood the first time around, subsection (d)(1) never applied to this case, and does not apply now, because this action was not "commenced" in "a United States district court." 28 U.S.C. § 2679(d)(1). It was commenced in New York State Supreme Court.

App'x 4, 41; *see* App'x 79 (citing subsection (d)(2) in initial certification).[4]

Likewise, subsection (d)(2) does not help Trump, as its plain language permits

certification and removal only "at any time before trial." 28 U.S.C. § 2679(d)(2).

When the government first certified this case under the Westfall Act, it recognized

this and did so pursuant to subsection (d)(2), which was procedurally proper given

that the case had been commenced in state court (and trial had not happened). *See,*

*e.g.*, App'x 79-81. Ultimately, however, the government refused to certify. Kaplan

Decl., Ex. A. At that point, since trial had not yet begun, Trump was entitled under

subsection (d)(3) to petition the district court "before trial" for a determination as to

certification. He failed to do so.[5]

---

[4] *Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009), is not to the contrary, and if it is, it is not persuasive. The court there held that the D.C. Superior Court is a "state court" for purpose of the Westfall Act and that substitution of the United States was proper under subsection (d)(2). In the "alternative," the court held that actions begun in D.C. Superior Court fall under subsection (d)(1) because the removal of a case results in the "commencement" of a case in federal court. *Id.* at 639. *Wasserman*, of course, addressed unique circumstances in that the D.C. Superior Court is neither a federal court nor (technically) a "State" court, but as the D.C. Circuit recognized, the Westfall Act is clearly meant to cover actions in the nation's capital. *Wasserman* does not mean that in the ordinary situation, where there are federal and state courts, subsection (d)(1) applies to any removed case. Indeed, such a reading would effectively read much of subsection (d)(2) out of the statute. Nor did the court address *Osborn* and other authorities recognizing the statute's clear structure and division between actions commenced in federal court and those commenced in state court. Thus, to the extent *Wasserman* applies here, and it does not, the decision is not persuasive.

[5] When the Westfall Act was passed in 1988 there were of course cases against federal employees pending in federal court on appeal, and some courts permitted certification under the newly-enacted Westfall Act by the government on appeal. *See, e.g.*, *Jordan v. Hudson*, 879 F.2d 98 (4th Cir. 1989). Those decisions do not undercut the plain language of the statute, or the decades of precedent since that requires certification before trial, and simply reflect the courts managing dockets as a matter of judicial efficiency when, for example, remand would "serve no useful purpose" as the district court had already made the relevant factual determination. *Id.* at 100.

9

The requirement that certification be resolved before trial is consistent with the "core" purpose of the Westfall Act: "to relieve covered employees from the cost and effort of defending the lawsuit." *Osborn*, 549 U.S. at 252.[6]  Courts have thus repeatedly held that certification should be resolved at the "earliest opportunity" and "long before trial." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (per curiam) ("Immunity ordinarily should be decided by the court long before trial.")); *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991) ("[C]hallenges to the Attorney General's certification must be resolved before trial, as soon after the motion for substitution is practicable."); *Fajardo v. U.S. Dep't of State*, 2018 WL 539084, at *1 n.1 (S.D. Cal. Jan. 23, 2018) ("The only time limit for this certification is that it must be made before trial.") (citations omitted); *Strei v. Blaine*, 2013 WL 6243881, at *7 (D. Minn. Dec. 3, 2013) (same).[7]

This makes sense as a matter of both fairness to the parties and judicial economy.  It would be patently unfair to permit a defendant to wait to learn the results

---

[6] The Department of Justice has likewise recognized that certification under these provisions must occur before trial.  Fed. Def. Rep. in Supp. of Mot. to Dismiss, *Kusiak v. United States*, 2020 WL 5088432, at 8 (N.D. Ill. June 8, 2020) (subsection (d)(1)); U.S. Rep. Br. in Supp. of Mot. to Sub., *Carroll v. Trump*, 2020 WL 6867782, at n.10 (S.D.N.Y. Oct. 19, 2020) (subsection (d)(2)).

