UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

    *Plaintiff-Appellee,*

v.

DONALD J. TRUMP,

    *Defendant-Appellant.*

No. 24-644

**REPLY IN SUPPORT OF JOINT MOTION OF SUBSTITUTION OF UNITED STATES FOR DEFENDANT-APPELLANT PURSUANT TO THE WESTFALL ACT**

## I. INTRODUCTION

This is an extraordinary case. The district court imposed a judgment of $83.3 million based on two statements, issued through official White House channels, defending President Trump's character and fitness for the Presidency in response to media inquiries on questions of substantial public interest. These statements—(i) an official statement of the White House Press Office, and (ii) public comments by President Trump at an official White House press availability—each responded to Appellee's inflammatory allegations about the President.

On September 8, 2020, the United States timely removed this action from New York state court, pursuant to 28 U.S.C. § 2679(d)(2), which is part

of the Westfall Act. By operation of law, the United States immediately became the party-defendant upon issuance of a Westfall Act certification, and that status remains "unless and until the District Court determines that the employee, *in fact*, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn v. Haley*, 549 U.S. 225, 231 (2007).

The United States complied with the only applicable timing requirement in the Westfall Act: it certified "that the defendant employee was acting within the scope or his . . . employment" and removed this action from state court before trial. 28 U.S.C. § 2679(d)(2). At all times—before, during, and after trial—federal employees acting within the scope of their employment enjoy a "personal immunity," *De Martinez v. Lamagno*, 515 U.S. 417, 426 (1995), from all tort "action[s] or proceeding[s] for money damages." 28 U.S.C. §§ 1346(b)(1), 2679(b)(1).

Here, President Trump is immune from tort liability based on statements made from the White House, through official White House channels, because those statements were within the course and scope of his office. Appellee's exclusive remedy is against the United States under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2679(b)(1).

## II. ARGUMENT

### A. The United States' Certification Was Timely.

In moving to substitute itself as defendant for the President, the United States was timely. The Westfall Act modified the FTCA in two pertinent respects. First, it clarified that an FTCA action against the United States is the exclusive remedy for alleged torts committed by employees when acting within the scope of their employment and provided immunity for employees. Pub. L. No. 100-694 § 5, 102 Stat. 4564, amending 28 U.S.C. § 2679(b).

Second, the Westfall Act created a mechanism to permit the United States to remove covered actions filed against employees from state court and to substitute the United States as party defendant. 28 U.S.C. § 2679(d); Pub. L. No. 100-694 § 6. Appellee conflates these distinct provisions. *Compare* Opp'n 7-11, *with McHugh v. Univ. of Vt.*, 966 F.2d 67, 72 (2d Cir. 1992), *abrogated in differed part by Osborn*, 549 U.S. at 225 (noting removal is one of two purposes certification serves, with substitution and immunity being the other).

As to the removal provision, the text of the Westfall Act specifies that "any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial." 28 U.S.C. § 2679(d)(2). But Congress only limited *removal* under the Westfall Act to

3

"before trial." It did not limit *substitution* or the employee's *immunity* to "before trial." The second and third sentences of Section 2679(d)(2), which deal with substitution and the conclusiveness of the Attorney General's certification for purposes of removal, do not contain any temporal limitation. *See De Martinez*, 515 U.S. at 432 ("Congress spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution. Next, Congress made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitution.").

To be sure, Section 2679(d)(2) contemplates that if the Attorney General certifies before trial, the case will be removed, and the United States will be substituted as the defendant at that time. But in the unusual circumstances where an Attorney General withdrew certification, nothing in Section 2679(d)(2) prevents that Attorney General—or a subsequent one—from later recertifying because her view of the law or facts has changed. Whenever the Attorney General certifies in a removed case, the plain terms of the statute require that "[s]uch action or proceeding shall be deemed to be . . . brought against the United States . . . , and the United States shall be substituted as the party defendant."

That is reinforced by Section 2679(d)(1), which governs actions brought in federal district court. For those actions, Congress included no

4

temporal limitation at all. The Attorney General may certify at any time, whether before or after trial. There is no apparent reason why Congress would have permitted substitution after trial or on appeal for actions brought originally in federal court, but not for actions brought in state court and immediately removed to federal court—indeed, courts have held that "subsection (d)(1) applies" in removed cases. *McHugh v. Univ. of Vt.*, 758 F. Supp. 945, 950 n.2 (D. Vt. 1991); *see also Wasserman v. Rodacker*, 557 F.3d 635, 639 (D.C. Cir. 2009). For actions in federal court (as opposed to those that proceed through trial in state court), Congress permits the Attorney General to certify whenever she believes that the law and facts warrant, as occurred here.

