# 24-644

IN THE

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Counter Defendant-Appellee*,

v.

PRESIDENT DONALD J. TRUMP, in his personal capacity,

*Defendant-Counter Claimant-Appellant*,

-------------------------------------------------

UNITED STATES OF AMERICA,

*Movant.*

On Appeal from the United States District Court
For the Southern District of New York

## PETITION FOR PANEL REHEARING AND EN BANC DETERMINATION OF THE UNITED STATES AND PRESIDENT DONALD J. TRUMP

*(Counsel listed on inside cover)*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

Jonathan D. Guynn
Deputy Assistant Attorney General
Torts Branch, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20503
(202) 514-7835
Jonathan.Guynn@usdoj.gov

*Counsel for Movant*
*United States of America*

Justin D. Smith
James Otis Law Group, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com

*Counsel     for     Defendant-Counter*
*Claimant-Appellant*
*President Donald J. Trump*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................ii

RULE 40(b) STATEMENT ...............................................................1

INTRODUCTION ............................................................................ 3

BACKGROUND ............................................................................. 4

ARGUMENT.................................................................................. 7

    I.  The Panel Erred By Not Automatically Substituting the United States as a Defendant Upon the Attorney General's Westfall Act Certification. ................................................................ 7

    II. The Panel Erred By Not Recognizing that the United States' Westfall Act Certification Was Timely. .......................................... 10

    III.The Panel Erred By Not Providing Immunity to a Federal Employee for Statements Within the Scope of Employment. ...........................14

CONCLUSION.............................................................................19

CERTIFICATE OF COMPLIANCE...........................................20

*Panel Order Appended*

i

## TABLE OF AUTHORITIES

**Cases**                                                **Page(s)**

*Air Wisconsin Airlines Corp. v. Hoeper,*
    571 U.S. 237 (2014) ...................................................................13

*B & A Marine Co. v. Am. Foreign Shipping Co.,*
    23 F.3d 709 (2d Cir. 1994) ...................................................1, 8

*Barr v. Matteo,*
    360 U.S. 564 (1959) ...................................................................13

*Bello v. United States,*
    93 F. App'x 288 (2d Cir. 2004) ............................................14

*Bolton v. United States,*
    946 F.3d 256 (5th Cir. 2019) ................................................ 10

*Borneman v. United States,*
    213 F.3d 819 (4th Cir. 2000) ................................................. 9

*Bowles v. United States,*
    685 F. App'x 21 (2d Cir. 2017) ............................................ 8

*Carroll v. Trump,*
    49 F.4th 759 (2d Cir. 2022) ......................................... 14-15, 18

*Cnty. of Los Angeles v. Mendez,*
    581 U.S. 420 (2017) ...................................................................13

*Council on Am. Islamic Rels. v. Ballenger,*
    444 F.3d 659 (D.C. Cir. 2006) ...................................2-3, 15, 18

*De Martinez v. Lamagno,*
    515 U.S. 417 (1995) .......................................................... 7, 11

*Does 1-10 v. Haaland,*
    973 F.3d 591 (6th Cir. 2020) ............................................... 18

*Jackson v. Tate,*
    648 F.3d 729 (9th Cir. 2011) ....................................................... 9

*Jacobs v. Vrobel,*
    724 F.3d 217 (D.C. Cir. 2013) .................................................... 9

*Lawson v. United States,*
    103 F.3d 59 (8th Cir. 1996) ...................................................... 10

*McHugh v. Univ. of Vt.,*
    758 F. Supp. 945 (D. Vt. 1991) .................................................12

*McHugh v. Univ. of Vt.,*
    966 F.2d 67 (2d Cir. 1992) ................................................. 8, 11

*Melo v. Hafer,*
    13 F.3d 736 (3d Cir. 1994) ...................................................... 10

*Mullane v. Moreno,*
    No. 21-13468, 2025 WL 1386666 (11th Cir. May 14, 2025)..................... 9

*Operation Rescue Nat'l v. United States,*
    147 F.3d 68 (1st Cir. 1998) ......................................................17

*Osborn v. Haley,*
    549 U.S. 225 (2007)................................................1, 5-7, 9, 11

*Saleh v. Bush,*
    848 F.3d 880 (9th Cir. 2017) ...................................................14

*Trump v. Carroll,*
    292 A.3d 220 (D.C. App. 2023) ........................................ 2, 15-17

*Trump v. Hawaii,*
    585 U.S. 667 (2018) .............................................................. 18

