# 24-644

IN THE

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Appellee*,

v.

PRESIDENT DONALD J. TRUMP, in his personal capacity,

*Defendant-Appellant*,

--------------------------------------------------

UNITED STATES OF AMERICA,

*Movant.*

On Appeal from the United States District Court
For the Southern District of New York

## PETITION FOR PANEL REHEARING AND EN BANC DETERMINATION OF THE UNITED STATES AND PRESIDENT DONALD J. TRUMP

*(Counsel listed on inside cover)*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

Jonathan D. Guynn
Deputy Assistant Attorney General
Torts Branch, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20503
(202) 514-7835
Jonathan.Guynn@usdoj.gov

*Counsel for Movant*
*United States of America*

Justin D. Smith
James Otis Law Group, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
Justin.Smith@james-otis.com

*Counsel for Defendant-Appellant*
*President Donald J. Trump*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... ii

RULE 40(b) STATEMENT ................................................................1

INTRODUCTION ............................................................................ 2

BACKGROUND ............................................................................. 4

ARGUMENT.................................................................................. 5

   I.  The Panel Erred By Not Automatically Substituting the United States
      as a Defendant. ...................................................................... 5

     A. The Panel's Order conflicts with the Supreme Court, Second
        Circuit, and other circuits............................................... 5

     B. Other circuits require the plaintiff to present specific facts to
        oppose substitution. ....................................................... 7

  II. The Panel Erred By Holding That the Motion to Substitute Was
      Untimely Under the Westfall Act........................................... 9

     A. The Westfall Act's plain text ........................................... 9

     B. The Westfall Act's statutory purpose ............................12

     C. Relevant precedent.........................................................13

     D. No waiver .......................................................................16

     E. Equities .........................................................................17

CONCLUSION...............................................................................19

CERTIFICATE OF COMPLIANCE ....................................................20

*Panel Opinion Appended*

i

# **TABLE OF AUTHORITIES**

**Cases**                                                              **Page(s)**

*Aversa v. United States,*
    99 F.3d 1200 (1st Cir. 1996) ................................................... 18

*B & A Marine Co. v. Am. Foreign Shipping Co.,*
    23 F.3d 709 (2d Cir. 1994)....................................................1, 6

*Barr v. Matteo,*
    360 U.S. 564 (1959) ...............................................................13

*Bolton v. United States,*
    946 F.3d 256 (5th Cir. 2019) ................................................. 8

*Borneman v. United States,*
    213 F.3d 819 (4th Cir. 2000) ................................................. 7

*Bowles v. United States,*
    685 F. App'x 21 (2d Cir. 2017) ............................................. 6

*Brown v. Halpin,*
    885 F.3d 111 (2d Cir. 2018)..................................................13

*Carroll v. Trump,*
    49 F.4th 759 (2d Cir. 2022) ................................................. 18

*Celestine v. Mount Vernon Neighborhood Health Ctr.,*
    403 F.3d 76 (2d Cir. 2005) ...................................................15

*Cerwonka v. Dancy,*
    No. 17-CV-635, 2019 WL 2080334 (W.D. La. May 9, 2019) ...................15

*Connecticut Citizens Def. League, Inc. v. Thody,*
    No. 23-724-CV, 2024 WL 177707 (2d Cir. Jan. 17, 2024) ......................13

*Council on Am. Islamic Relations v. Ballenger,*
    444 F.3d 659 (D.C. Cir. 2006)............................................2, 19

*De Martinez v. Lamagno,*
    515 U.S. 417 (1995) ............................................................ 6, 10

*Debique v. Garland,*
    58 F.4th 676 (2d Cir. 2023) ....................................................16

*Gilbar v. United States,*
    229 F.3d 1151 (6th Cir. 2000) .................................................15

*Jackson v. Tate,*
    648 F.3d 729 (9th Cir. 2011) .................................................... 7

*Jacobs v. Vrobel,*
    724 F.3d 217 (D.C. Cir. 2013) .................................................. 7

*Jordan v. Hudson,*
    879 F.2d 98 (4th Cir. 1989) ....................................................14

*Lawson v. United States,*
    103 F.3d 59 (8th Cir. 1996) ...................................................... 8

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    591 U.S. 657 (2020) ............................................................. 9, 17

*Loehndorf v. United States,*
    No. C:14-0106, 2014 WL 3752120 (W.D. Wash. July 30, 2014).............16

*Lunsford v. Price,*
    885 F.2d 236 (5th Cir. 1989) ..................................................14

*Martin v. Hunter's Lessee,*
    14 U.S. 304 (1816).................................................................. 11

*McHugh v. Univ. of Vt.,*
    758 F. Supp. 945 (D. Vt. 1991) ..............................................16

*McLaurin v. United States,*
    392 F.3d 774 (5th Cir. 2004) .........................................11, 17-18

iii

*Melo v. Hafer,*
    13 F.3d 736 (3d Cir. 1994) ........................................................ 8

*Mitchell v. Carlson,*
    896 F.2d 128 (5th Cir. 1990) ................................................. 18

*Moreno v. Small Bus. Admin.,*
    877 F.2d 715 (8th Cir. 1989) ................................................14

*Mullane v. Moreno,*
    No. 21-13468, 2025 WL 1386666 (11th Cir. May 14, 2025)...................... 7

*Osborn v. Haley,*
    549 U.S. 225 (2007)........................................................... 1, 6-7

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1,*
    551 U.S. 701 (2007)..................................................................15

*Powerex Corp. v. Reliant Energy Servs., Inc.,*
    551 U.S. 224 (2007) ............................................................. 9

*Richardson v. United States,*
    No. 3:22-CV-00265, 2022 WL 17823700 (D. Nev. Dec. 20, 2022).........15

*Russello v. United States,*
    464 U.S. 16 (1983) ............................................................... 10

*Sowell v. Am. Cyanamid Co.,*
    888 F.2d 802 (11th Cir. 1989) .................................... 1, 14, 18

*State by Tong v. Exxon Mobil Corp.,*
    83 F.4th 122 (2d Cir. 2023) ................................................15

*Trump v. United States,*
    603 U.S. 593 (2024) .........................................................3, 18

*United States v. Craig,*
    694 F.3d 509 (3d Cir. 2012) ..............................................17

iv

*Velez-Diaz v. Vega-Irizarry,*
   421 F.3d 71 (1st Cir. 2005) ........................................................... 7

*Wasserman v. Rodacker,*
   557 F.3d 635 (D.C. Cir. 2009) .....................................................16

*Wilson v. Libby,*
   535 F.3d 697 (D.C. Cir. 2008) ..................................................... 2

*Wuterich v. Murtha,*
   562 F.3d 375 (D.C. Cir. 2009) ..................................................... 8

*Yalkut v. Gemignani,*
   873 F.2d 31 (2d Cir. 1989) ..........................................................14

## Statutory and Regulatory Authorities

28 U.S.C. § 2679 ............................................................................ 1-2

28 U.S.C. § 2679(b) ........................................................................13

28 U.S.C. § 2679(d)(1) ....................................................................17

28 U.S.C. § 2679(d)(2) ..................................................... 3, 5, 9, 17

28 U.S.C. § 2679(d)(3) ....................................................................12

Fed. R. App. P. 40(a) ..................................................................... 3

