# 24-644

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

    Plaintiff-Counter-Defendant-Appellee,

v.

PRESIDENT DONALD J. TRUMP, in his personal capacity,

    Defendant-Counter-Claimant-Appellant.

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

BRETT A. SHUMATE
    *Assistant Attorney General*
    *Civil Division*

JONATHAN D. GUYNN
    *Deputy Assistant Attorney General*
    *Torts Branch, Civil Division*
    *U.S. Department of Justice*
    *950 Pennsylvania Ave N.W.*
    *Washington, D.C. 20503*
    *(202) 514-7835*
    *jonathan.guynn@usdoj.gov*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION AND INTEREST OF THE UNITED STATES .................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.     The En Banc Court Should Resolve The Exceptionally Important Question Whether The Panel Erred By Subjecting Presidential Immunity To Harsher Waiver Rules Than Analogous Immunities .................................................................................. 4

II.    The Panel Erred By Concluding, Without Adequate Analysis, That Presidential Immunity Was Waived Here ....................................... 6

CONCLUSION ...................................................................................................... 11

CERTIFICATE OF COMPLIANCE ................................................................. 12

# TABLE OF AUTHORITIES

*Allen v. Cooper*,
    589 U.S. 248 (2020) .................................................................................. 7

*Atascadero State Hosp. v. Scanlon*,
    473 U.S. 234 (1985) .................................................................................. 7

*Beaulieu v. Vermont*,
    807 F.3d 478 (2d Cir. 2015) ..................................................................... 7

*Brown v. Artuz*,
    124 F.3d 73 (2d Cir. 1997) ....................................................................... 8

*Carroll v. Trump*,
    680 F. Supp. 3d 491 (S.D.N.Y. 2023) ...................................................... 2

*Carroll v. Trump*,
    685 F. Supp. 3d 267 (S.D.N.Y. 2023) ...................................................... 2

*Carroll v. Trump*,
    88 F.4th 418 (2d Cir. 2023) ("*Carroll 3*") ........................................ 2, 10

*Cayuga Indian Nation v. Seneca County*,
    761 F.3d 218 (2d Cir. 2014) ..................................................................... 8

*Michigan v. Bay Mills Indian Cmty.*,
    572 U.S. 782 (2014) .................................................................................. 7

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ....................................................................... 1, 2, 4, 6

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
    180 F.3d 426 (2d Cir. 1999) ..................................................................... 7

*Trump v. United States*,
    603 U.S. 593 (2024) ......................................................................... 1, 4, 8

*United States v. Chavis*,
   719 F.2d 46 (2d Cir. 1983) ............................................................................... 8

*United States v. Helstoski,*
   442 U.S. 477 (1979) ....................................................................................... 7

## INTRODUCTION
## AND INTEREST OF THE UNITED STATES

The United States files this amicus brief in support of the President's petition for rehearing en banc. The United States has a strong interest in the scope of presidential immunity, including the President's "absolute immunity from damages liability predicated on his official acts," which is "rooted in the constitutional tradition of the separation of powers and supported by our history." *Trump v. United States*, 603 U.S. 593, 611 (2024) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982)).

The panel weakened that important and long-recognized immunity by concluding that it can be—and was—waived by not asserting it in an answer and by statements of counsel at a previous oral argument. That conclusion was error. It treated the President's immunity from damages liability predicated on official acts as a disfavored form of immunity, more easily lost than analogous immunities and even some ordinary procedural rights. The panel's weakening of the immunity—without meaningfully considering contrary arguments—damages the institution of the presidency and warrants en banc reconsideration.

## BACKGROUND

This appeal follows a jury trial regarding damages for two statements that the district court held to be defamatory, made by the President from the White House to reporters during his first term. Op.5-8, 14-15. Before the jury's verdict, the President repeatedly asserted the "absolute immunity from damages liability predicated on [the President's] official acts." *Fitzgerald*, 457 U.S. at 749. In addition to asserting in the original answer that "[t]he alleged defamatory statements [were] privileged or protected by one or more immunities … under the Constitution of the United States," Op.11 (citation omitted), the President also (1) moved to amend his answer to specifically assert presidential immunity; (2) asserted presidential immunity when answering the amended complaint; and (3) asserted presidential immunity at summary judgment. *Carroll v. Trump*, 680 F. Supp. 3d 491, 499-509 (S.D.N.Y. 2023); *Carroll v. Trump*, 685 F. Supp. 3d 267, 279 (S.D.N.Y. 2023).

In a previous appeal, a panel held that presidential immunity was waivable, the President (through private counsel) waived the immunity by failing to assert it with sufficient clarity in his original answer, and the

President could not assert presidential immunity later in the litigation. *Carroll v. Trump*, 88 F.4th 418, 429-33 (2d Cir. 2023) ("*Carroll 3*").

