# 24-644

## United States Court of Appeals
### for the
## Second Circuit

—•—

E. JEAN CARROLL,

*Plaintiff-Appellee,*

– v. –

DONALD J. TRUMP, in his personal capacity,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE IN RESPONSE TO DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC DATED SEPTEMBER 23, 2025

ROBERTA A. KAPLAN
D. BRANDON TRICE
MAXIMILIAN T. CREMA
AVITA ANAND
KAPLAN MARTIN LLP
1133 Avenue of the Americas,
   Suite 1500
New York, New York 10036
(212) 316-9500

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

STANDARD .................................................................................................3

ARGUMENT ...............................................................................................4

    I.    Trump is Not Entitled to Presidential Immunity. ............................4

        A.  The Petition Should be Denied Based on the Law of the Case. ..................4

        B.  Trump Fails to Identify Any Error or Ground for Rehearing. .....................6

    II.  The Jury's Punitive Damages Award was Proper. .......................13

CONCLUSION ...........................................................................................16

## TABLE OF AUTHORITIES

**CASES** *Page(s)*

*Bacon v. Nygard*,
232 A.D.3d 407 (1st Dep't 2024)................................................................15

*Barrett v. Harrington*,
130 F.3d 246 (6th Cir. 1997).....................................................................12

*Block v. First Blood Assocs.*,
988 F.2d 344 (2d Cir. 1993) ........................................................................5

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) ..................................................................................12

*Carroll v. Trump*,
680 F. Supp. 3d 491 (S.D.N.Y. 2023)........................................................11

*Carroll v. Trump*,
88 F.4th 418 (2d Cir. 2023) ................................................................ *passim*

*Clinton v. Jones*,
520 U.S. 681 (1997) ............................................................................ 11, 12

*Council on Am. Islamic Rels. v. Ballenger*,
444 F.3d 659 (D.C. Cir. 2006)...................................................................12

*Edelman v. Jordan*,
415 U.S. 651 (1974) ............................................................................ 10, 11

*First Nat'l Bank of Hollywood v. Am. Foam Rubber Corp.*,
530 F.3d 450 (2d Cir. 1976) ....................................................................4, 5

*Freeman v. Giuliani*,
732 F. Supp. 3d 30 (D.D.C 2024)...............................................................15

*Galella v. Onassis*,
487 F.2d 986 (2d Cir. 1973) ........................................................................3

*Gravel v. United States*,
    408 U.S. 606 (1972) ................................................................8

*Hutchinson v. Proxmire*,
    443 U.S. 111 (1979) ..............................................................12

*Knight First Amend. Inst. v. Trump*,
    953 F.3d 216 (2d Cir. 2020) ...................................................3

*Lafferty v. Jones*,
    2022 WL 18110184 (Conn. Super. Nov. 10, 2022) ...............15

*Lafferty v. Jones*,
    327 A.3d 941 (Conn. App. Ct. 2024) ...................................15

*Nevada v. Hicks*,
    533 U.S. 353 (2001) ...........................................................1, 6

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ................................................................6

*Operation Rescue Nat'l v. United States*,
    147 F.3d 68 (1st Cir. 1998) ..................................................12

*People v. Trump*,
    224 N.Y.S.3d 832 (Sup. Ct. N.Y. Cnty. 2024)......................12

*Prisco v. A&D Carting Corp.*,
    168 F.3d 593 (2d Cir. 1999) ...................................................5

*Richardson v. N.Y. State Dep't of Corr. Servs.*,
    180 F.3d 426 (2d Cir. 1999) .................................................10

*Stampf v. Long Island R. Co.*,
    761 F.3d 192 (2d Cir. 2014) .................................................14

*State Farm Mutual Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ..............................................................13

iii

*Trump v. Carroll*,
292 A.3d 220 (D.C. 2023) ........................................................................12

*Trump v. United States*,
603 U.S. 593 (2024) ........................................................... *passim*

