**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 24-644

Caption [use short title]

Motion for: Stay of the Mandate

Carroll v. Trump

Set forth below precise, complete statement of relief sought:

Stay of the Mandate pending Supreme Court review

MOVING PARTY: President Donald J. Trump      OPPOSING PARTY: E. Jean Carroll

☐ Plaintiff      ☐ Defendant

☑ Appellant/Petitioner      ☐ Appellee/Respondent

MOVING ATTORNEY: Justin D. Smith      OPPOSING ATTORNEY: Roberta A. Kaplan

[name of attorney, with firm, address, phone number and e-mail]

James Otis Law Group, LLC; 530 Maryville Centre Dr.,   Kaplan Martin; 1133 Avenue of the Americas, Suite 1500,

Suite 230, St. Louis, MO 63141; (314) 949-3018;   New York, NY 10036; (212) 316-9500;

justin.smith@james-otis.com   rkaplan@kaplanmartin.com

Court- Judge/ Agency appealed from: U.S. District Court, Southern District of New York; Hon. Lewis Kaplan

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____

Opposing counsel's position on motion:
☑ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☑ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No

Requested return date and explanation of emergency: _____

Is the oral argument on motion requested?   ☐ Yes   ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☑ Yes ☐ No If yes, enter date: Argued on June 24, 2025

**Signature of Moving Attorney:**

Justin D. Smith   Digitally signed by Justin D. Smith Date: 2026.05.05 20:41:40 -05'00'   Date: May 5, 2025      Service : ☑ Electronic   ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

E. JEAN CARROLL,

*Plaintiff-Counter-Defendant-Appellee,*

v.

PRESIDENT DONALD J. TRUMP,

*Defendant-Counter-Claimant-Appellant.*

No. 24-644

## UNOPPOSED MOTION OF PRESIDENT DONALD J. TRUMP TO STAY THE MANDATE

In a dissent from the denial of rehearing en banc, three judges of this Court identified in the Panel's opinions legal errors, important questions of federal law, as well as conflicts with the precedents of the Supreme Court and other circuit courts. *See Carroll v. Trump*, No. 24-644, 2026 WL 1159325, at *1-*24 (2d Cir. Apr. 29, 2026) (Menashi, J., joined by Livingston, C.J. and Park, J.). For the following reasons, this Court should now stay the mandate to allow President Trump to present important questions relating to, without limitation, Presidential immunity and the Westfall Act to the Supreme Court. Carroll does not oppose this motion.

*First*, there is a reasonable probability that the Supreme Court will grant certiorari to address, among other potential questions presented, Presidential immunity and the Westfall Act. The Supreme Court has granted certiorari each time (based on best research) that a President has sought review of a lower-court decision rejecting an assertion of Presidential immunity. The Supreme Court has also granted certiorari in an overwhelming number of cases establishing the standard for waiver of structural constitutional immunities analogous to Presidential immunity (which cannot be waived at all), as well as cases interpreting the Westfall Act.

*Second*, there is a fair prospect of reversal. The Panel's sole rationale for its immunity waiver determination—law of the case—will not apply to the Supreme Court, and improperly ignored *Trump v. United States*, 603 U.S. 593 (2024). Moreover, contrary to the Panel's finding, "the prior determination that President Trump waived the defense was incorrect." *Carroll*, 2026 WL 1159325, at *10 (Menashi, J.). As the dissent emphasized: "President Trump has a serious claim that the district court conducted the trial in this case in violation of presidential immunity." *Id.* at *13. "The officials and entities involved in distributing the statements—as well as the context, involving direct inquiries to the White House and other comments

on matters of public policy—indicate that the President was speaking in an official capacity." *Id.* at *14.