[7] Consistent with this principle is the requirement that federal-employee defendants must "promptly" seek certification from the Attorney General, and, as noted, if such certification is refused, to petition "before trial."  28 U.S.C. § 2679(c), (d)(3).  The predecessor to the Westfall Act, the Federal Drivers Act, similarly only permitted certification prior to trial.  Pub. L. 87-258, 75 Stat. 539 (Sept. 21, 1961) § 2(d), and the Westfall Act was passed in response to *Westfall v. Erwin*, 484 U.S. 292 (1988), "to return Federal employees to the status they held prior to the *Westfall* decision" by eliminating any inquiry as to whether the employee "was performing a discretionary function."  *De Martinez*, 515 U.S. at 425-26.

of a trial before asserting a defense under the Westfall Act, particularly if, as here, the case involved an intentional tort such that certification meant, as a practical matter, that the plaintiff would not be able to recover. Indeed, as the Supreme Court held in *De Martinez*, certification must be reviewed by the court to ensure that the Attorney General never "sits as an unreviewable 'judge in her own cause,'" 515 U.S. at 428-29, and here it would be deeply problematic for our system of government if the Attorney General could wait to certify until after a trial takes place and a jury verdict is reached. These obvious risks to the rule of law are arguably at their zenith here, since the person directing the Department of Justice—as everyone knows—is the defendant in the case.

## II.     Trump Waived Any Motion for Substitution

Even if the Westfall Act were somehow to allow for substitution after trial and contrary to its plain language, Trump waived any right to seek substitution by failing to preserve the issue below and by continuing to litigate the case through trial and judgment anyway. *Loc. 377 v. 1864 Tenants Ass'n*, 533 F.3d 98, 99 (2d Cir. 2008) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.").

When Trump first sought substitution in 2020, his motion was denied by the district court, which found that he acted in his personal capacity when defaming Carroll. App'x 8; *Carroll*, 498 F. Supp. 3d at 422, *vacated and remanded in relevant*

11

*part*, 66 F.4th 91.  The parties then engaged in years of litigation concerning that issue, after which the scope-of-employment issue was remanded to the district court in April 2023 to apply the standard explained by the D.C. Court of Appeals in this case.  *Carroll*, 292 A.3d 220 (answering certified question).

Ultimately, however, the district court did not need to reach the issue because the government submitted a detailed memorandum in July 2023 explaining that, after considering the D.C. Court of Appeal's decision and the record (including additional facts raised since the prior certification at the pleading stage), it "declin[ed] to certify" that Trump acted "within the scope of his office and employment."  Kaplan Decl., Ex. A at 1.  Had President Trump wished to preserve the issue, it was incumbent on him then to seek certification himself pursuant to 28 U.S.C. § 2679(d)(3) before trial, rather than continue to litigate the case as the party defendant (including by testifying at trial) and then briefing this appeal.  Trump's delay is not only extraordinarily prejudicial, but it is of a piece with his repeated delays (and waiver) in this long-running litigation.[8]

Not only did Trump waive substitution by failing to act, but the instant motion comes nearly two years too late in any event.  More specifically, on June 13, 2023,

---

[8] Here, in addition to falling within the technical definition of waiver, Trump's conduct also violates principles of equity.  *See, e.g.*, *Stonewall Ins. Co. v. Nat'l Gypsum Co.*, 1993 WL 33638, at *1 (S.D.N.Y. Feb. 3, 1993) ("It would be inequitable to allow Commercial Union to sit on its rights and proceed to trial and to raise [its objections to severance] only after the jury had returned a verdict against it.").

the district court issued an order focusing on Westfall Act certification and directing that "any further submission" with respect "to substitution of the United States," including "any new or amended certification and/or motion to substitute," had to "be served and filed no later than July 13, 2023."  App'x 20; *see Dietz v. Bouldin.*, 579 U.S. 40, 47 (2016) (courts have "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"); Fed. R. Civ. P. 16.  In other words, even though he was specifically invited by Judge Kaplan to move for substitution before trial, and could have moved for substitution after the government's decision not to maintain its prior certification, Trump chose not to do so.[9]  Instead, Trump waited until long after the 9-person jury had returned an $83.3 million verdict against him to argue (once again) that, under the Westfall Act, the case never should have been litigated against him.  App'x 1014-15.  This procedural history can only mean one thing: Trump's decision not to seek substitution at that time was not merely an error, but was deliberate.

## III. If this Court Does Not Deny Trump's Motion Outright, It Should Remand the Westfall Act Issue to the District Court to Address the Motion in the First Instance

This Court can and should deny Trump's motion to substitute for the reasons set forth above.  But if the Court does not deny the motion, it should not consider

---

[9] The fact that Trump only recently became President is legally irrelevant.  But it is worth noting that Trump filed his reply brief in this appeal on February 18, well *after* he was sworn into office and without first seeking substitution.

13

the merits of the late-breaking Westfall Act certification. It should instead remand the case to the district court.