That tracks the purposes behind the Westfall Act. That Act reinstated the common-law form of official immunity that protected federal employees from state-law tort liability prior to *Westfall v. Erwin*, 484 U.S. 292, 297-98 (1988). This exclusive remedy provision does not solely protect federal employees from process and defending a suit. *Contra* Opp'n at 10 (citing *Osborn*, 549 U.S. at 252). It also confers––as Congress expressly and repeatedly declared––immunity from liability. *See* Pub. L. No. 100-694 § 2(4)-(6). By law, that immunity attaches regardless of the stage of litigation. *See Barr v. Matteo*, 360 U.S. 564, 574 (1959) (holding officer

enjoyed official immunity following trial).

Courts routinely assess the immunity of federal employees following trial. *See*, *e.g.*, *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 424, 432 (2017) (following bench trial, Supreme Court vacated denial of qualified immunity); *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 252 (2014) (following jury trial, holding defendant enjoyed immunity under the Aviation and Transportation Security Act). That there is no time limit on an employee's immunity in the Westfall Act, *see* 28 U.S.C. § 2679(b), or for substitution and certification under (d)(1) or (d)(2), confirms that Congress did not intend to change that rule. This Court, on motion from the United States, may resolve the immunity question now, even following trial. Appellee's fairness and economy arguments, *see* Opp'n 10–11, lack merit and are immaterial as they cannot override the clear intent of Congress manifested in the law's text to protect federal employees from tort suits such as this one against the President over his official actions.

### B. It Is Irrelevant that the President Did Not Petition for an Order Under 2679(d)(3).

Appellee mistakenly attributes significance to the fact that federal employees, before trial, may petition the court for an order certifying that the employee was acting within the scope of his office or employment "[i]n the event that the Attorney General has refused to certify." 28 U.S.C. §

6

2679(d)(3); Opp'n 12. That the President never filed a (d)(3) petition has no bearing on the Joint Motion of Substitution currently before the Court.

The employee's right to request a certification is separate and distinct from the Attorney General's right to issue a certification. *See* Opp'n at 7 (noting subsections of (d) are "distinct avenues to certification"). The fact that the President did not move under (d)(3) does not affect the Attorney General's discretion to issue a certification voluntarily. *See* 28 U.S.C. § 2679(d)(1)-(2) (lacking any cross reference to subsection (d)(3)).

No rule or order can "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). And "[e]ven a sensible and efficient use of the supervisory power, however, is invalid if it conflicts with constitutional or statutory provisions." *Thomas v. Arn*, 474 U.S. 140, 148 (1985). The district court's June 13, 2023 order requiring the United States to "serve[] and file[] no later than July 13, 2023," any "new or amended certification," did not curtail the Attorney General's statutory authority to issue a Westfall Act certification, since such curtailment is not possible under the separation of powers. Nor did that order abrogate the Westfall Act's exclusive remedy provision.

In any event, enforcing the July 13, 2023, deadline here would be unjust. The Attorney General initially submitted a timely and proper

7

certification, and there is an overriding public interest in avoiding the improper application of individual tort liability on the President for actions taken within the scope of his office. As the Supreme Court reaffirmed in *Trump v. United States*, 603 U.S. 593, 615 (2024), the public interest is served by "ensur[ing] that the President can undertake his constitutionally designated functions effectively, free from undue pressures or distortions." The United States properly invoked its own rights and interests through this motion.

    **C.    The Court Should Substitute the United States as Defendant/Appellant Now Because the President is Immune.**

Now is the time for "years of litigation concerning" the scope of the President's office, Opp'n 12, to end. There is no need to remand this action for further proceedings before the district court.

First, this Court has already recognized "that the President is an employee . . . under the Westfall Act." *Carroll v. Trump*, 49 F.4th 759, 772 (2d Cir. 2022). Where the facts pertinent to scope of employment are not disputed, the Court may resolve that issue as a matter of law. *Id.* at 761 (citing *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006)); *Bello v. United States*, 93 F. App'x 288, 280-90 (2d Cir. 2004)). There is ample evidence in the record to establish that the several statements

8

at issue were made within the scope of the President's office.

Indeed, Congress intended the Westfall Act to "return Federal employees to the status they held prior to the *Westfall* decision." *De Martinez*, 515 U.S. at 426. Before the *Westfall* decision, high-ranking officials had an "absolute privilege in defense of the alleged libel published at [their] direction." *Barr*, 360 U.S. at 574. That should be the end of the matter.