*Trump v. United States,*
    603 U.S. 593 (2024) ......................................... 2, 4, 6, 17-18

*Velez-Diaz v. Vega-Irizarry,*
    421 F.3d 71 (1st Cir. 2005) ........................................................ 9

*Wasserman v. Rodacker,*
    557 F.3d 635 (D.C. Cir. 2009) .................................................12

*Williams v. United States,*
    71 F.3d 502 (5th Cir. 1995) ......................................................17

*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008) ....................................2-3, 14, 16

*Wuterich v. Murtha,*
    562 F.3d 375 (D.C. Cir. 2009) .................................................16

## Statutory Authorities

28 U.S.C. § 2072 ........................................................................13

28 U.S.C. § 2679 .................................................... 1, 4, 7-8, 11-13

Circuit R. 40.1 ........................................................................... 6

Pub. L. No. 100-694, 102 Stat. 4564 ...................................10-11

## RULE 40(b) STATEMENT

The United States and Appellant jointly file this petition for panel rehearing and en banc determination. The filing is being made now in an abundance of caution and to ensure timeliness. Because the Panel has not issued a decision explaining its Order or deciding the merits of Appellants' claims, the Court may wish to hold this petition in abeyance until the Panel issues one or more opinions that provide its reasoning. In rejecting the United States' Motion, *see* Doc. 107.1, the Panel erred on at least one of the following important questions of law, warranting panel rehearing and en banc determination:

1. Whether, under the Westfall Act, 28 U.S.C. § 2679, the United States is automatically substituted as a defendant upon the Attorney General's certification that a federal officer, here, the President, was acting within the scope of his office at the time of the conduct out of which plaintiff's claim arose. The Panel's Order conflicts with *Osborn v. Haley*, 549 U.S. 225 (2007), *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709 (2d Cir. 1994), and other circuits, and presents a question of exceptional importance.

2. Whether the United States properly filed a renewed Westfall Act certification when a case removed from state court is on appeal after an

1

earlier pre-trial certification was made and later withdrawn. The Panel's Order presents a question of exceptional importance.

3. Whether the President acts within the scope of his office when he responds, through official government channels and from the White House, to press inquiries relating to matters of clear public interest. The Panel's Order conflicts with an earlier decision in this case, *Trump v. Carroll*, 292 A.3d 220 (D.C. 2023), and closely analogous precedent, *see Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659 (D.C. Cir. 2006); *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), is inconsistent with the most recent Supreme Court decision on presidential immunity, *Trump v. United States*, 603 U.S. 593 (2024), and presents a question of exceptional importance.

**INTRODUCTION**

In 2019, President Donald J. Trump ("President Trump") made statements denying false accusations levied against him in a *New York Magazine* article by E. Jean Carroll ("Carroll"). President Trump made these statements from the White House in response to press inquiries about this matter of public interest, and the White House Press Office distributed his statements.

A federal officer or employee, including and especially the President, is protected from tort liability under the Federal Employees Liability and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679, for actions performed within the scope of his office. Courts have previously held that the Westfall Act applies to a member of Congress who discussed his marital status with a reporter, *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006), and to Executive Branch officials who leaked information to reporters to discredit their critics, *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008). Here, the Attorney General certified that President Trump was acting within the scope of his office when he denied, from the White House, harmful and untrue allegations against him—conduct that the Westfall Act plainly covers.

3

To date, the Panel has not provided any reasoning for its order. The Order's result, and potential supporting rationales (as to which we are forced to guess), conflict with prior decisions of the Supreme Court, this Court, and other circuit courts recognizing that the Attorney General's Westfall Act certification effectuates *automatic substitution* of the United States in place of the federal officer or employee. The Order also conflicts with the Westfall Act's statutory text, which requires the Attorney General to provide a certification before trial for purposes of removal (as occurred here) but places no temporal limits on the Attorney General's discretion to certify and substitute the United States as the party in a lawsuit, as was done here. *See* § 2679(d)(2). The Order also conflicts with prior circuit court decisions providing immunity to federal employees who made statements on matters of public interest in the scope of their federal employment and the guidance of the presidential immunity decision in *Trump v. United States*, 603 U.S. 593 (2024). These legal errors—if left uncorrected—will undermine the Westfall Act's protections for federal officers and employees, and severely damage the Presidency.