H.R. Rep. No. 100-700, at 9 (1988) .............................................12

PL 100–694, § 2(a)(5), Nov. 18, 1988, 102 Stat 4563 ..................12

PL 100–694, § 2(b), Nov. 18, 1988, 102 Stat 4564.......................12

PL 100–694, § 8(b), Nov. 18, 1988, 102 Stat 4565......................10

PL 100–694, § 8(c), Nov. 18, 1988, 102 Stat 4565 ..................... 10

Second Circuit Local R. 40.1(e) .................................................... 3

v

**Other Authorities**

Order, Doc. 22, *Galustian v. Peter*, 10-2377 (4th Cir. Mar. 16, 2011) ..........15

## <u>RULE 40(b) STATEMENT</u>

In denying the Motion for Substitution, the Panel erred on the following important questions of law, warranting panel rehearing and en banc determination:

1. Whether, under the Westfall Act, 28 U.S.C. § 2679, the United States is automatically substituted as a defendant upon the Attorney General's certification that a federal officer—here, the President—was acting within the scope of his office or employment at the time of the conduct out of which Plaintiff's claim arose. The Panel's Order conflicts with *Osborn v. Haley*, 549 U.S. 225 (2007), *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709 (2d Cir. 1994), among other circuits, and presents a question of exceptional importance.

2. Whether the United States timely filed a renewed Westfall Act certification, when a case removed from state court is on appeal after an earlier pre-trial Westfall Act certification was made by the Attorney General in 2020, but later withdrawn in 2023 following a change of presidential administrations. The Panel's Order conflicts with *Sowell v. Am. Cyanamid Co.*, 888 F.2d 802 (11th Cir. 1989), and presents a question of exceptional importance.

1

## <u>INTRODUCTION</u>

In 2019, President Donald J. Trump made statements denying false accusations levied against him in a *New York Magazine* article by E. Jean Carroll. President Trump made these statements from the White House in response to press inquiries about this matter of public interest, and the White House Press Office distributed his statements.

Under the Federal Employees Liability and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. § 2679, a federal officer or employee, including and especially the President, is protected from tort liability for actions performed within the scope of his office or employment. Courts have held that the Westfall Act applies to a member of Congress who discussed his marital status with a reporter, *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 664 (D.C. Cir. 2006), and even to Executive Branch officials who were alleged to have leaked information to reporters to discredit their critics, *Wilson v. Libby*, 535 F.3d 697, 711 (D.C. Cir. 2008). Here, the Attorney General certified in both 2020 and 2025 that President Trump was acting within the scope of his office or employment when he denied, from the White House, harmful and untrue allegations against him, which directly addressed his fitness for office and the public's trust.

2

The Panel's Order erroneously denying the United States' motion for substitution conflicts with prior decisions of the Supreme Court, this Court, and other circuit courts recognizing that the Attorney General's Westfall Act certification effectuates *automatic substitution* of the United States in place of the federal officer or employee, regardless of when such certification occurs, including after trial. The Order also conflicts with the Westfall Act's statutory text, which requires the Attorney General to provide a certification before trial for purposes of removal (as occurred here), but places no temporal limits on the Attorney General's discretion to certify and substitute the United States as the party in a lawsuit. *See* § 2679(d)(2).

These legal errors—if left uncorrected—would undermine the Westfall Act's protections for federal officers and employees, and severely damage the Presidency. *Cf. Trump v. United States*, 603 U.S. 593 (2024). The full Court should reverse the Panel's Order. In the alternative, the Court should hold this petition pending the Panel's decision on the underlying appeal.[1]

---

[1] The United States and President Trump are filing this new petition after the Panel's substantive Westfall Act order. *See* Local R. 40.1(e). President Trump reserves his right to file a separate petition, if necessary, should the Panel issue an adverse decision in the underlying appeal. *See* Fed. R. App. P. 40(a).

## **BACKGROUND**

On June 21, 2019, in response to reporter inquiries about Carroll's false allegations in a *New York Magazine* article, the White House Press Office distributed a statement from President Trump. A.1887. This statement was an official White House record stamped "Authenticated U.S. Government Information."[2] On June 22, 2019, in remarks on the White House South Lawn, also distributed by the White House Press Office, President Trump responded to questions from reporters about matters of public interest, including Iran, immigration, and Carroll's allegations, which went to his fitness for office. A.584-A.596.[3]

On November 4, 2019, Carroll commenced this defamation action in New York state court. On September 8, 2020, after the Attorney General's certification under the Westfall Act, the United States timely removed this action to the United States District Court for the Southern District of New York. On July 11, 2023, following the change in administrations, the then-Attorney General improperly withdrew the Westfall Act certification. Carroll

---

[2]     *Available     at*     https://www.govinfo.gov/content/pkg/DCPD-201900410/pdf/DCPD-201900410.pdf.

[3]     *Available     at*     https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-marine-one-departure-49/.

subsequently obtained an unjust judgment of $83.3 million for the President's official statements from the White House.

On April 11, 2025, the Attorney General re-certified under the Westfall Act that President Trump was acting within the scope of his federal office at the time of his 2019 statements. Doc. 107.2. The United States and President Trump then jointly moved to substitute the United States as a defendant for President Trump. Doc. 107.1. The Panel denied the Motion to Substitute on June 18, 2025, Doc. 124, and provided its reasoning for the denial on August 8, 2025. Doc. 130 ("Panel's Order").

## **ARGUMENT**

### I. **The Panel Erred By Not Automatically Substituting the United States as a Defendant.**

#### A. **The Panel's Order conflicts with the Supreme Court, Second Circuit, and other circuits.**

The Westfall Act is clear that, *by operation of law*, the United States should have been substituted as the party defendant in this case in place of President Trump upon the Attorney General's certification: "Upon certification by the Attorney General ... the United States *shall be substituted* as the party defendant." *See* 28 U.S.C. § 2679(d)(2) (emphasis added). Once this certification is made, the United States "must remain the federal defendant in the action unless and until the District Court determines that

5

the employee, *in fact,* and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of his employment." *Osborn*, 549 U.S. at 231 (emphasis in original). As the Supreme Court has made clear, substitution occurs automatically: "When the Attorney General has granted certification, if the case is already in federal court ... the United States *will be substituted* as the party defendant." *De Martinez v. Lamagno*, 515 U.S. 417, 431 (1995) (emphasis added). Thus, the United States' substitution was required and became immediately effective when the Attorney General issued the certification under the Westfall Act.

The Second Circuit has followed the Westfall Act's plain text and applied this automatic-substitution rule. "To emphasize the exclusivity of the remedy against the United States," reasoned this Court, the Westfall Act "*requires* that the United States be substituted as the party defendant upon certification by the Attorney General ... that the defendant employee was acting within the scope of his employment." *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 713 (2d Cir. 1994) (emphasis added). In an order correctly resolving a different case, the Second Circuit quoted the Supreme Court's rule that "[t]he United States ... must remain the federal defendant in the action unless and until" the court determines that the defendant "engaged in conduct beyond the scope of his employment." *Bowles v. United*

6

*States*, 685 F. App'x 21, 24 (2d Cir. 2017) (quoting *Osborn*, 549 U.S. at 231) (summary order). The Panel's Order conflicts with these decisions by not automatically substituting the United States as a defendant for President Trump upon the Attorney General's certification.