In this appeal, the panel held that *Carroll 3* controlled as the law of the case and the President could not, in this appeal, press arguments about the standard for a waiver of presidential immunity. Op.20-26. In the alternative, it held that even if a waiver of the immunity must be "explicit and unequivocal," the "concession in *Carroll 3*," "that if presidential immunity were waivable, [the President] waived it," would suffice. Op.25 n.12.

The President sought rehearing en banc regarding (1) whether and when the President can waive presidential immunity from civil damages liability predicated on official acts and (2) whether the jury's punitive damages award of $83.3 million violates due process. This brief addresses presidential immunity, in view of the United States' strong interest in that exceptionally important issue.

3

ARGUMENT

I.  **The En Banc Court Should Resolve The Exceptionally Important Question Whether The Panel Erred By Subjecting Presidential Immunity To Harsher Waiver Rules Than Analogous Immunities.**

Questions about the nature, scope, and strength of presidential immunity are exceptionally important. The President uniquely bears responsibility for decisions "of utmost discretion and sensitivity." *Trump*, 603 U.S. at 610-11 (citation omitted). The "singular importance of the President's duties," the "intense feelings" the President's actions often arouse, and "the sheer prominence of [his] office" make the President a ready target for civil lawsuits predicated on his official acts. *Id.* at 611. Immunity from damages liability predicated on those acts, which flows from "the constitutional tradition of the separation of powers" and "our history," protects "not only the President and his office but also the Nation that the Presidency was designed to serve," *Fitzgerald*, 457 U.S. at 749, 753, by permitting the President to vigorously and faithfully discharge the "unrivaled gravity and breadth" of his constitutional role, *Trump*, 603 U.S. at 607 (citation omitted).

Presidential immunity from civil damages liability predicated on the President's official acts thus both flows from and secures the constitutional

order. Undermining the President's ability to make the "sensitive and far-reaching decisions entrusted" to him threatens to imperil "the effective functioning of government" by interfering with "the protection of the community against foreign attacks, the steady administration of the laws, the protection of property, and the security of liberty." *Trump*, 603 U.S. at 610-11 (citations omitted). Damages liability predicated on the President's official acts would interfere with those critical responsibilities.

The panel erred on an important legal question about that structurally and functionally critical immunity. An immunity that can be lost too easily—even unintentionally—is far less potent than an immunity that requires an express, intentional waiver or that is not waivable at all. As explained below, the importance of comparable immunities that arise from and secure the federal government's structure is reflected in precedent requiring that, to the extent analogous immunities can be waived, any waiver must be express and intentional.

The *Carroll 3* panel's incorrect decision to treat presidential immunity as readily lost through inadvertence (and not revivable thereafter), and the most recent panel's deference to that decision, also warrant en banc reconsideration because they conflict with the treatment of comparable

5

immunities. Again, as explained below, analogous constitutionally rooted immunities cannot be lost unintentionally. Instead, to the extent they are waivable, they can be waived only through express, unequivocal words or acts. The latest panel's decision created conflicts with circuit precedent on what constitutes a waiver of such an immunity. Those conflicts, on issues of exceptional importance to the present and future functioning of the federal government, deserve the en banc court's resolution.

## II. The Panel Erred By Concluding, Without Adequate Analysis, That Presidential Immunity Was Waived Here.

The Supreme Court has never held that presidential immunity is waivable. Even assuming it is waivable, it cannot be lost inadvertently. The panel erred, and created conflicts with circuit and Supreme Court precedent regarding waiver of analogous immunities by rejecting that argument and concluding that the President waived the immunity here.

The President's immunity from civil damages liability predicated on his official acts arises from and secures the constitutional structure of our government. *See Fitzgerald*, 457 U.S. at 749-53. Several analogous immunities arise from similar considerations and serve similar purposes. These other constitutionally rooted immunities include legislative

6

immunity, the states' sovereign immunity, and tribal sovereign immunity. *See, e.g.*, *Allen v. Cooper*, 589 U.S. 248, 254-55 (2020); *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 789-90 (2014); *United States v. Helstoski*, 442 U.S. 477, 491-92 (1979).

Under circuit and Supreme Court precedent, those analogous immunities can be waived, if at all, only through clear, unequivocal statements or unambiguous litigation conduct:

- Legislative immunity can be waived, if at all, only through an "explicit and unequivocal renunciation." *Helstoski*, 442 U.S. at 491-92.