*Turley v. ISG Lackawanna*,
774 F.3d 140 (2d Cir. 2014) ................................................ 2, 13, 14, 15

*United States v. Helstoski*,
442 U.S. 447 (1979) ..........................................................................7, 8

*United States v. Nordic Vill., Inc.*,
503 U.S. 30 (1992) ...............................................................................10

*Van Gemert v. The Boeing Co.*,
590 F.3d 433 (2d Cir. 1978) (en banc) .................................................4

*Wilson v. Libby*,
535 F.3d 697 (D.C. Cir. 2008) ............................................................12

## OTHER AUTHORITIES

Judge Jon O. Newman, *In Banc Practice in the Second Circuit*,
55 BROOK. L. REV. 355 (1989) .............................................................3

## RULES

Fed. R. App. P. 32 ..................................................................................17
Fed. R. App. P. 40 ..............................................................................3, 17

iv

Plaintiff-Appellee E. Jean Carroll ("Carroll") respectfully submits this brief in response to Defendant-Appellant Donald J. Trump's ("Trump") petition for panel rehearing and en banc determination, D.E. 138 ("Petition" or "Pet.").

## SUMMARY OF ARGUMENT

For the fourth time in this six-year-old case, President Trump asks this Court to revisit the same argument—that presidential immunity cannot be waived—that was decided and rejected by this Court in 2023. *Carroll v. Trump*, 88 F.4th 418 (2d Cir. 2023) (Cabranes, J.) ("*Carroll 3*"). The Court denied Trump's last en banc petition on this issue, *Carroll v. Trump*, No. 23-1045 (2d Cir.), D.E. 159, and the panel here properly rejected Trump's attempt to revisit the issue yet again based on *Trump v. United States*, 603 U.S. 593 (2024). The Court should deny this Petition for rehearing as well.

*First*, Trump is not entitled to presidential immunity. It is the law of the case that presidential immunity is waivable and Trump waived it here. *Carroll 3*. "[T]here is no authority … for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction" and cannot be waived. *Nevada v. Hicks*, 533 U.S. 353, 373 (2001) (Scalia, J.). Trump waived presidential immunity here by: (1) representing from day one in 2019 that he was not trying to avoid a determination on the merits; (2) asserting a counterclaim; (3) waiting three years (until the eve of trial) even to assert presidential immunity; and (4) conceding on the previous appeal

that if presidential immunity can be waived, he waived it. Carroll would be severely prejudiced if the Court were to revive Trump's presidential immunity defense after it was dismissed on interlocutory appeal and then a jury reached a verdict in her favor.

And even absent waiver, Trump would not be immune because his defamatory statements were extremely personal (both with respect to the underlying conduct and his attacks on Carroll), and the so-called "bully pulpit" did not give him license to say whatever he wanted without consequences in a civil lawsuit.

*Second*, there is no reason for this Court to convene en banc to review the jury's $65 million punitive damages award, which was 3.6 times higher than its compensatory award. While Trump claims that *Turley v. ISG Lackawanna*, 774 F.3d 140 (2d Cir. 2014), requires a 1:1 ratio, that is misguided. In *Turley*, this Court remitted the punitive damages award to a 2:1 ratio (not 1:1), based on a comparison to other Title VII hostile work environment cases, where damages awards are generally low, and the "imprecise" nature of the emotional harm awarded in that case as compensatory damages. *Id.* at 165-66.

Here, by contrast, the panel correctly applied *Turley* and other precedents in affirming the jury's punitive damages award, because the award is consistent with other recent defamation cases and was based on testimony about the concrete damage done to Carroll's career and what it would cost to repair her reputation.

2

Trump also fails to come to grips with the most important factor—the reprehensibility of his own conduct toward Carroll and as the case proceeded through the courts.  As the panel held, given the "unique and egregious facts of this case," the jury's award was fully justified.  D.E. 134 ("Op.") 61.