There is also a fair, in fact, strong, prospect that the Supreme Court will reverse the Panel's Westfall Act decision. As the dissent recognized: "There was no principled justification for holding that Attorney General Barr's certification decision could be revisited by Attorney General Garland but Attorney General Garland's certification decision could not be revisited by Attorney General Bondi." *Id.* at *5. The dissent also concluded that the Panel's decision created a circuit split on how removal is treated under the Westfall Act because "this case either would have come out differently in the D.C. Circuit or would have come out differently in the other circuits if President Trump had simply removed the case on the basis of diversity before the United States moved for substitution." *Id.* at *8 (citing *Wasserman v. Rodacker*, 557 F.3d 635, 639 (D.C. Cir. 2009); *Flohr v. Mackovjak*, 84 F.3d 386, 388 n.4 (11th Cir. 1996); *Melo v. Hafer*, 912 F.2d 628, 640 n.15 (3d Cir. 1990)).

*Third*, there is a likelihood of irreparable harm absent the stay. President Trump may immediately be required to bear the burdens of proceedings to execute on the judgment of $83.3 million. Allowing these proceedings before the Supreme Court has reviewed the significant legal

3

questions presented here would "eviscerate the immunity [the Supreme Court has] recognized." *Trump*, 603 U.S. at 631. Further, if execution on the judgment were allowed, it is very unlikely that any money could be recovered because Carroll has publicly said that she plans to give away any money that she receives from this lawsuit. The Supreme Court has repeatedly found irreparable harm when, like here, money distributed pending an appeal is unlikely to be recovered.

*Fourth*, the equities strongly favor a stay of the mandate. President Trump will suffer irreparable harm if a stay is not granted by being deprived of immunity from proceedings to enforce the judgment. In not opposing this motion, Carroll asked that the following statement be included setting forth her position:

> Without waiver as to or addressing any of the arguments in Appellant's motion, Appellee does not oppose the motion on the condition that Appellant increase the bond by $7,462,492.74 to account for the post-judgment interest that would accrue during any proceedings before the Supreme Court through October 2027. *See* Fed. R. App. P. 41(d)(3).[1]

This Court should stay its mandate to allow for the Supreme Court to review the vital questions at issue. Carroll does not oppose this motion.

---

[1] President Trump reserves all rights and does not waive any arguments.

4

## ARGUMENT

A party seeking to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court "must show that the petition would present a substantial question and that there is good cause for a stay." *United States v. Silver*, 954 F.3d 455, 457 (2d Cir. 2020) (quoting FED. R. APP. P. 41(d)(1)). To satisfy this standard, the party must demonstrate "(1) 'a reasonable probability' that [the Supreme] Court will grant certiorari, (2) 'a fair prospect' that the [Supreme] Court will then reverse the decision below, and (3) 'a likelihood that irreparable harm [will] result from the denial of a stay.'" *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers) (citation omitted); *accord Karcher v. Daggett*, 455 U.S. 1303 (1982) (Brennan, J., in chambers); *Whalen v. Roe*, 423 U.S. 1313, 1316-17 (1975) (Marshall, J., in chambers). In addition, "in a close case it may be appropriate to 'balance the equities'—to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Karcher*, 455 U.S. at 1306. Here, each of these factors decisively favors granting the stay.

## I. There Is a Reasonable Probability That the Supreme Court Will Grant Certiorari.

President Trump's upcoming petition for certiorari will address at least two issues: (1) whether the President's absolute immunity from civil claims based on official acts can be waived at all (President Trump maintains that such immunity cannot be waived), or at least without an explicit and unequivocal renunciation of the immunity; and (2) whether the United States timely filed, and did not waive, a renewed Westfall Act certification. Based on the vital issues at hand, the United States is also likely to file a petition for certiorari on the Westfall Act front. The Supreme Court is likely to grant the petitions to review these important questions of federal law. Certiorari is warranted when "a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter," "a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by [the Supreme] Court, or has decided an important federal question in a way that conflicts with relevant decisions of [the Supreme] Court." Sup. Ct. R. 10(a), (c). All three criteria are satisfied here.