Typically, on a motion to substitute under the Westfall Act, an appellate court reviews the district court's "factual findings for clear error and its legal conclusions *de novo*." *United States v. Tomscha*, 150 Fed. App'x 18, 19 (2d Cir. 2005) (summary order) (citation omitted). Here, however, the district court has not rendered an ultimate determination following this Court's 2023 remand; there is only its initial determination in 2020 that Trump was not acting within the scope of his employment, issued before the D.C. Court of Appeals' decision. *Carroll*, 498 F. Supp. 3d at 450-57. The reason for the absence of a district court decision is again entirely Trump's fault: he abandoned the issue below and is only now making a motion to substitute before this Court.

It is well-established that the fact-specific issues concerning an employee's scope of employment are best addressed by the district court in the first instance. *See, e.g.*, *Carroll*, 49 F.4th at 772 (remanding to the district court for application of the scope-of-employment standard in the first instance); *Cholewa v. United States*, 2024 WL 869550, at *3 (6th Cir. Feb. 29, 2024) ("[T]he district court must resolve [factual] issues before deciding on certification."); *Fowler v. United States*, 647 F.3d 1232, 1241 (10th Cir. 2011) (same); *Stokes v. Cross*, 327 F.3d 1210, 1213-14 (D.C. Cir. 2003) ("[R]egardless of the content of the certification ... the federal district

14

court must at least conduct an evidentiary hearing on the scope issue."). In this case, the D.C. Court of Appeals has explained that "whether the President of the United States was acting within the scope of his employment is a question for the factfinder." *Trump*, 292 A.3d at 225. Because the scope-of-employment determination under D.C. law is particularly fact-intensive, the district court is best positioned to make the required findings to resolve this motion.[10]

Here, there are very good reasons to conclude that Trump was not acting within the scope of his employment as President of the United States when he first defamed Carroll in 2019. Indeed, every decisionmaker to reach the question (with the exception of Trump and the Department of Justice when it has been under his control) has concluded that Trump acted outside the scope of his employment when he denied an accusation of "personal wrongdoing" concerning a sexual assault that he committed years before he ever ran for office.

And of course, the conclusions of Judge Kaplan, Judge Chin, and the Department of Justice in 2023 are further buttressed by the jury's finding in this case that Trump acted with common-law malice—defined in the jury instructions as

---

[10] Nearly every aspect of D.C.'s *respondeat superior* analysis requires the factfinder to make specific determinations dispositive of the scope of employment issue. Whether the tortious act "it is of the kind [the person] is employed to perform" is an inquiry "couched in ... the fact-specific context in which the tortious conduct arose." *Carroll*, 292 A.3d at 228-32. Similarly, the defendant's purpose in committing the tort is "focused on the subjective state of mind of the tortfeasor" and "the factfinder can make credibility determinations about the stated reasons that the tortious conduct was undertaken or otherwise draw reasonable inferences from the facts." *Id.* at 234.

15

"deliberate intent to injure or out of hatred, ill will or spite, or in willful, wanton, or reckless disregard of another's rights." A.1857. After all, in no world could it possibly be within the scope of a United States officer's employment to deliberately intend to injure someone out of hatred, ill will or spite, or in willful, wanton, or reckless disregard of that person's rights. The record, the jury's verdict, and common sense all lead here to only one conclusion – that Trump was serving himself, not the people of the United States, when he viciously defamed Carrol in 2019.[11]

## CONCLUSION

Trump's motion to substitute should be denied or, in the alternative, remanded to the district court to determine the propriety of the substitution on the merits in light of the extensive record and any necessary fact finding.


Dated: New York, New York
        April 21, 2025

Respectfully submitted,

Roberta A. Kaplan
D. Brandon Trice
Maximilian T. Crema
Thomas A. Lloyd
Avita Anand
KAPLAN MARTIN LLP
1133 Avenue of the Americas,
Suite 1500

---

[11] Another reason why remand to the district court would be appropriate is the unusually bare-bones nature of Trump's briefing on the instant motion which fails to address the scope-of-employment issue at all.

16

New York, New York 10036
(212) 316-9500

*Attorneys for Plaintiff-Appellee E. Jean
Carroll*

**<u>CERTIFICATE OF COMPLIANCE</u>**

This brief complies with the length limits requirements of Fed. R. App. P. 27(d)(2) because this brief contains 4,359 words, excluding those portions pursuant to Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 27(d) because it was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.

Dated:  New York, New York                      */s/ Roberta A. Kaplan*
       April 21, 2025                           Roberta A. Kaplan

18

## <u>CERTIFICATE OF SERVICE</u>

I, Roberta A. Kaplan, counsel for Plaintiff-Appellee and a member of the Bar of this Court, certify that, on April 21, 2025, copies of the foregoing brief were filed with the Clerk through the Court's electronic filing system, which will send notice of such filing to all counsel of record.

Dated:  New York, New York                    */s/ Roberta A. Kaplan*
       April 21, 2025                                Roberta A. Kaplan

19