Second, Appellee bears the burden of proving that the President was not acting within the scope of his employment when he made the two statements. *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017); *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008); *Lyons v. Brown*, 158 F.3d 605, 610 (1st Cir. 1998); *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990). It is not the Government's burden to prove that the exclusive remedy provision applies. Rather, Appellee must prove that the President was somehow not acting within the scope of his office when he made the two statements, which is not possible on the undisputed facts. Appellee's Opposition does not come close to meeting her burden.

The President's job duties are "of unrivaled gravity and breadth." *Trump v. Vance*, 591 U.S. 786, 800 (2020). "The President is the only person

who alone composes a branch of government. As a result, there is not always a clear line between his personal and official affairs." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020). "[T]he Presidency is tied so tightly to the persona of its occupant" that "the line between official and personal" is "both elusive and difficult to discern." *In re Lindsey*, 158 F.3d 1263, 1286 (D.C. Cir. 1998) (per curiam) (Tatel, J., concurring in part and dissenting in part).

Indeed, Appellee repeatedly emphasized, at trial, the official, Presidential nature of the statements at issue, pointing to their official nature as part of her case. *See, e.g.*, A.1100 (Carroll's opening statement) (emphasizing that President Trump was "[s]peaking from the White House" and "us[ing] the most famous platform on earth to lie about what he had done"); A.1781 (Carroll's summation) ("Wielding his position as president, [President Trump] attacked [Carroll] and her honesty."); A.71-A.72 (alleging that President Trump, as "the most powerful man on the planet, … used that platform [the Presidency] to attack" Carroll). As the D.C. Circuit recognized in the context of other high ranking elected officials, "remarks made to the media," and statements made to "defuse an issue that could affect" his reputation as an effective official are all within that ambit of conduct authorized or incidental to the office of the President. *Ballenger*, 444 F.3d at 665 (citations omitted).

Here, undisputed evidence shows that both of the President's statements at issue were "[i]n response to" questions from the press about Appellee's accusations. *Carroll*, 49 F.4th at 761. The press contacted the White House seeking a statement in response to *The Cut* article and a member of the press yelled a question about the allegations as the President boarded Marine One, and the President responded *qua* President through official channels. *See* A.1887-94. A President's statements defending his fitness for office and bolstering public confidence in his leadership, issued through official White House channels or during White House press events, are plainly within the scope of the President's office. *See Trump*, 603 U.S. at 618; *Ballenger*, 444 F.3d at 665-66. *See generally Trump v. Carroll*, 292 A.3d 220 (D.C. 2023).

In withdrawing the certification here, the prior Administration mistakenly deemed probative the fact that President Trump continued to defend his reputation against Appellee's allegations even after he left office. *See* Opp'n Ex. A, at 4. But the President can have both official and personal interests in his reputation and as long as an employee is "actuated, at least in part, by a purpose to serve the master," the conduct is within the scope of his office. *Trump*, 292 A.3d at 233. That the President defended "his personal and official affairs," *Mazars USA, LLP*, 591 U.S. at 868, both while serving

11

as the President and after having left that office does not mean the statements made while in office were not within the scope of his office.

The prior Administration also believed the "prior history" between the President and Appellee was germane to determining scope of employment. Opp'n Ex. A, at 5. There is no such history. Regardless, the claim is a *non sequitur*. Prior history is irrelevant where "the employee was in fact responding to an employment-related circumstance, despite the tortious conduct appearing as if it were personally motivated." *Trump*, 292 A.3d at 235. Appellee admits, and the undisputed evidence shows, that both statements at issue were Presidential press statements made through official White House channels, and that they were made while "responding to an employment-related circumstance." *See id.* at 235.

Finally, in assessing the motivation behind the President's statements, the prior Administration passed judgment on the tone of the statements. Opp'n Ex. A, at 5. But as the D.C. Court of Appeals held, determining an employee's purpose in engaging in allegedly tortious conduct requires "a holistic approach." *Trump*, 292 A.3d at 235. The statements were made by a sitting President, at the White House, in response to press inquiries. Thus, based on the totality of the circumstances, the two statements at issue were clearly made within the scope of the President's office.

## III. CONCLUSION

This Court should substitute the United States pursuant to the Westfall Act.

Dated: April 28, 2025

Respectfully Submitted,

YAAKOV ROTH
Acting Assistant Attorney General
Civil Division

 /s/ *Jonathan D. Guynn*
Jonathan D. Guynn
Deputy Assistant Attorney General
Torts Branch, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20503
(202) 514-7835
*jonathan.guynn@usdoj.gov*

*/s/ Michael E. Talent*
Michael E. Talent
James Otis Law Group, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(314) 949-3018
*michael.talent@james-otis.com*

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,576 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

                                                */s/ Michael E. Talent*
                                                Michael E. Talent