## **BACKGROUND**

On June 21, 2019, in response to reporter inquiries about allegations made by Carroll in a *New York Magazine* article, the White House Press

4

Office distributed a statement from President Trump. A.1887. This statement was an official White House record stamped "Authenticated U.S. Government Information."[1] On June 22, 2019, in remarks on the White House South Lawn distributed by the White House Press Office, President Trump answered questions from reporters about matters of public interest, including Iran, immigration, and Carroll. A.584-A.596.[2]

On November 4, 2019, Carroll commenced this action in New York state court, alleging that the President's 2019 statements from the White House were defamatory. On September 8, 2020, relying on the Westfall Act, the United States timely removed this action to the United States District Court for the Southern District of New York. On July 11, 2023, the prior Administration improperly withdrew the Westfall Act certification. Carroll subsequently obtained an unjust judgment of $83.3 million over the President's statements from the White House.

The Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The

---

[1] *Available at* https://www.govinfo.gov/content/pkg/DCPD-201900410/pdf/DCPD-201900410.pdf.

[2] *Available at* https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-marine-one-departure-49/.

Westfall Act's "core purpose ... is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders." *Id.* at 252. "The essence of immunity 'is its possessor's entitlement not to have to answer for his conduct' in court." *Trump*, 603 U.S. at 630 (citation omitted).

On April 11, 2025, the Attorney General, by and through her designee, re-certified under the Westfall Act that President Trump was acting within the scope of his federal office at the time of his 2019 statements. Doc. 107.2. The same day, pursuant to the Attorney General's certification, the United States and President Trump jointly moved to substitute the United States as a defendant for President Trump. Doc. 107.1.

The Panel issued a four-sentence order denying the Motion to Substitute on June 18, 2025. Doc. 124. The Panel's order provided no reasoning, stating instead that it "will issue an opinion detailing its reasoning in due course." *Id.* No opinion or reasoning has been provided to date.[3]

---

[3] The United States and President Trump reserve their rights to file a new petition after any substantive opinion by the Panel on the Westfall Act issues addressed by this petition and/or following the Panel's decision in the underlying appeal. *See* Local R. 40.1(e).

## ARGUMENT

### I.   The Panel Erred By Not Automatically Substituting the United States as a Defendant Upon the Attorney General's Westfall Act Certification.

The Westfall Act is clear that, *by operation of law*, the United States should have been substituted as the party defendant in this case in place of President Trump upon the Attorney General's certification: "Upon certification by the Attorney General ... the United States *shall* be substituted as the party defendant." *See* 28 U.S.C. § 2679(d)(2) (emphasis added). Once this certification is made, the United States "must remain the federal defendant in the action unless and until the District Court determines that the employee, *in fact,* and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 231 (emphasis in original). As the Supreme Court has made clear, substitution occurs automatically: "When the Attorney General has granted certification, if the case is already in federal court ... the United States *will be substituted* as the party defendant." *De Martinez v. Lamagno*, 515 U.S. 417, 431 (1995) (emphasis added). Thus, the United States' substitution was required and became immediately effective when the Attorney General issued the certification under the Westfall Act.

7

Until now, the Second Circuit has followed the Westfall Act's plain text and applied this automatic-substitution rule. "To emphasize the exclusivity of the remedy against the United States," reasoned this Court, the Westfall Act "requires that the United States be substituted as *the* party defendant upon certification by the Attorney General … that the defendant employee was acting within the scope of his employment." *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) (emphasis in original). The Court emphasized the automatic nature of the substitution, rendering prior cases inapposite (*see McHugh v. Univ. of Vt.*, 966 F.2d 67, 74 (2d Cir. 1992)), and observing that the United States' response to a show cause order "deliberately avoided making this 'certification' [about the scope of employment] because the statute provides that upon such 'certification by the Attorney General … the United States shall be substituted as the party defendant,' and the Assistant [United States Attorney] was seeking to avoid having the United States substituted as the defendant." *Id.* at 715 n.3 (quoting 28 U.S.C. § 2679(d)(1)). In an order resolving a different case, the Second Circuit quoted the Supreme Court's rule that "[t]he United States … must remain the federal defendant in the action unless and until" the court determines that the defendant "engaged in conduct beyond the scope of his employment." *Bowles v. United States*, 685 F. App'x 21, 24 (2d Cir. 2017)

8

(quoting *Osborn*, 549 U.S. at 231) (summary order). The Panel's Order conflicts with these decisions by not automatically substituting the United States as a defendant for President Trump upon the Attorney General's certification.