The Panel's Order also conflicts with decisions by at least five other circuits holding that, upon the Attorney General's certification, the United States is automatically substituted as the defendant. *See, e.g.*, *Mullane v. Moreno*, No. 21-13468, 2025 WL 1386666, at *9 (11th Cir. May 14, 2025); *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013); *Jackson v. Tate*, 648 F.3d 729, 736 (9th Cir. 2011); *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 75 (1st Cir. 2005); *Borneman v. United States*, 213 F.3d 819, 823 (4th Cir. 2000). Any judicial review of the Attorney General's certification occurs only *after* the United States is substituted. *Velez-Diaz*, 421 F.3d at 75; *Borneman*, 213 F.3d at 829. That was erroneously not followed here.

### B.    Other circuits require the plaintiff to present specific facts to oppose substitution.

Even in circuits that, unlike the Second Circuit, rule on a fully briefed motion to substitute before granting substitution by the United States, the plaintiff has the burden of proof "to show that the [Attorney General's] initial decision was incorrect" by alleging "specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his

7

employment." *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019) (citations omitted); *see also Lawson v. United States*, 103 F.3d 59, 60 (8th Cir. 1996); *Melo v. Hafer*, 13 F.3d 736, 746 (3d Cir. 1994). In opposing the substitution motion, Carroll presented no specific facts establishing that President Trump's action to deny her claims through official White House channels exceeded the scope of his federal office or employment, which it plainly did not. *See* Doc. 109.1. This is dispositive. "[W]here a plaintiff fails to allege sufficient facts to rebut the certification, the United States must be substituted as the defendant because the federal employee is absolutely immune from suit." *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009). Because President Trump's statements from the White House were within the scope of his employment, a fact that was not substantively contested by Carroll, the Panel erred by not providing immunity to President Trump. Upon the Attorney General's certification, the Panel should have treated the United States as the party defendant in this case in place of President Trump.

The Panel's denial of the Motion to Substitute conflicts with decisions by the Supreme Court, this Court, and other circuits. The error implicates a threshold issue that will recur in every case involving a Westfall Act certification.

8

## II.     The Panel Erred By Holding That the Motion to Substitute Was Untimely Under the Westfall Act.

In 2025, the Attorney General timely re-certified President Trump's actions under the Westfall Act. The Panel erred in holding otherwise.

### A.     The Westfall Act's plain text

The operative statutory language contains no time limitation. When the Attorney General issues a certification, § 2679(d)(2)'s second sentence provides, without any time limitation, that "[s]uch action or proceeding shall be deemed to be … brought against the United States … and the United States *shall be substituted* as the party defendant." 28 U.S.C. § 2679(d)(2) (emphasis added). Congress engaged in careful line-drawing when drafting the Westfall Act. "Congress could have limited [the Attorney General's] discretion in any number of ways," such as limiting certification and substitution to before trial, "but it chose not to do so." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020).

That conclusion is reinforced by virtually identical language in § 2679(d)(1), which deems a certified action to be against the United States and requires the United States to be substituted as the party defendant without any time limitation. "A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy*

9

*Servs., Inc.*, 551 U.S. 224, 232 (2007). Under either § 2679(d)(1) or § 2679(d)(2), the Attorney General may certify at any time, whether before or after trial, thereby substituting the United States into the action as the party defendant.

The Westfall Act's "Effective Date" provisions confirm this interpretation. The Act provides the Attorney General with 60 days to seek removal for any pending action in state court "as to which the period for removal...has expired"—in other words, a State case that was post-trial. PL 100–694, § 8(c), Nov. 18, 1988, 102 Stat 4565-66. Notably, Congress saw no need to impose an additional time limit for substitution in cases already pending in federal court. *See id.* at § 8(b).

To hold otherwise, the Panel wrongly read the time limit in § 2679(d)(2)'s first sentence on removal into its second sentence on substitution, which contains no time limit. Order, at 11-13. But "Congress spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution." *De Martinez*, 515 U.S. at 432. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Thus, because Congress included a time limit for

10

removal but not for substitution, the Panel should have proceeded on the correct basis that Congress intentionally did not impose a time limit for substitution.

The time limit in § 2679(d)(2)'s first sentence addresses concerns unique to removal under the Westfall Act. "The unambiguous language of Section 2679(d)(2) requires only that the government *remove* 'before trial.'" *McLaurin v. United States*, 392 F.3d 774, 778-79 (5th Cir. 2004) (emphasis added). While Congress could authorize removal after trial, *Martin v. Hunter's Lessee*, 14 U.S. 304, 349 (1816) (Story, J.), questions related to removal are not relevant here, as this case is already removed and pending in federal court. Only certification and substitution are at issue here.

The then-Attorney General satisfied § 2679(d)(2)'s first sentence in this case through his September 2020 certification and removal to federal court. *See* D.Ct. Doc. 1. The Panel's reasoning hinged on certification occurring before trial so that removal could occur before trial. Order, at 11-12. But the "before trial" removal requirement was not at issue with the Attorney General's 2025 re-certification because this case was already in federal court. In addition, time elements in § 2679 "do not inure to the benefit of tort plaintiffs but to the benefit of the government." *McLaurin*, 392 F.3d at 780.

11

The Panel also relied on the timing limitation in § 2679(d)(3). Order, at 12-13. But § 2679(d)(3) expressly applies only when, unlike here, the Attorney General has "refused to certify." 28 U.S.C. § 2679(d)(3). Section 2679(d)(3) does not bind the Attorney General's certification authority in any way before *or* after trial. *See id.* In fact, the language of § 2679(d)(3) being different from § 2679(d)(2), and containing a time limit on certification, underscores the fact that Congress intended to give the Attorney General authority to certify at any time, with no temporal limitation. The United States and President Trump did not rely on § 2679(d)(3), and the Panel erred in relying on it. *See* Doc. 107.1; Doc. 112.1.

## B.    The Westfall Act's statutory purpose

Congress declared that the Westfall Act's purpose is "to protect Federal employees from personal liability for common law torts committed within the scope of their employment." PL 100–694, § 2(b). Congress expressed concern that federal employees faced "an immediate crisis involving the prospect of personal liability." *Id.* at § 2(a)(5). To address this crisis, the Westfall Act "require[d]" substitution "whenever" the Attorney General issued a certification. *See* H.R. Rep. No. 100-700, at 9 (1988). Deprivation here of other Westfall Act purposes—a bench trial and the cost and effort of defending a lawsuit, *see* Order, at 13-14—should not be compounded to void

12

President Trump's Westfall Act protection from personal liability, mandated when a subsequent Attorney General certifies after trial.