- A state's sovereign immunity

    o "need not be raised in the trial court" and is not waived when first raised in defendant's "motion for summary judgment rather than in its answer." *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 449 (2d Cir. 1999);

    o is not waived even when asserted belatedly, in a "chang[e]" of "strategy," after the state earlier "assur[ed]" plaintiffs it "would not present a sovereign immunity defense." *Beaulieu v. Vermont*, 807 F.3d 478, 481, 486, 491 (2d Cir. 2015).[1]

- Tribal sovereign immunity can be waived in litigation only through "an unequivocal expression" of intent to waive it.

---

[1] This rule governs even though state sovereign immunity is not strictly jurisdictional. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).

>*Cayuga Indian Nation v. Seneca County*, 761 F.3d 218, 221 n.1 (2d Cir. 2014).

Yet the panel treated presidential immunity from damages liability predicated on official acts—which, again, reflects and protects the President's unique and determinative constitutional role—as weaker, and far easier to inadvertently lose, than those analogous immunities. That was error.

Even worse, the panel treated presidential immunity as more easily lost than various ordinary rights that are important but—unlike constitutionally rooted immunities—are not indispensable incidents of our form of government. For example, a criminal defendant can waive a unanimous jury verdict only after a judge's "searching inquiry to [e]nsure that the defendant was fully aware of his right to a unanimous verdict" and consciously chose to "give[] up that right." *United States v. Chavis*, 719 F.2d 46, 48 (2d Cir. 1983). And the "right to testify" is "waivable only by the defendant himself," not by counsel. *Brown v. Artuz*, 124 F.3d 73, 77-78 (2d Cir. 1997). The sort of "prosaic tools" that "may suffice to protect the constitutional rights of individual criminal defendants" do not adequately protect the Presidency, *Trump*, 603 U.S. at 631-32, but the panel failed to

8

afford the President even the protections it would safeguard in an ordinary prosecution.

The panel's determination that the President (through private counsel) waived presidential immunity by not clearly asserting it in the initial answer (despite generically asserting it in that answer, moving to specifically assert it in an amended answer, and asserting it in an answer to an amended complaint, at summary judgment, and on appeal) relegated the President's immunity from civil damages predicated on official acts to a disfavored tier, in conflict with circuit and Supreme Court precedent on analogous immunities. Presidential immunity cannot be so disfavored.

The panel's alternative holding, that statements during the *Carroll 3* oral argument "surely" were an "explicit and unequivocal" waiver of the immunity even if that standard governs, also damages the Presidency. Op.25 n.12. The statements cited fall far short of waiver. Counsel's agreement that if, *counterfactually*, "the plaintiff [had] not filed the amended complaint" and "there was no leave to amend that was properly denied," then the immunity "was not … properly raised at that point," Oral Arg. 9:34-10:33, cannot be an explicit and unequivocal waiver on the *actual* facts here—especially when counsel's position was plainly that the immunity

9

"was properly raised and was properly invoked by President Trump" in this case, *id.* 11:28-11:48. The same goes for counsel's agreement that the immunity "was not raised in the answer" initially filed in state court. Again, that is far from explicitly, unequivocally relinquishing the immunity. *Id.* 12:03-12:20.

Despite the importance of this legal question and the conflict it created between presidential immunity and comparable immunities, the panel scarcely analyzed the issue of waiver here. Instead, the panel erroneously held that the *Carroll 3* panel's conclusion, that failure to clearly assert the immunity in the initial answer waives the immunity, controlled as the law of the case. *Carroll 3*'s analysis spanned just seven sentences, cited no legal authority, and did not attempt to identify the standard it applied to determine that the President waived the immunity. *Carroll 3*, 88 F.4th at 429-30. And in this appeal, the panel declined to conduct that analysis itself.

The result is that an important legal question about the structure of the United States government has been precedentially settled in this circuit with no legal analysis: Failure, at worst, to unambiguously assert presidential immunity in an answer waives the immunity, unlike other

10

immunities, despite repeated assertions of the immunity well before trial. The panel's decision to resolve this important question without providing reasoning for that conclusion makes it all the more important for the en banc court to consider whether presidential immunity is, as the panel concluded without reasoning, subject to much harsher waiver standards than analogous immunities.

## CONCLUSION

The Court should grant rehearing en banc.

Dated: September 29, 2025

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
  *Civil Division*

 /s/ Jonathan D. Guynn
Jonathan D. Guynn
  *Deputy Assistant Attorney*
    *General*
  *Torts Branch, Civil Division*
  U.S. Department of Justice
  950 Pennsylvania Ave N.W.
  Washington, D.C. 20503
  (202) 514-7835
  jonathan.guynn@usdoj.gov

11

## CERTIFICATE OF COMPLIANCE

I hereby certify this brief complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Book Antiqua, a proportionally spaced font. According to the word count of Microsoft Word, the brief contains 1,937 words, excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii).

/s/ Jonathan D. Guynn
Jonathon D. Guynn