## STANDARD

Under Federal Rule of Appellate Procedure 40(b), a party seeking rehearing en banc must identify a conflict with a decision of the United States Supreme Court, this Court, or another circuit court, or it must pose a question "of exceptional importance."  Fed. R. App. P. 40(b).  "Rehearing en banc is not favored," Fed. R. App. P. 40(c), and "is not appropriate simply to resolve a mere disagreement with the outcome reached by a panel of this Court," *Galella v. Onassis*, 487 F.2d 986, 1004 (2d Cir. 1973) (per curiam).  In fact, "[a] distinctive feature of the Second Circuit is its infrequency of rehearing cases en banc," which reflects the view, "'strongly held by all members of the court, that in bancs are normally not a wise use of judicial resources.'"  *Knight First Amend. Inst. v. Trump*, 953 F.3d 216, 225 (2d Cir. 2020) (Parker, J., statement with respect to the denial of rehearing en banc) (quoting Judge Jon O. Newman, *In Banc Practice in the Second Circuit*, 55 BROOK. L. REV. 355, 369 (1989)).

## ARGUMENT

### I.    Trump is Not Entitled to Presidential Immunity.

### A.    The Petition Should be Denied Based on the Law of the Case.

In *Carroll 3*, this Court held that "presidential immunity is waivable and that [Trump] waived this defense."  88 F.4th at 425.  That is the law of the case and Trump has failed to identify any reason to reconsider it.  Op. 20-26.  The Supreme Court's recent decision in *United States v. Trump*, 603 U.S. 593 (2024), "did not alter the prevailing law on whether presidential immunity can be waived"; it does not even mention waiver.  Op. 22, 24.  And regardless, Trump cannot contest whether he waived immunity now, given that he previously chose to "argue only that presidential immunity could *never* be waived at all."  *Id.* at 24-25.

Trump argues that *Carroll 3* is not binding because Carroll would not be "seriously prejudiced."  Pet. 5-6 (quoting *Van Gemert v. The Boeing Co.*, 590 F.3d 433, 436 n.9 (2d Cir. 1978) (en banc)).  In the only case Trump cites, *First National Bank of Hollywood v. American Foam Rubber Corp.*, 530 F.2d 450 (2d Cir. 1976), the district court denied summary judgment, identifying one theory of liability for trial, and then issued final judgment based on a different theory.  This Court held that the law of the case did not apply there because the parties "were on notice prior to and during the trial" that defendants would request judgment based on the new theory and "did not suffer prejudice or surprise" as a result.  *Id.* at 453 n.3.

4

*First National Bank of Hollywood* demonstrates why the law of the case doctrine applies here. The trial court in this case did not *deny* summary judgment, leaving the issue of presidential immunity open for later resolution; the court instead *granted* summary judgment and dismissed Trump's presidential immunity defense from the case. Thus, the only "notice" Carroll had on the eve of trial was that presidential immunity had been removed from the case. *See, e.g.*, *Prisco v. A&D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) (prejudice means "a lack of sufficient opportunity to prepare armed with the knowledge that the prior ruling is not deemed controlling").

Carroll invested years into litigating this case that Trump now claims was barred from the get-go. Because Trump waited to raise this defense until after discovery was over, Carroll had no reason to ask about it at his deposition. Carroll also would have considered whether to retain an expert on the history of prior presidential practice or to engage in third-party discovery. "The longer the period of an unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (cleaned up). As the panel observed, "it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." Op. 25.

5

## B. Trump Fails to Identify Any Error or Ground for Rehearing.

Even if *Carroll 3* were not the law of the case, Trump's presidential immunity defense remains meritless.