### A. This case raises important questions of federal law.

First, this case involves "important question[s] of federal law that ha[ve] not been, but should be, settled by [the Supreme] Court." *Id.* "The Supreme Court has never held that presidential immunity is waivable." Br. for the United States as Amicus Curiae, *Carroll v. Trump*, No. 24-644 (2d Cir. Sept. 29, 2025), Doc. 139 ("United States Amicus Brief"), at 6. The Panel recognized that the 2023 interlocutory ruling that "presidential immunity is waivable" was "a matter of first impression." *Carroll v. Trump*, 151 F.4th 50, 65 (2d Cir. 2025) (per curiam). Despite the Supreme Court's intervening "blockbuster decision" in *Trump v. United States*, *Carroll v. Trump*, 2026 WL 1159325, at *12 n.25 (Menashi, J., dissenting from the denial of rehearing en banc) (citation omitted), the Panel, in error, relied exclusively on the law of the case doctrine to dismiss President Trump's entirely valid assertion of Presidential immunity, *Carroll v. Trump*, 151 F.4th at 66-68.

Past practice demonstrates that there is more than a reasonable probability that the Supreme Court will review the Panel's decision rejecting Presidential immunity. In fact, the Supreme Court, according to best research, has granted certiorari every time any President has sought review of a lower-court decision rejecting an assertion of Presidential immunity. *See Trump v. United States*, 603 U.S. 593 (2024); *Trump v. Vance*, 591 U.S.

786 (2020); *Clinton v. Jones*, 520 U.S. 681 (1997); *Nixon v. Fitzgerald*, 457 U.S. 731 (1982); *Kissinger v. Halperin*, 452 U.S. 713 (1981); *United States v. Nixon*, 418 U.S. 683 (1974).  Given this long tradition of reviewing lower-court Presidential immunity decisions, it is more than reasonably probable that the Supreme Court will review "an important legal question about the structure of the United States Government [that] has been precedentially settled in this circuit with no legal analysis."  United States Amicus Brief, at 10.

The Supreme Court also has granted certiorari in a large number of cases establishing the standard for waiver of structural constitutional immunities analogous to Presidential immunity.  For example, in *United States v. Helstoski*, the Supreme Court granted review to address the standard for waiving the immunity under the Speech or Debate Clause.  442 U.S. 477, 490-93 (1979).  The Supreme Court has granted review to determine when a State's or tribe's litigation conduct waives their constitutional immunity.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 618-24 (2002) (Eleventh Amendment immunity); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509-11 (1991).  In addition, the Supreme Court has repeatedly granted review to clarify waivers of the

8

United States' sovereign immunity. *See, e.g.*, *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992); *see also Lane v. Pena*, 518 U.S. 187, 191 (1996).

In its decision denying the United States' Motion to Substitute, the Panel erroneously decided that President Trump and the United States somehow waived their right to certification under the Westfall Act (which they did not do), and that the Attorney General's 2025 certification was untimely (it was not). *Carroll v. Trump*, 148 F.4th 110, 114-19 (2d Cir. 2025). Under the Westfall Act, the Panel wrongly stated that the Attorney General may move for substitution at any time in cases that begin in federal court, but only before trial in cases that begin in state court. *Carroll*, 2026 WL 1159325, at *6 (Menashi, J., dissenting from the denial of rehearing en banc). But "[t]he need to protect federal employees does not disappear—and might become more urgent—once a trial has occurred." *Id*. at *7. In fact, "[i]t would *undermine* the congressional purpose if the plaintiff's mere election to file a complaint in state rather than federal court would restrict the ability of the United States to provide a defense." *Id*. (emphasis in original).

These are important questions of federal law, and it is more than reasonably probable that the Supreme Court will grant certiorari to review them. This is confirmed by precedent. The Supreme Court has repeatedly granted review to interpret the Westfall Act. *See, e.g.*, *Osborn v. Haley*, 549

9

U.S. 225, 241 (2007); *De Martinez v. Lamagno*, 515 U.S. 417, 425 (1995); *United States v. Smith*, 499 U.S. 160, 166 (1991).