The Panel's Order also conflicts with decisions of other circuit courts. At least five circuits have held that the United States is automatically substituted as the defendant upon the Attorney General's certification. *See, e.g.*, *Mullane v. Moreno*, No. 21-13468, 2025 WL 1386666, at *9 (11th Cir. May 14, 2025); *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013); *Jackson v. Tate*, 648 F.3d 729, 736 (9th Cir. 2011); *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 75 (1st Cir. 2005); *Borneman v. United States*, 213 F.3d 819, 823 (4th Cir. 2000). Any judicial review of the Attorney General's certification occurs only *after* the United States is substituted. *Velez-Diaz*, 421 F.3d at 75; *Borneman*, 213 F.3d at 829. The Panel's Order conflicts with these circuit court decisions by not automatically substituting the United States as a defendant for President Trump upon the Attorney General's certification.

Even in circuits that, unlike the Second Circuit, rule on a fully briefed motion to substitute before granting substitution by the United States, the plaintiff has the burden of proof "to show that the [Attorney General's] initial decision was incorrect" by alleging "specific facts that, taken as true, would

9

establish that the defendant's actions exceeded the scope of his employment." *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019) (citations omitted); *see also Lawson v. United States*, 103 F.3d 59, 60 (8th Cir. 1996); *Melo v. Hafer*, 13 F.3d 736, 746 (3d Cir. 1994). In her opposition to the Motion to Substitute, Carroll did not present any specific facts attempting to establish that President Trump's action to deny her claims through official White House channels exceeded the scope of his federal employment, which it did not. *See* Doc. 109.1.

The Panel's Order denying the Motion to Substitute conflicts with decisions by the Supreme Court, this Court, and other circuits. The Order's error implicates a threshold issue that will recur in every case involving a Westfall Act certification.

## II.    The Panel Erred By Not Recognizing that the United States' Westfall Act Certification Was Timely.

The United States made a timely certification that substituted it as the defendant in place of President Trump in this appeal. The Westfall Act modified the Federal Tort Claims Act ("FTCA") in two pertinent respects. First, it clarified that a FTCA action against the United States is the exclusive remedy for alleged torts committed by employees when acting within the scope of their employment and provided immunity for employees. Pub. L. No. 100-694 § 5, 102 Stat. 4564, amending 28 U.S.C. § 2679(b). Second, the

10

Westfall Act created a mechanism to permit the United States to remove covered actions filed against employees from state court and to substitute the United States as party defendant. 28 U.S.C. § 2679(d); Pub. L. No. 100-694 § 6. This Court has recognized these two distinct purposes. *See McHugh*, 966 F.2d at 72, *abrogated on other grounds by Osborn*, 549 U.S. 225.

As to the removal provision, the text of the Westfall Act specifies that "any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial." 28 U.S.C. § 2679(d)(2). But Congress only limited *removal* under the Westfall Act to "before trial." Notably, although Congress could have done so, it chose not to limit *substitution* or the employee's *immunity* to "before trial." The second and third sentences of Section 2679(d)(2), which deal with substitution and the conclusiveness of the Attorney General's certification for purposes of removal, do not contain any temporal limitation. *See De Martinez*, 515 U.S. at 432 ("Congress spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution.").

To be sure, Section 2679(d)(2) contemplates that if the Attorney General certifies before trial, the case will be removed, and the United States will be substituted as the defendant at that time. But in the unusual circumstances where an Attorney General withdrew certification, as was

11

done improperly here, nothing in Section 2679(d)(2) prevents that Attorney General—or a subsequent one—from later recertifying. Whenever the Attorney General certifies in a removed case, the plain terms of the statute require that "[s]uch action or proceeding shall be deemed to be . . . brought against the United States . . . , and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2).

That conclusion is reinforced by Section 2679(d)(1), which governs actions brought in federal district court. For those actions, Congress specified no temporal limitation at all. The Attorney General may certify at any time, whether before or after trial, thereby substituting the United States into the action as the party defendant. There is no apparent reason why Congress would have permitted substitution after trial or on appeal for actions brought originally in federal court, but not for actions brought in state court and timely removed pre-trial to federal court—indeed, courts have held that "subsection (d)(1) applies" in removed cases. *McHugh v. Univ. of Vt.*, 758 F. Supp. 945, 950 n.2 (D. Vt. 1991); *see also Wasserman v. Rodacker*, 557 F.3d 635, 639 (D.C. Cir. 2009). For actions in federal court (as opposed to those that proceed through trial in state court), Congress permits the Attorney General to certify whenever she believes that the law and facts warrant, as occurred here.