Nor is it too late to assert immunity. *See* Order, at 14. Immunity "can be raised and decided for the first time on appeal, even after the case has been fully briefed." *Connecticut Citizens Def. League, Inc. v. Thody*, No. 23-724-CV, 2024 WL 177707, at *4 (2d Cir. Jan. 17, 2024). The Attorney General's 2025 re-certification also implicates the United States' sovereign immunity, which is a "jurisdictional defect" that "can be raised at any time." *Brown v. Halpin*, 885 F.3d 111, 118 (2d Cir. 2018) (citation omitted). By law, immunity attaches regardless of the stage of litigation, including after trial. *See Barr v. Matteo*, 360 U.S. 564, 574-75 (1959). Deeming the 2025 re-certification to be untimely would leave federal employees without recourse if, following a wrongful withdrawal of certification, a later administration re-certifies. That there is no time limit on a federal employee's immunity under the Westfall Act, *see* 28 U.S.C. § 2679(b), or for substitution and certification under (d)(1) or (d)(2) in timely removed cases, confirms that Congress did not intend to allow district courts to impose extra-statutory time limits.

## C.    Relevant precedent

The Panel's Order directly conflicts with a decision by the Eleventh Circuit granting substitution on appeal *after* a jury verdict for the plaintiff.

13

*Sowell*, 888 F.2d at 805-06. "Although [the federal employee defendant] has been represented on this appeal by private counsel," the Eleventh Circuit granted the United States' motions to substitute and dismiss because "the United States has moved to be substituted for him" after Westfall Act certification. *Id.* at 804-05.

Other circuits have also substituted the United States on appeal after a Westfall Act certification. The Fourth and Fifth Circuits granted substitution during an appeal of judgment for defendants. *See Jordan v. Hudson*, 879 F.2d 98, 99–100 (4th Cir. 1989); *Lunsford v. Price*, 885 F.2d 236, 237-38 (5th Cir. 1989) (certification under virtually identical Westfall Act provisions for the Tennessee Valley Authority). This Circuit and the Eighth Circuit substituted the United States during an appeal of a lower court's decision denying defendants' dispositive motions. *See Yalkut v. Gemignani*, 873 F.2d 31, 34-35 (2d Cir. 1989); *Moreno v. Small Bus. Admin.*, 877 F.2d 715, 716-17 (8th Cir. 1989).

None of these cases reasoned that the Westfall Act could be asserted only within a certain period after its passage. *Contra* Doc. 109.1, at 9 n.5. Indeed, decades after the Westfall Act's enactment, the Fourth Circuit recognized that certification could occur on appeal, without a time limit. *See*

14

Order, Doc. 22, *Galustian v. Peter*, 10-2377 (4th Cir. Mar. 16, 2011) (granting the United States' motion to substitute).

The Second Circuit decision on which the Panel incorrectly relied required a certification before trial in order for a case pending in state court to be removed. *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 81-82 (2d Cir. 2005). That issue is not relevant here because the Attorney General in 2020 timely removed this case before trial under the Westfall Act. In fact, none of the cases cited by the Panel involved a post-trial certification. *See* Order, at 17-18. This Court is not bound by the dicta of other federal district or circuit courts, *State by Tong v. Exxon Mobil Corp.*, 83 F.4th 122, 135 (2d Cir. 2023), particularly when "the point now at issue was not fully debated," *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 737 (2007).

The Panel's certification deadline for removal purposes ignores the many instances in which the Attorney General certified a case under the Westfall Act after its removal to federal court on other grounds. *See, e.g.*, *Gilbar v. United States*, 229 F.3d 1151 (6th Cir. 2000); *Richardson v. United States*, No. 3:22-CV-00265, 2022 WL 17823700, at *3 (D. Nev. Dec. 20, 2022) (citing cases); *Cerwonka v. Dancy*, No. 17-CV-635, 2019 WL 2080334, at *2 (W.D. La. May 9, 2019). Courts have even applied

15

§ 2679(d)(1), which contains no time restrictions, to cases that began in state court, but that are pending in federal court at the time of certification. *See, e.g.*, *Wasserman v. Rodacker*, 557 F.3d 635, 639 (D.C. Cir. 2009); *Loehndorf v. United States*, No. C:14-0106, 2014 WL 3752120, at *2 (W.D. Wash. July 30, 2014); *McHugh v. Univ. of Vt.*, 758 F. Supp. 945, 950 n.2 (D. Vt. 1991). By their terms, both §§ 2679(d)(1) and (d)(2) expressly permit the Attorney General to certify cases pending in federal court whenever she believes that the law and facts warrant, as occurred here, including after trial and during appeal.

### D. No waiver

The Panel should not have reached whether the United States waived its certification rights because Carroll never argued waiver by the United States. *See* Doc. 109.1. Under the party-presentation rule, the Panel should have "decide[d] only questions presented by the parties." *Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) (cleaned up).

Instead, the Panel erroneously decided waiver because it again wrongly held that the Attorney General must certify by a certain date. *See* Argument §§ I.A-B, *supra*. No time requirement applies to substitution, and those time elements in § 2679 "do not inure to the benefit of tort plaintiffs but to the benefit of the government, which ... waives its sovereign immunity and runs

16

the risk of incurring a judgment once it certifies the employee as a federal employee." *McLaurin*, 392 F.3d at 780. Since the Westfall Act does not impose time constraints on the Attorney General's certification for cases already pending in federal court, federal courts cannot impose extra-statutory time limits to certifications that occur after trial. "It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Little Sisters of the Poor*, 591 U.S. at 677 (citation omitted). Decisions involving evidentiary objections by private parties, *see* Order, at 21, do not affect this analysis.

A federal officer's right to request a certification is separate and distinct from the Attorney General's right to certify. That the President did not move for substitution under (d)(3) does not affect the Attorney General's discretion to issue a certification. *See* 28 U.S.C. § 2679(d)(1)-(2) (lacking any cross reference to subsection (d)(3)). The United States properly invoked its own rights and interests through the Motion to Substitute. The Panel erred by denying that Motion.

### E.  Equities

The Panel cited no authority allowing it to rely on purported equitable considerations when ruling on whether sovereign immunity applies. Order, at 22-23. Equity cannot abrogate sovereign immunity. *See, e.g.*, *United*

*States v. Craig*, 694 F.3d 509, 512 (3d Cir. 2012).

This Court correctly observed that "substituting the United States in place of [President] Trump means the failure of Carroll's defamation lawsuit." *Carroll v. Trump*, 49 F.4th 759, 766 (2d Cir. 2022). "This result may be thought to be harsh." *Mitchell v. Carlson*, 896 F.2d 128, 136 (5th Cir. 1990). But Congress "was in the best position to resolve the 'complex and often highly empirical inquiry' whether the 'contribution to effective government' sufficiently 'outweighs the potential harm to individual citizens' to warrant immunity in a particular context." *Aversa v. United States*, 99 F.3d 1200, 1207 (1st Cir. 1996) (citation omitted). Indeed, courts have permitted certifications after the parties have litigated for six years, *McLaurin*, 392 F.3d at 776-778, or a jury has rendered a verdict, *Sowell*, 888 F.2d at 805-06.