### i. *Presidential immunity is waivable.*

Trump's primary argument is the one he made in *Carroll 3*: because presidential immunity is jurisdictional, it "cannot be waived." Pet. 3, 5. But as the Court explained two years ago in *Carroll 3*, "the Supreme Court has indicated that immunity defenses are not jurisdictional, and that presidential immunity is to be treated like other forms of immunity that [Trump] does not dispute are waivable." 88 F.4th at 429. In reaching that conclusion, this Court cited the Supreme Court's statement in *Nevada v. Hicks* that "[t]here is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction." *Id.* at 425 (quoting 533 U.S. at 373). Similarly, in *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the Supreme Court treated presidential immunity as a merits issue, separate and apart from subject-matter jurisdiction. *See Carroll 3*, 88 F.4th. at 426-27 (citing 457 U.S. at 749). If anything, as Judge Cabranes noted, "separation-of-powers considerations militate in favor of" Trump, as President and head of the Executive Branch, being "able to litigate if he chooses to do so." *Id.* at 427.

6

Trump has no response to any of this. *See* Pet. 10-13. His sole argument is that the "reasoning" of *Trump* "places Presidential immunity squarely within the line of cases holding that immunity doctrines rooted in the constitutional structure cannot be waived…." Pet. 11. But *Trump* says nothing whatsoever about waiver and there is no such line of cases. The Petition itself cites cases recognizing that immunities—including the sovereign immunity of the federal government and the states—*can* be waived. *Id.* at 11-12.

The sole case Trump cites for the notion that immunity cannot be waived is the Supreme Court's decision in *United States v. Helstoski*, 442 U.S. 447 (1979). Pet. 11-12. But *Helstoski* expressly *declined* to decide whether a legislator's immunity under the Speech or Debate Clause could be waived. 442 U.S. at 490-91. *Helstoski* held that when the executive branch criminally prosecutes a legislator, a finding of waiver requires an "explicit and unequivocal renunciation" because the Speech or Debate Clause is intended "to preserve the constitutional structure of separate, coequal, and independent branches of government." *Id.* at 491 (citation and quotation marks omitted). The Court concluded that the Congressman in *Helstoski* (unlike Trump here) had not waived immunity through his own actions,

and it declined to decide whether Congress could waive such immunity on behalf of its members.[1]

Several years earlier, in *Gravel v. United States*, the Supreme Court held that legislative immunity extends to congressional aides as a privilege "of the Senator" and thus can be "*waived by the Senator.*" 408 U.S. 606, 617, 622 n.13 (1972) (emphasis added). Trump provides no basis for thinking that a Senator can waive his or her aides' privilege, but not his or her own. Both *Helstoski* and *Gravel* demonstrate that the individual potentially subject to immunity has the power to waive the immunity. And Trump offers no good reason to treat presidential immunity differently.

ii. *Trump waived immunity here.*

As *Carroll 3* held, it was appropriate for the district court to find there had been waiver. 88 F.4th at 422 & n.1, 429-30. Trump not only failed to assert presidential immunity in his answer, he agreed in state court (where this case was initiated) that he was amenable to suit. When he sought a stay of the state court proceedings, he represented that "[n]o one is seeking to '*escape accountability here*'" and that Carroll was "free to pursue this action when the President is no longer

---

[1] *Helstoski* drew a distinction between criminal prosecutions and civil suits, noting that "the privilege was not born primarily of a desire to avoid private suits," which did not raise the same concerns. *Id.* at 491 (citations and quotations omitted). Trump himself acknowledged this difference in *Trump*. No. 23-939, Br. of Pet. 25 (S. Ct. Mar. 19, 2024).

in office." Op. 9 (emphasis added) (citation omitted). Those representations cannot be squared with his new position that he cannot be held accountable and that Carroll could not pursue her action once he invoked immunity.

After the stay was denied, Trump proceeded to litigate this case for three years, never saying a word about presidential immunity, even as he had the case removed under the Westfall Act and tried to assert an anti-SLAPP counterclaim against Carroll. It was only in connection with summary judgment on the verge of trial that Trump suddenly claimed that presidential immunity applied and the courts had lacked jurisdiction all along. *Id.* at 11-13.