The Panel's decisions on Presidential immunity and the Westfall Act, if allowed to stand, which should not occur, would irreparably weaken Presidential immunity and thus the Presidency itself. Presidential immunity "protect[s] not the President himself, but the institution of the Presidency." *Trump*, 603 U.S. at 632. Because Presidential immunity protects the Presidency—not an individual President—its constitutionally mandated purpose would be defeated if an individual President could waive or forfeit the institution's protection, especially through inadvertence. "The importance of the question and the substantiality of the constitutional issues are beyond cavil." *Rostker v. Goldberg*, 448 U.S. 1306, 1309 (1980) (Brennan, J., in chambers) (staying execution and enforcement of lower-court judgment).

## B. The Panel opinion conflicts with decisions of the Supreme Court and other circuits.

The Panel's decisions also warrant Supreme Court review because they decided important federal questions "in a way that conflicts with relevant decisions of [the Supreme] Court," and other circuit courts. Sup. Ct. R. 10(a), (c). As discussed in Part II, *infra*, the Panel's decisions conflict with Supreme

10

Court decisions, including *Trump v. United States*, as well as decisions by the Third, Fifth, Sixth, and D.C. Circuits.

## II.     There Is a Fair Prospect of Reversal.

The second factor considers whether there is "a fair prospect" that the Supreme Court will reverse the lower court's decision. *Maryland*, 567 U.S. at 1302 (Roberts, C.J., in chambers).  This factor is satisfied when "[t]he issues underlying this case are important and difficult," and it does not require "anticipating [the Court's] views on the merits." *Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301, 1309 (1974) (Powell, J., in chambers).  A stay is appropriate if "petitioner's position ... cannot be deemed insubstantial," *McLeod v. Gen. Elec. Co.*, 87 S. Ct. 5, 6 (1966) (Harlan, J., in chambers), and it need not be "more probable than not" that the Supreme Court will reverse, *Certain Named and Unnamed Non-Citizen Children and Their Parents v. Texas*, 448 U.S. 1327, 1332 (1980) (Powell, J., in chambers) (holding that a case that "presents novel and important issues" warrants a stay).

Here, the Panel's opinion commits a series of fundamental errors.  A full accounting of these errors must await briefing before the Supreme Court, but President Trump highlights a series of independently sufficient bases for reversal here.

## A.  Presidential Immunity

As Judge Menashi, Chief Judge Livingston, and Judge Park strongly state: "[t]he panel opinion refused to conduct any analysis on the application of presidential immunity." *Carroll*, 2026 WL 1159325, at *15 (Menashi, J., dissenting from the denial of rehearing en banc).  The Panel relied exclusively on the law of the case doctrine to erroneously dismiss President Trump's entirely valid assertion of Presidential immunity. *Carroll*, 151 F.4th at 66-68.  But "law of the case cannot bind [the Supreme] Court in reviewing decisions below." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).  Further, "a court of appeals' adherence to the law of the case cannot insulate an issue from [the Supreme] Court's review." *Id.*  Thus, the Panel's sole rationale for its waiver determination will not apply to the Supreme Court.

Based on key precedent, including *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), which recognized absolute Presidential immunity from civil claims based on official acts, and the Court's recent, landmark decision in *Trump v. United States*, 603 U.S. 593 (2024), as well as the overall importance of Presidential immunity, there is a fair, in fact, strong, prospect that the Supreme Court will reverse the Panel.  In *Trump*, the Supreme Court emphasized that Presidential "immunity is required to safeguard the

12

independence and effective functioning of the Executive Branch, and to enable the President to carry out his constitutional duties without undue caution." 603 U.S. at 614. It ensures "that the President would [not] be chilled from taking the bold and unhesitating action required of an independent Executive." *Id.* at 613 (quotation omitted).