12

By law, immunity attaches regardless of the stage of litigation, including after trial. *See Barr v. Matteo*, 360 U.S. 564, 574 (1959). Courts routinely assess the immunity of federal employees following trial. *See*, *e.g.*, *Cnty. of Los Angeles v. Mendez*, 581 U.S. 420, 424, 432 (2017); *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 252 (2014). That there is no time limit on an employee's immunity in the Westfall Act, *see* 28 U.S.C. § 2679(b), or for substitution and certification under (d)(1) or (d)(2) in timely removed cases, confirms that Congress did not intend to change that rule.

The United States properly invoked its own rights and interests through the Motion to Substitute.[4] The Panel erred by denying that Motion, and this error improperly subjected the President of the United States to continued litigation and could be wielded against Presidents in the future.

---

[4] The employee's right to request a certification is separate and distinct from the Attorney General's right to issue a certification. The fact that the President did not move under (d)(3) does not affect the Attorney General's discretion to issue a certification voluntarily. *See* 28 U.S.C. § 2679(d)(1)-(2) (lacking any cross reference to subsection (d)(3)). Nor could the trial court "abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b), by curtailing the Attorney General's statutory authority to issue a Westfall Act certification, including by setting an extra-statutory deadline for certification.

13

### III. The Panel Erred By Not Providing Immunity to a Federal Employee for Statements Within the Scope of Employment.

As a previous panel of this Court has held, "the President is an employee of the government under the Westfall Act." *Carroll v. Trump*, 49 F.4th 759, 772 (2d Cir. 2022). Thus, Carroll's only option for substantively opposing the Attorney General's certification was to present evidence establishing that President Trump was somehow not acting within the scope of his employment at the time of his 2019 statements from the White House denying her allegations.[5] Carroll had the burden of proving that the President was not acting within the scope of his employment when he made those statements, which she could not have done under the facts. *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017); *Wilson*, 535 F.3d at 711. Therefore, Carroll presented no such evidence. *See* Doc. 109.1.

Where the facts pertinent to scope of employment are not disputed, the Court may resolve that issue as a matter of law. *Carroll*, 49 F.4th at 772; *Bello v. United States*, 93 F. App'x 288, 289-90 (2d Cir. 2004)). The District of Columbia's law applies to the scope of employment question here. *Carroll*, 49 F.4th at 772.

---

[5] The previous panel vacated the district court's judgment on the scope of employment question. *Carroll*, 49 F.4th at 761. The district court did not issue any subsequent rulings on this issue.

14

Applying the District of Columbia's law, the D.C. Circuit has held on numerous occasions that the Westfall Act applies to statements by public officials to reporters on matters of public interest. In a "directly on point" opinion, *Carroll*, 49 F.4th at 780, the D.C. Circuit held that a congressman "acted 'within the scope of employment' when he discussed his marital status in his office, during regular business hours, in response to a reporter's inquiries," *Ballenger*, 444 F.3d at 661. "Speaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's 'authorized duties,'" reasoned the court. *Id.* at 664. Because "[a] Member's ability to do his job as a legislator effectively is tied, as in this case, to the Member's relationship with the public and in particular his constituents and colleagues in the Congress," the court found "a clear nexus between the congressman answering a reporter's question about the congressman's personal life and the congressman's ability to carry out his representative responsibilities effectively." *Id.* at 665–66. The factual parallels to this action mean that no "categorical" approach, *Trump*, 292 A.3d at 239, is necessary for this decision to have binding effect here, determining that President Trump acted in the scope of his employment.

Relying on *Ballenger*, the D.C. Circuit held that executive branch employees were acting within the scope of employment when they disclosed

15

information to reporters "in order to diffuse ... criticism" of the Executive Branch. *Wilson*, 535 F.3d at 712. "It can hardly be disputed that such discussions were of the type that the defendants were employed to perform," ruled the court. *Id*. Significantly, "the court explained that '[o]f course, the defendants may discredit public critics of the Executive Branch.'" *Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009) (quoting *Wilson*, 535 F.3d at 712). The D.C. Circuit later extended the reasoning in *Ballenger* and *Wilson* to uphold the Attorney General's certification of public comments that a congressman made, including from his campaign office, "about the pressures on American troops" and "[a]ttacking the credibility" of the Secretary of Defense. *Id*. at 379, 384-86.