The Panel's Order wrongly deprives President Trump of his "absolute immunity from personal liability." *Carroll*, 49 F.4th at 760. It also improperly subjects him to continued litigation, which would be wielded against future Presidents. A President's statements defending his fitness for office and bolstering public confidence in his leadership, issued through official White House channels and during White House press events, are plainly within the scope of his office. *See Trump*, 603 U.S. at 618, 629;

18

*Ballenger*, 444 F.3d at 665-66. The Panel's ruling otherwise irreparably damages the Presidency and should be reversed.

## CONCLUSION

The Court should grant panel rehearing or en banc review.

Dated:  August 22, 2025          Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

*/s/ Jonathan D. Guynn*
Jonathan D. Guynn
Deputy Assistant Attorney General
Torts Branch, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20503
(202) 514-7835
*jonathan.guynn@usdoj.gov*

*/s/ Justin D. Smith*
Justin D. Smith
James Otis Law Group, LLC
530 Maryville Centre Drive
Suite 230
St. Louis, Missouri 63141
(816) 678-2103
*Justin.Smith@james-otis.com*

19

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3) because it contains 3,898 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f).

This document also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Georgia, a proportionally spaced typeface.

*/s/ Justin D. Smith*
Justin D. Smith

24-644
*Carroll v. Trump*

# 𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals

# 𝔉or the 𝔖econd 𝔆ircuit

---

August Term 2024

Argued: June 24, 2025
Decided: August 8, 2025

No. 24-644

---

E. JEAN CARROLL,

*Plaintiff-Appellee,*


*v.*


DONALD J. TRUMP, in his personal capacity,

*Defendant-Appellant,*


UNITED STATES OF AMERICA,

*Movant.* [*]

---

---

[*] The Clerk's Office is respectfully directed to amend the caption as reflected above.

Appeal from the United States District Court

for the Southern District of New York

No. 1:20CV07311,

Lewis A. Kaplan, *Judge*.

Before:        CHIN, MERRIAM, and KAHN, *Circuit Judges*.

On April 11, 2025, after this appeal was fully briefed, defendant-appellant President Donald J. Trump and the government jointly moved to substitute the United States as a party to this appeal pursuant to the Westfall Act, 28 U.S.C. § 2679(d).  Attached to the motion was an April 11, 2025, certification by a delegate of the Attorney General that Trump was acting in the scope of his office or employment at the time the statements underlying this defamation action were made.

Plaintiff-appellee E. Jean Carroll opposed the motion, contending that substitution under the Westfall Act on appeal is barred by the statute's text and that Trump waived any right to seek substitution by failing to petition the District Court before trial.

On June 18, 2025, this Court issued an order denying the motion.  We write now to articulate our reasoning for that denial.  Specifically, we conclude that the motion is statutorily barred by the text of the Westfall Act, that both Trump and the government waived any right to now move for substitution by failing to timely petition the District Court, and that, in any event, principles of equity warrant denying the belated motion.

Michael E. Talent, James Otis Law Group, LLC, St. Louis, MO, *for Defendant-Appellant*.

Roberta A. Kaplan, D. Brandon Trice, Maximilian T. Crema, Thomas A. Lloyd, Avita Anand, Kaplan Martin LLP, New York, NY, *for Plaintiff-Appellee*.

2

Jonathan D. Guynn, Deputy Assistant Attorney General, U.S. Department of Justice, *for* Yaakov Roth, Acting Assistant Attorney General, Civil Division, Washington, D.C., *for Movant*.

PER CURIAM:

On April 11, 2025, after this appeal was fully briefed, defendant-appellant President Donald J. Trump and the government ("the Movants") jointly moved to substitute the United States as a party to this appeal pursuant to the Westfall Act, 28 U.S.C. § 2679(d). Attached to the motion was an April 11, 2025, certification by a delegate of the Attorney General that Trump was acting in the scope of his office or employment at the time he made the statements underlying this defamation action.

Plaintiff-appellee E. Jean Carroll opposed the motion, contending that substitution under the Westfall Act on appeal is barred by the statute's text and that Trump waived any right to seek substitution by failing to petition the District Court before trial.

On June 18, 2025, this Court denied the motion. We write now to articulate our reasoning for that denial. Specifically, we denied the motion for three independent reasons. First, the motion is statutorily barred by the text of the

3

Westfall Act.  Second, even assuming it was not statutorily barred, both Trump

and the government waived any right to now move for substitution by failing to

request substitution after the case returned to the District Court following earlier

appellate proceedings.  Finally, and in any event, principles of equity counsel in

favor of denying the belated motion.

I.     **BACKGROUND**

On November 4, 2019, Carroll filed this action in New York state court,

asserting a single count of defamation *per se* against Trump in his individual

capacity, based on statements he made in June 2019 during his first term as

President of the United States.  The litigation proceeded in state court until

September 2020 when then-Attorney General William Barr, through his delegate,

certified that Trump had been acting within the scope of his employment when

he made the statements, removed the case to the United States District Court,

and filed a motion pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2), seeking to

substitute the United States as the defendant.  *See Carroll v. Trump*,

1:20CV07311(LAK) (S.D.N.Y. Sept. 8, 2020), ECF Nos. 1, 3.  Certification is

conclusive for purposes of the removal to federal court, but the question of

substitution is subject to judicial review.  *See De Martinez v. Lamagno*, 515 U.S.

4

417, 433-34 (1995).  Upon such review, the District Court denied the motion to substitute.  *See Carroll v. Trump*, 498 F. Supp. 3d 422, 430 (S.D.N.Y. 2020).

Trump filed an interlocutory appeal from that ruling, and on September 27, 2022, a divided panel of this Court reversed in part, vacated in part, and certified a question to the D.C. Court of Appeals.  *See Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022).  Specifically, this Court (1) reversed the District Court's finding that Trump was not an "employee of the Government" under the Westfall Act; (2) vacated the District Court's determination that Trump was not acting within the scope of his employment when he made the statements at issue; and (3) certified the scope-of-employment question to the D.C. Court of Appeals. *See id.* at 761, 770, 781.[1]

On April 13, 2023, the D.C. Court of Appeals clarified the scope of the doctrine of *respondeat superior* under District of Columbia law but declined to resolve the ultimate question of whether Trump was acting within the scope of his employment when he made the statements underlying Carroll's defamation claim.  *See Trump v. Carroll*, 292 A.3d 220, 240 (D.C. 2023).  We then remanded

---

[1] The day after this Court's decision, Trump moved the District Court to stay the proceedings and substitute the United States as defendant pending decision by the D.C. Court of Appeals.  The District Court declined to do so.

this matter to the District Court with instructions for it to apply the clarified D.C. law to the facts of this case.  *See Carroll v. Trump*, 66 F.4th 91, 94 (2d Cir. 2023) (per curiam).

On remand, the government filed a letter contending: "[T]he prior certification and motion to substitute have been overtaken by events.  The Attorney General should therefore be given the opportunity to decide anew whether to certify that Mr. Trump was acting within the scope of his office as President at the time of the incidents out of which the plaintiff's claim arose, and to do so with respect to the allegations that are set forth in the operative complaint."  *Carroll v. Trump*, 1:20CV07311(LAK) (S.D.N.Y. June 9, 2023), ECF No. 166 at 1.  On June 13, 2023, the District Court granted this request:

> In all the circumstances, any further submission by the United States (including any new or amended certification and/or motion to substitute) and/or the defendant with respect to substitution of the United States for the defendant shall be served and filed no later than July 13, 2023.