In response, Trump points to his original Answer, which vaguely refers to "one or more immunities … under the Constitution of the United States," as well as the fact that he "contended through the Westfall Act that the alleged conduct constitutes official acts of the Presidency." Pet. 14 (citation and quotation marks omitted). But if Trump had asserted presidential immunity through his Answer, then he would have moved for dismissal on that basis. The litigation over the Westfall Act, after all, demonstrates that he was well aware of defenses based on the fact that he was the President.

Trump goes so far as to dispute the fact that his counsel conceded waiver during the prior interlocutory appeal in *Carroll 3*, chiding the judges for their "convoluted hypotheticals" and "fast-paced oral argument." Pet. 15. But as the

panel observed, when Trump's counsel was asked by Judge Kahn whether the "defense was waived … by not bringing that defense until after the amended complaint," counsel conceded that "the defense was not properly raised at that point." Oral Arg. at 9:35-11:49 (reflecting similar exchange with Judge Cabranes); *see also Carroll 3*, 88 F.4th at 430 ("Defendant's counsel conceded at oral argument that assuming the defense of presidential immunity is waivable, Defendant had waived that defense."). And in *Carroll 3*, Trump did not even *brief* the argument that his actions did not constitute waiver; he merely asserted that presidential immunity cannot be waived. *Carroll v. Trump*, No. 23-1045 (2d Cir.), D.E. 79 at 11-43.[2]

Although Trump cites cases involving sovereign immunity and the Eleventh Amendment (Pet. 12-13), the issue here is not whether Congress has waived or abrogated some form of sovereign immunity through legislation. *See United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-37 (1992) (Section 106(b) of Bankruptcy Code); *Edelman v. Jordan*, 415 U.S. 651, 672-73 (1974) (Social Security Act). In those situations, courts ask whether allowing the suit to proceed would undermine Congress's determination. Here, however, as Trump himself recognizes, the Constitution places "in the hands of a single … individual" control over litigation

---

[2] *Carroll 3* did not find, as Trump contends, that he had "forfeited" presidential immunity. Pet. 15. The Court expressly and repeatedly held that Trump "waived this defense." *E.g.*, 88 F.4th at 425.

10

against the president. Pet. 10 (quoting *Trump*, 603 U.S. at 610). When that President (here, Donald Trump) acts to waive his immunity, courts should follow his decision.[3]

### iii. *Trump is not immune.*

Even if Trump had not waived immunity, he would still not be immune for his defamatory statements about Carroll because "immunities are grounded in 'the nature of the function performed,'" and the Supreme Court has "never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity." *Clinton v. Jones*, 520 U.S. 681, 682, 694-95 (1997). In *Trump*, the Supreme Court reiterated that "not everything the President does is official," even if done through official channels, remanding the case for consideration of whether Trump's statements to his supporters in connection with January 6 were immune in light of the "content, form, and context" of the statements and the distinction between "the President's personal and official affairs." 603 U.S. at 629, 642 (citations and quotation marks omitted).

Here, as the district court explained in finding Trump was not immune, Trump denied an accusation of "personal wrongdoing" concerning a sexual assault that he had committed long before he was in office, and he did so by making highly

---

[3] Trump observes that in the Eleventh Amendment context, "failure to raise a structural immunity in the answer to the original complaint does *not* waive the immunity." Pet. 12 (citing *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 448 (2d Cir. 1999)). That is because the "Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power," and so "sufficiently partakes of the nature of a *jurisdictional* bar." *Edelman*, 415 U.S. at 677-78 (emphasis added).

11

"personal attack[s]" on Carroll. *Carroll v. Trump*, 680 F. Supp. 3d 491, 507 (S.D.N.Y. 2023). He also threatened Carroll, warning that she had entered into "dangerous territory" and would "pay dearly" for revealing what had happened. *Id.* at 496-97. While Trump focuses on the fact that he was speaking to the public on matters of public concern (Pet. 8-9), just as it was not dispositive that Trump's statements on January 6 were on a matter of public concern and made through a "public address," the fact that he made his defamatory comments about Carroll in a White House statement or in response to a reporter's questions does not automatically insulate him from civil liability here. *Trump*, 603 U.S. at 629.