"The decision in *Trump v. United States* makes clear that President Trump has a serious claim that the district court conducted the trial in this case in violation of presidential immunity." *Carroll*, 2026 WL 1159325, at *13 (Menashi, J., dissenting from the denial of rehearing en banc). *Trump*'s reasoning places Presidential immunity squarely within the line of cases holding that immunity doctrines rooted in the constitutional structure cannot be waived, or at the very least not without an affirmative, explicit, and unequivocal waiver. Vitally, the Supreme Court has expressed doubt that Speech or Debate immunity is waivable at all, and held that even "[a]ssuming that is possible, ... waiver can be found only after explicit and unequivocal renunciation of the protection." *Helstoski*, 442 U.S. at 490–91. "There is no reason to conclude that the waiver of presidential immunity may be any less explicit and unequivocal than the legislative analogue." *Carroll*, 2026 WL 1159325, at *11 (Menashi, J., dissenting from the denial of rehearing en banc).

13

The Panel's "most glaring error … was its dismissal of *Trump v. United States* as too insignificant to justify reconsideration of the application of presidential immunity to this case." *Id.* at \*12. *Trump v. United States* was "one of the most resounding defenses of executive power in [the Supreme Court's] history." *Id.* at \*12 n.25 (citation omitted). By failing to apply this monumental decision by the Supreme Court, the Panel "bypassed what [the Court] consider[s] to be important issues bearing on the ultimate issue" of presidential immunity. *Id.* (quoting *New York v. Trump*, 158 F.4th 458, 469 (2d Cir. 2025) (per curiam)).

The two official statements that Carroll claims were defamatory are clearly protected by Presidential immunity. "The President of the United States possesses an extraordinary power to speak to his fellow citizens and on their behalf." *Trump v. Hawaii*, 585 U.S. 667, 701 (2018). For this reason, "most of a President's public communications are likely to fall comfortably within the outer perimeter of his official responsibilities." *Trump*, 603 U.S. at 629. "The officials and entities involved in distributing the statements—as well as the context, involving direct inquiries to the White House and other comments on matters of public policy—indicate that the President was speaking in an official capacity." *Carroll*, 2026 WL 1159325, at \*14 (Menashi, J., dissenting from the denial of rehearing en banc). "Even

if he were not, the records of the statements—documents issued from the White House Press Office—appear to be evidence of official acts." *Id.*

These official acts played a pivotal, unlawful role in the outcome. "At the trial, counsel for Carroll emphasized the official character of the statements as evidence of the harm Carroll had suffered." *Id.* at \*15. "These statements indicate that the jury was invited to scrutinize and to punish official acts of the President." *Id.* These are the same issues covered by *Trump*, and before it, *Fitzgerald*, rendering the President immune from the claims in this case. *See Trump*, 603 U.S. at 631; *Fitzgerald*, 457 U.S. at 752.

Contrary to the Panel's finding, "the prior determination that President Trump waived the defense was incorrect." *Carroll*, 2026 WL 1159325, at \*10 (Menashi, J., dissenting from the denial of rehearing en banc). "President Trump consistently raised the defense of presidential immunity throughout this litigation ... in his initial answer to the complaint, a motion for summary judgment, a motion to amend the answer to raise presidential immunity more specifically if necessary, an answer to the amended complaint, and his appeal." *Id.* at \*11. Thus, "[t]here was no waiver of the immunity defense." *Id.*

As the three dissenting judges explained, "[a]t a minimum, the President should be able to argue that the newly clarified doctrine of

15

presidential immunity precludes liability in this case." *Id.* at \*14. A President's statements defending his fitness for office and bolstering public confidence in his leadership, issued through official White House channels and during White House press events, are plainly official acts. *See id.*; *see also Trump*, 603 U.S. at 618, 629. The Panel's ruling otherwise irreparably damages the Presidency. Accordingly, there is at least a fair prospect that the Supreme Court will reverse the Panel.

### B.    The Westfall Act

As to the Westfall Act, the Panel's "waiver holding [also] made no sense." *Carroll*, 2026 WL 1159325, at \*4 (Menashi, J., dissenting from the denial of rehearing en banc). The Panel held that the Attorney General "had 'waived' the right to make a Westfall Act certification," and that the Westfall Act "prohibit[s] substitution following trial when a case begins in state court." *Id.* at \*2. But under the plain text of the Westfall Act, although *removal* of a claim filed in state court against a federal officer must be done "before trial," there is no time requirement for the subsequent substitution of the federal government for that officer. *See* 28 U.S.C. § 2679(d)(2). Congress engaged in careful line-drawing when drafting the Westfall Act. "Congress could have limited [the Attorney General's] discretion in any number of ways," such as limiting certification and substitution to before

16

trial, "but it chose not to do so." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677 (2020).