In response to a question that this Court certified in this case, the D.C. Court of Appeals explained that "the District of Columbia generally adheres to the Restatement (Second) of Agency's statement of *respondeat superior* law as expressed in § 228." *Trump*, 292 A.3d at 225. Under that framework, an employee's conduct is within the scope of employment if "(a) it is of the kind [the person] is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."

16

*Id.* at 228. The President's June 2019 comments regarding Carroll fully satisfy this standard. Speaking on behalf of himself and the administration on matters of public interest is one of the President's central duties. *See Trump*, 603 U.S. at 629. The President's comments were made in response to public inquiry and through official White House Channels. The June 2019 comments served the Executive Branch's legitimate interests in defending the character and fitness of the President. The President's comments involved no use of intentional force.

Other circuit courts have also consistently held that public officials were acting within the scope of their federal employment when they responded to reporter inquiries about matters of public interest. *Operation Rescue Nat'l v. United States*, 147 F.3d 68, 69, 71 (1st Cir. 1998) (affirming "[i]n all respects" the decision below that found Senator Ted Kennedy was acting within the scope of his employment when he made comments to reporters following a campaign fundraiser); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995). In fact, the Sixth Circuit held that reporter inquiries were not necessary when it found that Senator Elizabeth Warren and then-Representative Debra Haaland were acting in the scope of their employment when they published social media posts criticizing Kentucky

17

teenagers who were wearing Make America Great Again hats. *Does 1-10 v. Haaland*, 973 F.3d 591, 594-95 (6th Cir. 2020).

Circuit courts have uniformly held that federal employees act within the scope of their federal employment when they make statements on matters of public interest. Speaking on matters of public interest is an even more vital duty for the President. "The President of the United States possesses an extraordinary power to speak to his fellow citizens and on their behalf." *Trump v. Hawaii*, 585 U.S. 667, 701 (2018). "He is even expected to comment on those matters of public concern that may not directly implicate the activities of the Federal Government." *Trump*, 603 U.S. at 629. Indeed, "[m]ost of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities." *Id.*

Undisputed evidence proves that President Trump's statements here were "[i]n response to" questions from the press about Carroll's false accusations. *Carroll*, 49 F.4th at 761. A President's statements defending his fitness for office and bolstering public confidence in his leadership, issued through official White House channels and during White House press events, are plainly within the scope of his office. *See Trump*, 603 U.S. at 618; *Ballenger*, 444 F.3d at 665-66. A ruling otherwise would irreparably damage the Presidency.

## <u>CONCLUSION</u>

The Court should grant panel rehearing or en banc review.


Dated: July 2, 2025                    Respectfully Submitted,

                                       BRETT A. SHUMATE
                                       Assistant Attorney General
                                       Civil Division

                                       */s/ Jonathan D. Guynn*
                                       Jonathan D. Guynn
                                       Deputy Assistant Attorney General
                                       Torts Branch, Civil Division
                                       U.S. Department of Justice
                                       950 Pennsylvania Avenue NW
                                       Washington, DC 20503
                                       (202) 514-7835
                                       *jonathan.guynn@usdoj.gov*


                                       */s/ Justin D. Smith*
                                       Justin D. Smith
                                       James Otis Law Group, LLC
                                       530 Maryville Centre Drive
                                       Suite 230
                                       St. Louis, Missouri 63141
                                       (816) 678-2103
                                       *Justin.Smith@james-otis.com*

19

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,889 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f).

This document also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Justin D. Smith*
Justin D. Smith

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

————————————————————————

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of June, two thousand twenty-four,

Before:     Denny Chin,
            Sarah A. L. Merriam,
            Maria Araújo Kahn,
                *Circuit Judges.*

————————————————————————

E. Jean Carroll,                                    **ORDER**
                                                    Docket No. 24-644
        Plaintiff-ctr-defendant - Appellee,

    v.

Donald Trump, in his personal capacity,

        Defendant-ctr-claimant - Appellant,

-----------------------------------------

United States of America,

        Movant.

————————————————————————

    Oral argument in this matter is scheduled for June 24, 2025.  Appellant has moved to substitute the United States as a party pursuant to the Westfall Act, 28 U.S.C. §2679(d).

    IT IS HEREBY ORDERED that the motion is DENIED.  The Court will issue an opinion detailing its reasoning in due course.

                                    For The Court:
                                    Catherine O'Hagan Wolfe,
                                    Clerk of Court