*Carroll v. Trump*, 1:20CV07311(LAK) (S.D.N.Y. June 13, 2023), ECF No. 169 at 1-2.

In response, on July 11, 2023, the government notified the District Court:

> [I]n light of the D.C. Court of Appeals' clarification of the standard for respondeat superior liability under D.C. law, *see Trump v. Carroll*, 292 A.3d 220 (D.C. 2023), as well as new factual developments, the Department of Justice is declining to certify under the Westfall Act, 28 U.S.C. § 2679(d), that defendant Donald J. Trump was acting within

> the scope of his office and employment as President of the United States when he made the statements that form the basis of the defamation claims in plaintiff's Amended Complaint in this action.

*Carroll v. Trump*, 1:20CV07311(LAK) (S.D.N.Y. July 11, 2023), ECF No. 177-1 at 1.

No further action was taken in the District Court by Trump or the government regarding Westfall Act substitution. The case proceeded to trial, and in January 2024, the jury rendered a verdict in Carroll's favor.

Trump appealed. On January 20, 2025, Trump was sworn into office for his second term as President. On April 11, 2025 – when Trump had been President for nearly three months and this appeal had been fully briefed for nearly two months – Trump and the government jointly moved in this Court to substitute the United States as a party under the Westfall Act. We issued an order on June 18, 2025, in advance of oral argument, denying the motion. We write to explain the bases for that decision.[2]

## II.  DISCUSSION

### A.  The motion to substitute is untimely under the Westfall Act.

Carroll argues that the Westfall Act does not "envision certification on

---

[2]  It is "common practice" for this Court to resolve a pending motion and later issue an opinion expounding on its reasoning. *Hassoun v. Searls*, 976 F.3d 121, 129 & n.4 (2d Cir. 2020) (collecting cases).

7

appeal after trial." Opp'n at 4. We agree, in the circumstances presented here.

The Westfall Act, 28 U.S.C. § 2679,[3] permits the United States, in certain

circumstances, to be substituted as a party in a lawsuit against a federal

employee alleging that the employee committed tortious conduct in the course of

his employment. *See Carroll*, 49 F.4th at 765. "[S]ubstituting the defendant with

the United States . . . mak[es] the action against the United States under the

FTCA the exclusive means of recovery for the injured individual in tort." *Id.*

The statute provides three avenues for substitution. For actions initiated in

federal court, § 2679(d)(1) provides:

> Upon certification by the Attorney General that the defendant
> employee was acting within the scope of his office or employment at
> the time of the incident out of which the claim arose, any civil action
> or proceeding commenced upon such claim in a United States district
> court shall be deemed an action against the United States under the
> provisions of this title and all references thereto, and the United States

---

[3] The Federal Tort Claims Act ("FTCA") was amended, by way of the Federal
Employees Liability Reform and Tort Compensation Act of 1988, to include the
statute we refer to as the Westfall Act. The Westfall Act was enacted in direct
response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988),
in which the Court held that "to gain immunity from suit for a common-law tort,
a federal employee would have to show (1) that he was acting within the scope of
his employment, and (2) that he was performing a discretionary function." *De
Martinez*, 515 U.S. at 425-26. Congress responded through the Westfall Act, and
"delete[d] the 'discretionary function' requirement, finding it an unwarranted
judicial imposition." *Id.* at 426. The purpose of the Westfall Act was to "return
Federal employees to the status they held prior to the *Westfall* decision." *Id.*
(quoting H.R. Rep. No. 100-700, p.4 (1988)).

shall be substituted as the party defendant.

For actions like this one that are initiated in state court, § 2679(d)(2)

provides for removal of the action to federal court, and then for a substantially

similar method for substitution:

> Upon certification by the Attorney General . . . , any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

28 U.S.C. § 2679(d)(2); *see also Osborn v. Haley*, 549 U.S. 225, 240-41 (2007)

(discussing the application of § 2679(d)(1) to suits filed in federal court and

§ 2679(d)(2) to suits filed in state court).

Under the plain language of the statute, substitution under either

§ 2679(d)(1) or § 2679(d)(2) is contingent upon certification by the Attorney

General.  Section § 2679(d)(3), on the other hand, provides an opportunity for

substitution where the employee does *not* have a certification from the Attorney

General:

> In the event that the Attorney General has refused to certify scope of

9

office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(3).  Certification under either § 2679(d)(1) or (d)(2) "does not

conclusively establish as correct the substitution of the United States as

defendant in place of the employee." *De Martinez*, 515 U.S. at 434; *accord Carroll*,

49 F.4th at 765-66; *Bowles v. United States*, 685 F. App'x 21, 23 (2d Cir. 2017)

(summary order).  Rather, it remains for the court to consider any objections, and

to determine whether "the Attorney General's scope-of-employment

certification" is correct.  *De Martinez*, 515 U.S. at 437.

The motion for substitution before us is properly analyzed under

§ 2679(d)(2) because Carroll's suit was "commenced . . . in a State court," and the

motion attaches a certification by the Attorney General's delegate.  Section

2679(d)(2) contains a timing restriction: "Upon certification by the Attorney

General . . . , any civil action or proceeding commenced . . . in a State court shall

be removed . . . at any time *before trial* by the Attorney General."  *Id*. § 2679(d)(2)

(emphasis added).  This motion was filed after trial, and before this Court,

during the pendency of Trump's appeal; Carroll argues that the motion is

therefore untimely under the statute.  *See* Opp'n at 4-5.

The Movants disagree, asserting that § 2679(d)(2)'s "before trial" limitation applies only to the initial act of removal and that the statute contains no express prohibition on a later post-removal *re*certification by the Attorney General.  The Movants further argue that because § 2679(d)(1), which governs substitution in actions commenced in federal court, contains no express timing restriction, imposing an "any time before trial" limitation on motions filed pursuant to § 2679(d)(2) would unreasonably treat substitution motions differently depending on the forum in which the suit was originally filed.  *See* Reply at 3-5. We are not persuaded for a number of reasons.

### 1.    Plain language of the statute

The "before trial" language in § 2679(d)(2) places a timing restriction on both the certification by the Attorney General *and* the removal of the suit from state court to federal court.  That is because, by operation of statute, the impetus for the removal – which must be accomplished before trial – is the certification. In other words, it is the certification itself that prompts the removal in the first instance.  Without certification, there is no removal.  *See* § 2679(d)(2) ("Upon certification . . . any civil action or proceeding commenced upon such claim in a

11

State court shall be removed without bond at any time before trial."); *see also De Martinez*, 515 U.S. at 431-32 ("If the case was initiated by the tort plaintiff in state court, the Attorney General is to remove it to the federal court.").  It is undisputed and indisputable that *removal* must be accomplished before trial; as such, the *certification* must be made before trial, too.