Although Trump cites *Council on American Islamic Relations v. Ballenger*, that case dealt with whether a Congressman acted within the scope of his employment for purposes of the Westfall Act, not presidential immunity. 444 F.3d 659, 664-66 (D.C. Cir. 2006).[4] In any event, the D.C. Court of Appeals explained in this case that *Ballenger* does not "hold that the conduct of elected officials speaking to the press is always within the scope of that official's employment." *Trump v. Carroll*, 292 A.3d 220, 239 (D.C. 2023). In other words, Trump is not immune simply by insisting that his statements were "taken *within* an official capacity." *Clinton*, 520 U.S. at 694; s*ee also People v. Trump*, 224 N.Y.S.3d 832,

---

[4] *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008), and *Operation Rescue National v. United States*, 147 F.3d 68 (1st Cir. 1998), also dealt with Westfall Act issues.

863 (Sup. Ct. N.Y. Cnty. 2024) (Trump's statements on Twitter not protected); *Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993); *Hutchinson v. Proxmire*, 443 U.S. 111, 131-33 (1979); *Barrett v. Harrington*, 130 F.3d 246, 261 (6th Cir. 1997).

## II.     The Jury's Punitive Damages Award was Proper.

Trump also asks this Court to convene en banc to review the jury's $65 million punitive damages award, which Trump claims violates due process under this Court's decision in *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014). Pet. 4, 16-19.

Contrary to Trump's claim, *Turley* did not hold that "due process requires a lower punitive damages ratio of 1:1." *Id.* at 4 (quoting 774 F.3d at 165). *Turley*, in fact, quotes from the Supreme Court's decision in *State Farm Mutual Automotive Insurance Co. v. Campbell*, 538 U.S. 408 (2003), where the Court declared that "*there are no rigid benchmarks* that a punitive damages may not surpass." *Id.* at 425 (emphasis added). The *State Farm* Court further explained that the "line of constitutional impropriety" lies somewhere north of "more than *four times* the amount of compensatory damages," finding "instructive" 700 years of history of "sanctions of *double, treble, or quadruple* damages to deter and punish." *Id.* (emphasis added); *see also id.* (recognizing that "few awards exceeding a single-digit ratio," *i.e.*, higher than 9:1, "will satisfy due process").

13

Indeed, *Turley* specifically held that a 2:1 ratio was appropriate in that case, involving a Title VII claim, because the "compensatory award [was] particularly high" and the "underlying compensation [was] … for intangible—and therefore immeasurable—emotional damages." 774 F.3d at 165-66. But this is not a hostile work environment case: it is a defamation case against Trump arising out of a sexual assault. As the panel held, the compensatory damages award was "reasonable" given other recent defamation awards. Op. 58-60.[5] Moreover, Carroll's $18.3 million compensatory damages award was not based solely on "emotional damages." Rather, as the panel held, more than half of the award (or $11 million) was based on the testimony of Carroll's expert, who opined on what it would cost to repair her reputation. The rest was a combination of reputational and emotional harm given that Carroll lost the job she had held for 27 years as the nation's most widely-read advice columnist at *Elle Magazine* after Trump defamed her. *Id*. at 53-57; SPA. 137; A. 1245.[6]

Curiously, Trump argues that the Court erred because the "only comparator cases cited by the panel involved … other *punitive damages awards*, which is not what *Turley* permits." Pet. 18 (citing Op. 68-69). But that is wrong: the panel cited

---

[5] Trump selectively cites a handful of cases where compensatory damages awards for defamation were between $400,000 and $2.7 million. Pet. 18. But the panel explained why Carroll's award was reasonable here. Op. 58-60.