That conclusion is reinforced by virtually identical language in § 2679(d)(1), which applies to actions filed in federal court, deems a certified action to be against the United States, and requires the United States to be substituted as the party defendant without any time limitation. "A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). Under either § 2679(d)(1) or § 2679(d)(2), the Attorney General may certify at any time, whether before or after trial, thereby substituting the United States into the action as the party defendant.

The Panel's holding conflicts with the Supreme Court's ruling that "Congress spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution." *De Martinez*, 515 U.S. at 432. The Panel "misinterpreted the Westfall Act" to treat substitution motions differently under § 2679(d)(1) and § 2679(d)(2). *Carroll*, 2026 WL 1159325, at *6 (Menashi, J., dissenting from the denial of rehearing en banc). "That differential treatment of substitution motions by the Attorney General is arbitrary and lacks a basis in the statute." *Id.*

17

The Panel's erroneous holding also created a circuit split over how the Westfall Act treats removed actions. As the dissent recognized, "this case either would have come out differently in the D.C. Circuit or would have come out differently in the other circuits if President Trump had simply removed the case on the basis of diversity before the United States moved for substitution." *Id.* at *8 (citing *Wasserman*, 557 F.3d at 639; *Flohr*, 84 F.3d at 388 n.4; *Melo*, 912 F.2d at 640 n.15).

On the merits, the Panel's erroneous decision allowing liability for public statements conflicts with decisions by the Third Circuit, Fifth Circuit, Sixth Circuit, and D.C. Circuit that applied Westfall Act protection to such statements. *Id.* at *9 (discussing *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 665 (D.C. Cir. 2006); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995); *Does 1-10 v. Haaland*, 973 F.3d 591, 594, 602 (6th Cir. 2020); *Giordano v. Hohns*, 159 F.4th 179, 183, 201 (3d Cir. 2025)). "If the circuit courts would reach different outcomes on the same facts, there is a split." *Id.* at *8.

Finally, the Panel's analysis resulted in prejudicial inconsistencies. The Panel "said that Attorney General Garland—unlike Attorney General Bondi—was entitled to conclude that '[t]he prior certification and motion to substitute have been overtaken by events.'" *Carroll*, 2026 WL 1159325, at *5

18

(Menashi, J., dissenting from the denial of rehearing en banc) (quoting *Carroll*, 148 F.4th at 114). However, "[t]here was no principled justification for holding that Attorney General Barr's certification decision could be revisited by Attorney General Garland but Attorney General Garland's certification decision could not be revisited by Attorney General Bondi." *Id.* There is no reasonable explanation for that completely unfair and arbitrary inconsistency.

For these reasons, there is a fair prospect that the Supreme Court will reverse the Panel's decision on the Westfall Act.

## III. There Is a Likelihood of Irreparable Harm Absent the Stay.

The third factor considers whether the applicant "would ... suffer irreparable harm were the stay not granted." *Karcher*, 455 U.S. at 1306. Here, the threat of irreparable injury if this Court's mandate is not stayed is clear and manifest.

"The essence of immunity 'is its possessor's entitlement not to have to answer for his conduct' in court." *Trump*, 603 U.S. at 630 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)). Presidential immunity is "an *immunity from suit* rather than a mere defense to liability ... it is effectively lost" if underlying proceedings or "other burdens of litigation" move forward. *Mitchell*, 472 U.S. at 526; *see also Pearson v. Callahan*, 555 U.S. 223, 231

19

(2009) (same). Absolute immunity's protection is "not limited to liability for money damages," but also includes litigation costs such as "'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" *Mitchell*, 472 U.S. at 526 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)).