Even if § 2679(d)(2) did not apply to the instant motion, the Attorney General's 2023 rescission of his certification, at the very least, placed this case within the ambit of § 2679(d)(3)'s requirements.  Under that provision, too, the motion is untimely.  The plain language of § 2679(d)(3), which governs cases in which the Attorney General has not certified that an employee was acting within the scope of his employment, also requires any substitution motion to be made before trial: "[T]he employee may at any time *before trial* petition the court to find and certify that the employee was acting within the scope of his office or employment."  § 2679(d)(3) (emphasis added).  Section 2679(d)(3) does not distinguish between suits based on whether they were filed originally in state or federal court.  Thus, regardless of whether an employee is sued in federal or state court and petitions for substitution pursuant to § 2679(d)(3), he must do so before trial.

Adopting the Movants' position – that certification and substitution pursuant to § 2679(d)(2) and (d)(3) may occur at any time, even after trial – would require us to ignore the clear timing requirement contained in both of these provisions. The Movants' interpretation that the time limitation does not apply would read the words "at any time before trial" out of the statute, running afoul of the well-settled rule that "[i]t is our duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-539 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).

### 2.     Statutory purpose of the Westfall Act

The broader role and purpose of the Westfall Act also compellingly support our conclusion that substitution motions pursuant to § 2679(d)(2) and (d)(3) must be made before trial. Invocation of the Westfall Act, and substitution of the United States, "supplant[s] the jury in covered cases" because FTCA cases are subject to bench trials. *Osborn*, 549 U.S. at 252. Logically, the substitution under either subsection must occur prior to trial. Supplanting the jury as factfinder has little utility in a case, like this one, that has already been tried to a jury. Moreover, the Supreme Court has explained that "[t]he Westfall Act's core purpose also bears on the appropriate trier of any facts essential to certification.

13

That purpose is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders." *Id.*; *see also* H.R. Rep. No. 700, at 3 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945, 5946-47 (statement of Deputy Assistant Attorney General Robert L. Wilmore) ("The prospect of routinely compelling Federal employees to subject their personal resources to the lottery of a jury trial will leave them uncertain and intimidated in the performance of any official duties that might expose them to potentially ruinous personal liability."). In other words, Westfall Act substitution is in the nature of an immunity from suit, and "[i]mmunity-related issues, the Court has several times instructed, should be decided at the earliest opportunity." *Id.* at 253 (citing *Hunter v. Bryant,* 502 U.S. 224, 228 (1991) (per curiam) ("Immunity ordinarily should be decided by the court long before trial."), and *Anderson v. Creighton,* 483 U.S. 635, 646, n.6 (1987) ("[I]mmunity questions should be resolved at the earliest possible stage of litigation.")). We are many years removed from "the earliest opportunity."[4]

---

[4] Indeed, the Movants' attempt to certify Trump at this late stage of the litigation would have been foreclosed under the Federal Drivers Act, the predecessor to the Westfall Act. *See* 75 Stat. 539 (previously codified at 28 U.S.C. § 2679(d) (1982 ed.)). That is because, under the Federal Drivers Act, federal courts were required to remand removed cases to state court upon a determination that the federal employee was not acting within the scope of his employment. *See id.* We

14

### 3.    Second Circuit precedent interpreting similar language

Our conclusion is also supported by this Court's prior case law analyzing a related statutory provision with substantially similar language, 42 U.S.C. § 233(c). *See Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76 (2d Cir. 2005). In *Celestine*, the plaintiff sued Mount Vernon Neighborhood Health Center ("Mount Vernon") in state court, alleging that Mount Vernon was negligent and committed malpractice. *See id.* at 78. When Mount Vernon failed to respond or otherwise appear, Celestine moved for a default judgment. *See id.* Approximately one month later, the Attorney General certified pursuant to 28 U.S.C. § 2679 that "Mount Vernon was acting within the scope of its defined employment as an employee of the United States at the time of the alleged malpractice and that, pursuant to 42 U.S.C. § 233(g), any claims against" it must be brought under the FTCA. *Id.*

After removal, Celestine argued that the certification was untimely under § 233(l), which provides a 15-day window for the Attorney General to advise a

---

do not think that Congress omitted this provision from the Westfall Act to permit the Attorney General to do what it is trying to do here—recertify at any time in a removed case "whenever her view of the law or facts has changed." Reply at 4. Rather, as the Supreme Court observed in *De Martinez*, "Congress likely omitted this provision . . . because it had decided to foreclose needless shuttling of a case from one court to another." 515 U.S. at 434 n.10.

15

state court whether the defendant was an employee of a public health service.

*See id.* at 79.  The government countered that removal was timely under the broader language of § 233(c), which provides:

> Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed without bond *at any time before trial* by the Attorney General to the district court of the United States of the district and division embracing the place wherein it is pending and the proceeding deemed a tort action brought against the United States under the provisions of Title 28 and all references thereto.

42 U.S.C. § 233(c) (emphasis added); *see Celestine*, 403 F.3d at 80-81.  We agreed with the government that § 233(c) applied, holding that "if the Attorney General does not act [under § 233(l)] within fifteen days after receiving notice, § 233(c) remains a viable avenue for certification and removal by the Attorney General, even after those fifteen days – provided that the Attorney General acts *before the beginning of the state court trial*." *Id.* at 81 (emphasis added).  We later reiterated that certification must occur before trial: "The Government can, therefore, choose to remove a case from state court by proceeding pursuant to § 233(c).  (If so, the Attorney General, or his designee, must, at *any time before the state trial begins*, formally certify the status of the named defendant as a federal employee.)." *Id.* at 82 (emphasis added).

16

The text of § 233(c), which applies to federally funded public health centers, is substantively identical to § 2679(d)(2).  Both statutes provide that upon the Attorney General's certification, a suit in state court "shall be removed without bond at any time *before trial* by the Attorney General."  *Compare* § 233(c), *with* § 2679(d)(2) (emphasis added).  We held in *Celestine* that the plain text of § 233(c) requires pre-trial certification.  There is no principled reason to read the identical language in § 2679(d)(2) any differently.  *See Northcross v. Bd. of Ed. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (the "similarity of language in" two related statutes "is . . . a strong indication that the two statutes should be interpreted" in the same way).

### 4.    Weight of authority in other federal courts

The weight of authority in other courts, though not binding on us, likewise supports our conclusion.  Federal courts have consistently interpreted the subsections of § 2679(d) as requiring certification before trial.  *See, e.g.*, *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991) ("[C]hallenges to the Attorney General's certification must be resolved before trial, as soon after the motion for substitution as practicable, even if an evidentiary hearing is needed to resolve relevant fact disputes."); *Harper v. United States Dep't of the Interior*, No.

17

1:21CV00197(CRK), 2022 WL 425058, at *4 n.5 (D. Idaho Feb. 11, 2022) ("Although 28 U.S.C. § 2679(d)(1) does not explicitly provide a time period to file a certification, the Court sees no reason to apply a different time constraint for subsection (d)(1) than the statute provides under subsections (d)(2) and (d)(3), which permit certifications to be filed at any time before trial."); *Fajardo v. United States Dep't of State*, No. 3:16CV02980(LAB)(MDD), 2018 WL 539084, at *1 n.1 (S.D. Cal. Jan. 23, 2018) ("The only time limit for this certification [under subsection (d)(1) or (d)(3)] is that it must be made before trial.").