[6] *Stampf v. Long Island R. Co.*, 761 F.3d 192 (2d Cir. 2014), is thus inapposite.

14

cases demonstrating that the compensatory damages award *and* the punitive damages award here were not unreasonable, as *Turley* requires. Op. 58-59, 68-70; *see also Turley*, 774 F.3d at 166 (looking to "punitive awards" in assessing this factor).

Trump also takes issue with the panel's reliance on *Lafferty v. Jones* because common law punitive damages under Connecticut law are actually "compensatory in nature" since they include attorney's fees. Pet. 19 (quoting 2022 WL 18110184, at *3 (Conn. Super. Nov. 10, 2022)). But the *Lafferty* court awarded punitive damages separate and apart from attorney's fees, and the attorney's fees award was set aside not because it was too high, but because the plaintiffs had failed to prove the underlying statutory claim that would have entitled them to attorney's fees. *Lafferty v. Jones*, 327 A.3d 941, 978-79 (Conn. App. Ct. 2024). Similarly, it makes no difference that *Bacon v. Nygard* was "reversed on appeal for lack of service." Pet. 19 (citing 232 A.D.3d 407 (1st Dep't 2024)). In fact, the panel here recognized as much, yet correctly observed that the decision "remains a useful point of reference as to the amounts that other courts have found acceptable." Op. 69. And while Trump misleadingly argues that Rudy Giuliani was ordered to pay two election workers $75 million in punitive damages on "default judgment" (Pet. 19), he fails to mention the fact that the default judgment was *as to liability*, and the jury determined the damages award amount. *Freeman v. Giuliani*, 732 F. Supp. 3d 30, 41 (D.D.C.

15

2024). While Trump would like to wish these comparators away, none of the reasons he cites provides any basis to ignore them.

Finally and most significantly, Trump's arguments with respect to punitive damages go well beyond quibbling about the facts in cases. Trump ignores the first and "[p]erhaps the most important indicium of the reasonableness of a punitive damages award"—the "reprehensibility" of the conduct. *Turley*, 774 F.3d at 167 (citation and quotation marks omitted). The panel correctly recognized that the egregiousness of "Trump's conduct was remarkably high, perhaps unprecedented," Op. 63 (citation omitted), given his relentless defamation of Carroll even *after* the first jury found in her favor, his continued defamation of Carroll almost every day after court during the trial in this case, his disrespect for the federal court system that was evident to everyone in the courtroom at trial (including the jurors), and the violent threats that Carroll continues to receive to this day. Op. 63-65.

## CONCLUSION

The Petition should be denied.

Dated:   December 3, 2025          Respectfully submitted,
          New York, New York

                                   Roberta A. Kaplan
                                   D. Brandon Trice
                                   Maximilian T. Crema
                                   Avita Anand
                                   KAPLAN MARTIN LLP

16

1133 Avenue of the Americas,
Suite 1500
New York, New York 10036
(212) 316-9500

*Attorneys for Plaintiff-Appellee*
*E. Jean Carroll*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the length limits requirements of Fed. R. App. P. 40(d)(3)(A) and (d)(3)(4) because it contains 3,839 words, excluding those portions pursuant to Fed. R. App. P. 32(f).

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a) and (c)(2) because it was prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in size 14 Times New Roman font.


Dated:    December 3, 2025                    */s/ Roberta A. Kaplan*
             New York, New York                 Roberta A. Kaplan

18

# CERTIFICATE OF SERVICE

I, Roberta A. Kaplan, counsel for Plaintiff-Appellee and a member of the Bar of this Court, certify that, on December 3, 2025, copies of the foregoing brief were filed with the Clerk through the Court's electronic filing system, which will send notice of such filing to all counsel of record.

Dated:     December 3, 2025           _/s/ Roberta A. Kaplan_
             New York, New York            Roberta A. Kaplan