In addition, Carroll has publicly and repeatedly promised to give away any money that she collects from this lawsuit. *See, e.g.*, Tom Sanders, *E. Jean Carroll Reveals Why She'll Give Away Her $80M From Trump: 'To P\*\*\* Him Off'*, THE DAILY BEAST (July 1, 2025);[2] Jenna Amatulli, *E. Jean Carroll aims to give defamation money 'to something Trump hates'*, THE GUARDIAN (Jan. 29, 2024).[3] Once grants are distributed and spent by organizations around the country, the funds almost certainly will not be recoverable if the Supreme Court reverses the Panel's decision, as is likely to occur. The Supreme Court has found irreparable harm when the government "is unlikely to recover the grant funds once they are disbursed." *Dep't of Educ. v. California*, 604 U.S. 650, 651–52 (2025) (per curiam). This irreparable harm principle applies to private party funds held in escrow that

---

[2] *Available at* https://www.thedailybeast.com/e-jean-carroll-reveals-why-shell-give-away-her-80m-from-trump-to-p-him-off/.
[3] *Available at* https://www.theguardian.com/us-news/2024/jan/29/e-jean-carroll-trial-money-trump-defamation.

"would be very difficult to recover should applicants' stay not be granted." *Mori v. Int'l Bhd. of Boilermakers*, 454 U.S. 1301, 1303 (1981) (Rehnquist, J., in chambers).

Absent a stay, President Trump will suffer ongoing irreparable harm due to violation of his right to immunity from this defamation suit for his official statements as President of the United States of America. As demonstrated in Part II, *supra*, there is a "fair prospect" that the Supreme Court will reverse the Panel's erroneous decisions that Presidential immunity and the Westfall Act were both waived. Issuing the mandate and permitting lower court proceedings to move forward during Supreme Court review of these significant questions would "eviscerate the immunity [the Supreme Court has] recognized," *Trump*, 603 U.S. at 631, as well as create a likely inability to recover funds if the Supreme Court reverses, as it should.

## IV. The Balancing of Equities Strongly Favors a Stay.

Since this is not a "close case," the Court need not "balance the equities." *Karcher*, 455 U.S. at 1306. However, if it does, the equities strongly favor a stay of the mandate. As detailed above, the considerations counseling in favor of a stay are overwhelming. They include safeguarding the Presidential immunity and Westfall Act protections for all Presidents, and the Presidency itself, preserving the status quo while the Supreme Court

21

considers the President's appeal, and preventing distribution of funds that could not be recovered if the Supreme Court reverses, which there is at least a fair prospect of.

Against these compelling interests, Carroll will not suffer prejudice and does not oppose this motion as set forth in her previously quoted position statement. If a stay is granted, Carroll "will be able to collect from petitioner" all money from the judgment if the Panel's erroneous ruling is somehow upheld, which it should not be. *Edelman v. Jordan*, 414 U.S. 1301, 1302-03 (1973) (Rehnquist, J., in chambers). This Could should stay its mandate to allow for the Supreme Court to review before any other proceedings take place.

## CONCLUSION

For these reasons, President Trump respectfully asks the Court to stay the mandate until the Supreme Court's final disposition of the petition for a writ of certiorari, and if such is granted, until resolution of all proceedings. Carroll does not oppose this motion. If the Court were to deny this request, which should not occur, President Trump requests that the Court grant an administrative stay of the mandate for 14 days to allow reasonable time to seek a stay from the Supreme Court.

Dated: May 5, 2026                     Respectfully Submitted,

                                       */s/ Justin D. Smith*
                                       Justin D. Smith
                                       James Otis Law Group, LLC
                                       530 Maryville Centre Drive
                                       Suite 230
                                       St. Louis, Missouri 63141
                                       (816) 678-2103
                                       Justin.Smith@james-otis.com

                                       *Counsel for President Donald J.
                                       Trump*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d) because it contains 4,624 words. This motion also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d) because it was prepared using Microsoft Word in 14-point Times New Roman, a proportionally spaced typeface.

                                       */s/ Justin D. Smith*
                                       Justin D. Smith