\*     \*     \*

In sum, the statute's plain text, context, and purpose; our own precedent analyzing similar statutory language; and the weight of authority in other federal courts all support one conclusion. A motion for substitution pursuant to § 2679(d)(2) or (d)(3) must be made *before trial*. The motion to substitute here, filed after entry of a verdict at trial and during the pendency of the appeal, is therefore statutorily barred.

### B. The Movants waived their rights to move for substitution.

Carroll next contends that "Trump waived any right to seek substitution when he failed to timely petition the district court pursuant to subsection (d)(3) for certification in 2023." Opp'n at 5. Again, we agree. Even if the motion were

18

not statutorily barred, Trump and the government have both waived their rights to move for substitution.

We begin with Trump's waiver. "Waiver" occurs when a litigant "intentional[ly] relinquish[es] . . . a known right." *Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 n.10 (2d Cir. 2023); *see also United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) (True waiver results "only from a defendant's intentional decision not to assert a right."). Trump could have sought substitution after the government declined to issue a pre-trial certification in July 2023 by petitioning the District Court under § 2679(d)(3). That provision provides that if "the Attorney General has refused to certify scope of office or employment under this section, the *employee* may at any time *before trial* petition the court to find and certify that the employee was acting within the scope of his office or employment." 28 U.S.C. § 2679(d)(3) (emphases added).

But Trump – the "employee" under this language – waived his right to petition for certification under that subsection. As set forth in detail above, after the D.C. Court of Appeals clarified the standard for *respondeat superior* liability, we remanded for the District Court to apply D.C. law to this case. *See Carroll*, 66 F.4th at 94. The District Court then provided both Trump and the government

19

an opportunity to make further submissions on the issue of Westfall Act

substitution – including "any new or amended certification and/or motion to

substitute" by July 13, 2023. *Carroll v. Trump*, 1:20CV07311(LAK) (S.D.N.Y. June

13, 2023), ECF No. 169 at 1-2. On July 11, 2023, the Attorney General declined to

certify that Trump was acting within the scope of his employment at the time the

statements were made. *See* Opp'n, Ex. A. Trump could have moved, at that time,

under § 2679(d)(3). He declined to do so. Indeed, at no time after the remand

did Trump file anything regarding substitution in the District Court. By

declining to seek such relief, Trump waived his right to now bring this motion.[5]

The government likewise waived its right to bring this motion and its

belated *re*certification. The government followed the statutory procedure set

forth in § 2679(d)(2) in 2020 when it certified that Trump was acting within the

scope of his federal employment and removed the suit from state to federal

court. But in 2023, when the question arose again, on a new legal and factual

---

[5] Trump argues that the District Court's July 13, 2023, deadline "did not curtail
the Attorney General's statutory authority to issue a Westfall Act certification."
Reply at 7. But the Attorney General *exercised* that authority by declining to issue
a certification on July 11, 2023 – within the District Court's deadline. In any
event, whether or not the District Court's July 13, 2023, deadline was binding,
Trump did not move for substitution under the *statutory* "before trial" deadline,
which certainly is binding.

record, the government determined that certification was *not* appropriate.  The

Movants contend that "in the unusual circumstances where an Attorney General

withdrew certification, nothing in Section 2679(d)(2) prevents that Attorney

General—or a subsequent one—from later recertifying because her view of the

law or facts has changed."  Reply at 4.  But our law of waiver does not permit a

party to withdraw an objection in the district court and then attempt to reassert

that objection on appeal, with the benefit of hindsight.  *See Spruill*, 808 F.3d at 597

("We have identified waiver where a party asserts, but subsequently withdraws,

an objection in the district court.").  The government determined that certification

was not appropriate under the *respondeat superior* standard as clarified by the

D.C. Court of Appeals and explicitly so advised the District Court.  It cannot now

change course on appeal.  The government has waived its right to bring this

belated motion.[6]

---

[6] We have exercised our discretion to reach waived issues only "to avoid
manifest injustice or if the argument presents a question of law and there is no
need for additional fact-finding."  *Commack Self-Serv. Kosher Meats, Inc. v. Hooker*,
680 F.3d 194, 208 n.11 (2d Cir. 2012).  Neither exception applies here.

Permitting the extremely belated motion to substitute would result in manifest
injustice to Carroll, while finding it waived wreaks no such injustice on Trump.
Trump has vigorously litigated this action without substitution through able
counsel of his choosing.  Requiring him to remain in the case at this late stage
does no injustice.

C.      As a matter of fairness, the motion must be denied as untimely.

The parties have litigated this case extensively for more than five years,

through multiple courts.  Liability was determined at the summary judgment

stage; the matter then proceeded to a jury trial on the issue of damages, and the

jury returned a verdict of $83.3 million in favor of Carroll.  After being sworn

into office for a second term as President on January 20, 2025, and throughout the

briefing in this appeal, neither Trump nor the government moved for

substitution.

The practical impact of permitting the Movants' untimely motion to

substitute would be to unwind those five years of litigation and a duly-rendered

jury verdict, and, potentially, to deprive Carroll of any opportunity to pursue her

---

And the issue of substitution does not present a pure issue of law; to the
contrary, as the D.C. Court of Appeals recognized, the scope-of-employment
inquiry is "fact-intensive."  *Trump*, 292 A.3d at 230.  Consideration of the merits
of the substitution motion would require remand to the District Court to make
findings of fact in the first instance.  *See, e.g., Bowles*, 685 F. App'x at 24 ("We
review the district court's legal conclusions regarding the denial of immunity *de
novo*, and its factual findings for clear error."); *Bello v. United States*, 93 F. App'x
288, 289 (2d Cir. 2004) (summary order) ("A district court will conduct *de novo*
review of a § 2679(d) certification if plaintiffs allege with particularity facts
relevant to the scope-of-employment issue." (citation and quotation marks
omitted)); *accord Cholewa v. United States*, No. 23-1278, 2024 WL 869550, at *3 (6th
Cir. Feb. 29, 2024) ("We cannot make the necessary findings in the first instance,
so we must vacate the order and remand for findings of fact.").

claims. As this Court observed in a prior opinion in this matter, a successful

motion to substitute would result in this matter being governed by the FTCA.

*See Carroll*, 49 F.4th at 765-66. Under the FTCA, the United States consents to suit

and thereby waives its sovereign immunity in certain matters, but with

important exceptions, including one that is squarely applicable here: "The FTCA,

expressly, does *not* waive the sovereign immunity of the United States for the tort

of defamation, *see* 28 U.S.C. § 2680(h). So substituting the United States in place

of Trump means the failure of Carroll's defamation lawsuit." *Id.* at 766

(emphasis added). The Movants' decision to forego certification until now

prevented the District Court from considering this case-dispositive issue in the

first instance – ahead of both the summary judgment ruling and jury trial. *See De*

*Martinez*, 515 U.S. at 420.

After several years of litigation, at substantial cost to all parties, and a

significant victory for Carroll, it is simply too late to bring this motion. Fairness

and equity dictate that the motion to substitute be denied.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the motion to substitute the United States as a

party pursuant to 28 U.S.C. § 2679(d) is **DENIED**.